# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 |
| W.R. Grace & Co., *et al.*, | Case No. 01-01139 (JKF)<br>Jointly Administered |
| Debtors. | |
| PacifiCorp and the VanCott Bagley<br>Cornwall & McCarthy 401(k) Profit<br>Sharing Plan, | C.A. No. 05-764 (RLB) |
| Appellants, | Re: Docket Nos. 3 and 4 |
| v. | |
| W.R. Grace & Co., *et al.*, | |
| Appellee. | |

## APPELLANTS' BRIEF

Richard S. Cobb (#3157)
Megan N. Harper (#4103)
**LANDIS RATH & COBB LLP**
919 Market Street, Suite 600
P.O. Box 2087
Wilmington, DE 19899
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

Attorneys for Appellants PacifiCorp and the
VanCott Bagley Cornwall & McCarthy 401(k)
Profit Sharing Plan

-and-

Steven J. McCardell, Esquire
Jared L. Inouye, Esquire
**MABEY & MURRAY LC**
1000 Kearns Building
136 South Main Street
Salt Lake City, UT 84101-1685
Telephone: (801) 320-6700
Facsimile: (801) 359-8256

Attorneys for Appellant PacifiCorp

-and-

J. Robert Nelson, Esquire
**VANCOTT, BAGLEY, CORNWALL & MCCARTHY**

50 South Main Street
Salt Lake City, UT 84144-0450
Telephone: (801) 237-0270
Facsimile: (801) 534-0058

Attorneys for Appellant VanCott Bagley Cornwall
& McCarthy 401(k) Profit Sharing Plan

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. iii

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS ............................. 1

SUMMARY OF THE ARGUMENT ............................................................................. 3

STATEMENT OF FACTS ............................................................................. 4

    I.      Grace Contaminated the Subject Property ............................................. 4

    II.     Grace Knew That the Subject Property Was Contaminated ..................... 6

    III.    Appellants' Environmental Liability ....................................... 7

    IV.    Grace Failed to Notify Appellants of the Bar Date................................. 9

    V.     Grace Could Have Easily Identified Appellants as Current and Former Owners . 10

STANDARD OF REVIEW ............................................................................. 11

ARGUMENT ............................................................................. 11

    I.      THE BANKRUPTCY COURT ERRED IN CONCLUDING THAT THE
           APPELLANTS WERE NOT REASONABLY ASCERTAINABLE FROM
           PUBLIC RECORDS AND THEREFORE WERE NOT "KNOWN"
           CREDITORS CONSTITUTIONALLY ENTITLED TO ACTUAL NOTICE OF
           THE DEBTORS' BAR DATE ............................................................. 11

           A.     *Chemetron Does Not Dictate the Conclusion that Appellants Are*
                  *Unknown Creditors* ............................................................. 11

           B.     *The Debtors Did Not Exercise Reasonable Diligence Since They Failed to*
                  *Ascertain Appellants' Identities* ....................................... 15

                 1.     *Under Supreme Court precedent, the Debtors had a duty to*
                       *identify the Appellants using public records.* ................... 15

                 2.     *Supreme Court precedent requiring the Debtors to ascertain the*
                       *identities of Appellants applies in the environmental and*
                       *bankruptcy contexts.* ....................................... 19

    II.     THE BANKRUPTCY COURT'S ANALYSIS OF EXCUSABLE NEGLECT WAS
           INADEQUATE AND ITS RULING IN THAT REGARD AN ABUSE OF
            DISCRETION ............................................................................. 21

    III.    THE BANKRUPTCY COURT ERRED IN RULING THAT THE VANCOTT
           PLAN RECEIVED ACTUAL NOTICE OF THE BAR DATE............................. 28

CONCLUSION...................................................................................................................30

## TABLE OF AUTHORITIES

<u>CASES</u>

Chemetron Corp. v. Jones, 72 F.3d 341 (3d Cir. 1995).......................................11, 12, 22

City of New York v. New York, N.H. & H.R. Co., 344 U.S. 293 (1953).....................................11

Eisen v. Carlisle & Jacquelin, 417 U.S. 156 (1974) ........................................................19

In re Argonaut Fin. Serv., Inc., 164 B.R. 107 (N.D. Cal. 1994)....................................20

In re Bicoastal Corp., 147 B.R. 807 (Bankr. M.D. Fla. 1992)......................................15

In re Eagle Bus. Mfg., Inc., 62 F.3d 730 (5th Cir. 1995)................................................29

In re Jersey City Medical Center, 817 F.2d 1055 (3d Cir. 1987) ..................................11

In re Texaco Inc., 182 B.R. 937 (Bankr. S.D.N.Y. 1995)...............................................15

Interpace Corp. v. City of Philadelphia, 438 F.2d 401 (3d Cir. 1971) ...........................24

Manus v. NRG Energy, Inc. (In re O'Brien Environmental Energy, Inc.),
188 F.3d 116 (3d Cir. 1999)......................................................................................23, 25

Mennonite Bd. of Missions v. Adams, 462 U.S. 791 (1983)....................................11, 17

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950) ..................12, 15, 16, 17, 19

Orthopedic Bone Screw Products Liability Litigation, 246 F.3d 315 (3d Cir. 2001)..............23, 24

Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. Partnership,
507 U.S. 380 S.Ct. 1489, 123 L.Ed 2d 74 (1993)..............................................22, 23, 24

Schroeder v. City of New York, 371 U.S. 208 (1962)...................................................17

Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98 (3d Cir. 1981) ...............................11

Walker v. City of Hutchinson, 352 U.S. 112 (1956) ..............................................12, 17

Waterville Industries, Inc. v. First Hartford Corp., 124 B.R. 411 (D. Maine 1991).....................20

## **STATUTES**

11 U.S.C. § 105(a) ...................................................................................................................1

11 U.S.C. § 365.......................................................................................................................23

28 U.S.C. § 158(a) ..................................................................................................................1

28 U.S.C. §157(a) ...................................................................................................................1

Federal Rules of Bankruptcy Procedure Rule 3003(c)(3)................................................................1

Federal Rules of Bankruptcy Procedure Rule 9006.............................................1, 3, 22, 27, 29, 30

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Jurisdiction in this appeal is proper pursuant to 28 U.S.C. § 158(a), which gives district courts of the United States jurisdiction to hear appeals from final orders of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under 28 U.S.C. §157(a). The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has jurisdiction to hear and determine cases arising under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

This appeal arises out of PacifiCorp and the VanCott Bagley Cornwall & McCarthy 401(k) Profit Sharing Plan's (the "VanCott Plan," collectively with PacifiCorp, the "Appellants") Motion for Leave to File Late Proofs of Claim (the "Motion to File Late Claims") – made in Bankruptcy Case No. 01-01139 and pursuant to 11 U.S.C. § 105(a) and Rule 9006 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") – which sought leave on two primary grounds: (i) Appellants did not receive constitutionally required notice of the bar date for filing proofs of claim, and (ii) excusable neglect.

W.R. Grace & Co., et al. (referred to herein as the "Debtors," "Grace," or "Appellees") filed voluntary petitions for relief under chapter 11 of title 11 of the Bankruptcy Code in the Bankruptcy Court on April 2, 2001. On April 22, 2002, the Bankruptcy Court entered an order pursuant to Rule 3003(c)(3) of the Bankruptcy Rules establishing a bar date of March 31, 2003 (the "Bar Date") for asbestos property damage claims, non-asbestos claims, and medical monitoring claims. Bankr. D.I. 1963.

Appellants are current and former owners of certain property in Salt Lake City, Utah located at 333 West 100 South on Block 66 in downtown Salt Lake City (the "Subject Property"). The Subject Property was contaminated by a vermiculite processing plant that received and processed vermiculite ore from a mine in Libby, Montana which was owned and

operated by the Appellees.  Despite the fact that Grace had record of the processing operations on the Subject Property, that Grace had scheduled environmental claims directly arising from the Subject Property, and that the United States Environmental Protection Agency ("EPA") filed a proof of claim relating to environmental liability arising from the Subject Property, Grace did not send a Bar Date Notice to Appellant PacifiCorp.  The VanCott Plan also did not receive notice of the Bar Date, although the firm VanCott, Bagley, Cornwall & McCarthy (the "VanCott Firm") was listed in the Bar Date Notice proof of service, but at an incorrect address.

Appellants, unaware of the Bar Date, did not file timely proofs of claim.  On January 4, 2005, the Appellants filed the Motion to File Late Claims. The Bankruptcy Court held a hearing on Appellants' Motion to File Late Claims on February 28, 2005.  On September 22, 2005, the Bankruptcy Court entered a final Order (the "Order") denying Appellants' Motion to File Late Claims, holding that Appellants (i) were not "known" creditors entitled to actual notice of the Bar Date and (ii) had failed to establish excusable neglect.  On October 3, 2005, Appellants timely appealed the Order to this Court.

## SUMMARY OF THE ARGUMENT

1.    The Bankruptcy Court erred in concluding that the Appellants, the current and immediate prior owners of the Subject Property, were not reasonably ascertainable from public records and therefore were not "known" creditors constitutionally entitled to actual notice of the Bar Date for filing claims against the Debtors.

2.    The Bankruptcy Court erred in concluding that, pursuant to Rule 9006 of the Bankruptcy Rules, Appellants may not file late claims on grounds of excusable neglect.

3.    The Bankruptcy Court erred in concluding that the VanCott Plan received actual notice of the Bar Date.

## STATEMENT OF FACTS

### I.    Grace Contaminated the Subject Property

Intermountain Insulation is the immediate predecessor company of Vermiculite Intermountain (collectively referred to herein as the "Processing Distributors"). Exhibit 1 to Reply Brief to W.R. Grace's Objection to Appellants' Motion for Leave to File Late Proofs of Claim ("Appellants' Reply"), A-198 to A-199, at A-199. The Processing Distributors conducted their operations at 333 West First South in Salt Lake City, Utah. Exhibit 2 to Appellants' Reply, A-200 to A-201, at A-201; and Exhibit 3 to Appellants' Reply, A-202 to A-203, at A-203. "333 West First Street" is located on Block 66 in downtown Salt Lake City. Exhibit 4 to Appellants' Reply, A-204 to A-214, at A-206.

Grace owned a patented vermiculite exfoliation process and licensed Vermiculite Intermountain to use the process. Exhibit 5 to Appellants' Reply, A-215 to A-224, at A-216 to A-218; Exhibit 6 to Appellants' Reply, A-225 to A-228, at A-226 to A-228; and Exhibit 7 to Appellants' Reply, A-229 to A-238, at A-230 to A-232. Grace owned various trademarks under which Vermiculite Intermountain marketed and distributed various vermiculite-based products. Exhibit 8 to Appellants' Reply, A-239 to A-259, at A-240, A-248 to A-250; Exhibit 9 to Appellants' Reply, A-260 to A-264; Exhibit 6 to Appellants' Reply, at A-255 to A-228; and Exhibit 10 to Appellants' Reply, A-265 to A-274, at A-266 to A-267.

Grace, through its subsidiary Construction Products Division and its predecessors, entered into certain agreements with Vermiculite Intermountain, as well as other similarly situated "processing distributors" that exfoliated and marketed the Libby vermiculite.[1] In the agreements, Grace agreed: (i) to supply Vermiculite Intermountain with vermiculite ore from the

---

[1] Grace owned and operated a vermiculite mine and processing mill between 1963 and 1990 in Libby, Montana (the "Libby Asbestos Site"). See http://www.grace.com/mediakit/libby.html (accessed November 18, 2005).

Libby mine; (ii) to license Vermiculite Intermountain to market the exfoliated ore under one of several other Grace trade names, including the Zonolite and Monokote brand names; and (iii) to provide technical assistance on the use, manufacture and marketing of the various products. Exhibit 10 to Appellants' Reply, at A-266 to A-267; and Exhibit 8 to Appellants' Reply, at A-240 to A-242, A-248 to A-250.

Prior to 1975, Grace received a royalty from Vermiculite Intermountain for every bag of "licensed product" sold by Vermiculite Intermountain. Exhibit 5 to Appellants' Reply, at A-220; Exhibit 7 to Appellants' Reply, at A-232 to A-233; and Exhibit 10 to Appellants' Reply, at A-268.

Grace provided detailed specifications to the processing distributors on the various products. Exhibit 11 to Appellants' Reply, A-275 to A-280; Exhibit 6 to Appellants' Reply, at A-225 to A-228; Exhibit 10 to Appellants' Reply, at A-272 to A-273. One purpose for doing so was to allow Grace to "exercise control over the quality of vermiculite which is offered to the fertilizer trade [and] provide some royalty income." Exhibit 12 to Appellants' Reply, A-281 to A-287.

Between 1940 and 1984, according to EPA records, Grace shipped at least 25,000 tons of vermiculite concentrate from the Libby Mine to the Processing Distributors at 333 West 100 South. Exhibit B to Motion to File Late Claims, A-48 to A-77, at A-54. As a result of Grace's Processing Distributors' operations, a significant portion of Block 66, including the Subject Property, was contaminated with toxic amphibole asbestos. Id.

II.    **Grace Knew That the Subject Property Was Contaminated**

In the course of pursuing its Libby environmental claims against Grace, the EPA has sent Grace at least two Requests for Information Regarding the Libby Asbestos Site. Exhibit 14 to Appellants' Reply, A-290 to A295, at A-291.

In response to the EPA's requests, Grace responded in 2000 that it had known of the presence of tremolite, the harmful substance in asbestos, in Libby vermiculite since it acquired the Zonolite company in 1963. Id., at A-292.

In 1976, Grace notified the processing distributors regarding OSHA standards relating to the "'tramp' mineral found in vermiculite deposits ... tremolite." Exhibit 13 to Appellants' Reply, at A-288 to A-289. Also Grace stated, "[a]lthough we remove a great deal of tremolite during processing, it is not now possible to provide our ore customers with a totally tremolite-free product . . . . **Significant amounts of the tremolite are removed during the expansion process.**" Id., at A-289 (emphasis added).

In its Statements of Financial Affairs and Schedules, filed in its bankruptcy, Grace scheduled a contingent, disputed, unliquidated Environmental Claim for Intermountain Insulation Co., located at 333 W. First Street, Salt Lake City, Utah. See Exhibit G to Motion to File Late Claims, A-109 to A-110. Grace listed the amount of the 333 W. First Street claim as "unknown." Id.

Moreover, in response to the EPA's request to provide a list of non-Grace controlled companies that purchased Libby vermiculite, Grace provided a list 36 licensees, one of which was "Verm. – Intermountain, Inc." Exhibit 14 to Appellants' Reply, at A-294. Grace also listed 129 "industrial" entities that purchased Libby Vermiculite. Id.

Grace knew it had arranged for and profited from the contamination of the Subject Property. Id., at A-290 to A-294. Grace filed bankruptcy on April 2, 2001 primarily to avoid liability for this kind of contamination.

On March 28, 2003, the EPA filed a timely proof of claim, claim number 00009634. Exhibit A to Motion to File Late Claims, A-18 to A-47. The EPA's claim has not been resolved. It asserts claims for environmental contamination at 32 specific sites, including the Subject Property. Id., at A-39 to A-40. The EPA's Claim asserts that Grace:

> is liable to the United States pursuant to CERCLA in connection with the cleanup of environmental contamination at the Vermiculite Intermountain Site in Salt Lake City. From 1940 through at least the late 1980s, a vermiculite expansion plant was located at the site. There have been releases or threatened releases of a hazardous substance at the site, as soils at the site are contaminated with asbestos. The Debtor is liable to the United States because it was an operator of a facility at the site at the time hazardous substances were disposed of at such facility. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $5,000 as of January 31, 2003. The Debtor also is liable for future cleanup obligations at the site, which the United States estimates will cost at least $300,000 to complete.

Id.

## III.    Appellants' Environmental Liability

Appellant PacifiCorp is one of the current owners of the Subject Property. Exhibit 4 to Appellants' Reply, at A-206. In 1984, PacifiCorp's predecessor in interest, Utah Power & Light Company, purchased from the VanCott Plan, a parcel of property in Block 66 previously owned and operated by the Processing Distributors. Exhibit B to Motion to File Late Claims, at A-54; Exhibit H to Motion to File Late Claims, A-111 to A-129, at A-112 to A-113.

The VanCott Plan purchased a portion of the Subject Property in 1979. Exhibit H to Motion to File Late Claims, at A-112 to A-113. In 1984, the VanCott Plan sold a portion of the

Subject Property to Pacificorp. Id.; Exhibit B to Motion to File Late Claims, at A-54. The VanCott Plan sold the balance of its portion of the Subject Property in 1998. Exhibit H to Motion to File Late Claims, at A-113.

On July 29, 2004, PacifiCorp entered into an Administrative Order on Consent ("AOC") with the EPA in which PacifiCorp agreed to perform a removal action on PacifiCorp's portion of the Subject Property, presumably the "future cleanup" of the site described in EPA's claim. Exhibit B to Motion to File Late Claims, at A-54. As recited in the AOC, the Subject Property includes the location of the Vermiculite Intermountain Facility and areas contaminated by asbestos emissions therefrom. Id. The plant operated between the 1940's and possibly as late as 1984 and performed various production operations with vermiculite concentrate from the Libby Vermiculite Mine located in Libby, Montana. Id.

As of the date of Appellants' Motion to File Late Claims, the VanCott Plan had not incurred cleanup costs or entered into an agreement or order with the EPA or any other party with respect to the Subject Property. Exhibit H to Motion to File Late Claims, at A-114. The VanCott Plan had, however, been notified of potential environmental issues with respect to the Subject Property. Id., at A-113. By letter dated June 18, 2004, the EPA requested information from the VanCott Plan with respect to the Subject Property. Id. PacifiCorp advised the VanCott Plan of potential liability by letter dated September 20, 2004. Id.

At the time the Appellants filed their Motion to File Late Claims, PacifiCorp estimated that the cost of its excavation of the contaminated soil would exceed $4 million. Exhibit C to Motion to File Late Claims, A-78 to A-99, at A-98 to A-99.

## IV.    Grace Failed to Notify Appellants of the Bar Date

Appellant PacifiCorp did not receive notice of the Bar Date.  Exhibit D to Motion to File

Late Claims, A-100 to A-102; Debtors' Objection to Appellants Motion for Leave to File Late

Proofs of Claim ("Debtors' Objection"), A-159 to A-173, at A-169 to A-170.

Although PacifiCorp did not receive notice of the Bar Date, Utah Power & Light, a name

under which PacifiCorp does business, received notice of Grace's bankruptcy cases on May 2,

2001 and filed a routine proof of claim for electric services in this case on May 16, 2001.[2]

Exhibit E to Motion to File Late Claims, A-103 to A-105.  The amount of the claim is $1,375.58.

Id.  The basis for the claim is electric utility service provided to a location outside of Salt Lake

City which is unrelated to the Subject Property.  Id., Exhibit F to Motion to File Late Claims, A-

106 to A-108.  Utah Power & Light's claim was filed by Stacey Davis of Utah Power & Light's

Customer Service Division.  Exhibit E to Motion to File Late Claims, at A-105.

The Customer Service Division had no knowledge of the Bar Date, the contamination on

the Subject Property, or Grace's connection to the vermiculite operations on the Subject

Property.  Id.

PacifiCorp's environmental personnel who were dealing with issues leading to the AOC

were unaware of the Bar Date.  Exhibit D to Motion to File Late Claims, at A-101.

The VanCott Plan also was unaware of the Bar Date.  Exhibit H to Motion to File Late

Claims, at A-113.  The VanCott Plan did not receive notice of the Bar Date.  The relevant proof

of service did include the VanCott Firm but not the VanCott Plan, and the indicated VanCott

---

[2] The fact that the customer service division of Utah Power & Light had a general knowledge of Grace's bankruptcy cases and filed a $1,375.58 proof of claim for electric cervices does not negate PacifiCorp's constitutional right to actual notice of the Bar Date.  The Supreme Court has held that actual knowledge of the bankruptcy case does not negate constitutionally required notice of the claims bar date.  City of New York v. New York, N.H. & H.R. Co., 344 U.S. 293, 297 (1953).  Even creditors who know about a bankruptcy case can assume that they will receive the reasonable statutory notice.  Id.; Spring Valley Farms, Inc. v. Crow (In re Spring Valley Farms), 863 F.2d 832, 835 (11th Cir. 1989) (due process required the debtor to give actual notice of the bar date, even though "the creditor had actual knowledge of the general existence of bankruptcy proceedings").

Firm address (a) reflected an incorrect zip code and (b) did not include a suite number.  Exhibit 15 to Appellants' Reply, at A-295.1 to A 295.4.

## V.    Grace Could Have Easily Identified Appellants as Current and Former Owners

A title company would have been able to identify the current owners of Block 66 within a matter of minutes.  Exhibit 4 to Appellants' Reply, at A-206 to A-207.  The cost of such a search is nominal, if there is any cost at all.  Id.

## STANDARD OF REVIEW

A district court to which a bankruptcy court decision has been appealed reviews the bankruptcy court's findings of fact under a clearly erroneous standard.  In re Jersey City Medical Center, 817 F.2d 1055, 1059 (3d Cir. 1987).  A bankruptcy court's conclusions of law are subject to plenary review.  Id.  Where there is a mixed question of law and fact, "a district court is not limited to the 'clearly erroneous standard,' but must exercise a mixed standard of review."  Id.  A clearly erroneous standard must be applied to the bankruptcy court's finding of historical or narrative facts; a plenary standard is applied to the bankruptcy court's "choice and interpretation of legal precepts and its application of those precepts to the historical facts."  Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101-02 (3d Cir. 1981).

**ARGUMENT**

I.    **THE BANKRUPTCY COURT ERRED IN CONCLUDING THAT THE APPELLANTS WERE NOT REASONABLY ASCERTAINABLE FROM PUBLIC RECORDS AND THEREFORE WERE NOT "KNOWN" CREDITORS CONSTITUTIONALLY ENTITLED TO ACTUAL NOTICE OF THE DEBTORS' BAR DATE**

Due process requires that "known" creditors be provided with "actual written notice" of a debtor's bar claims date. Chemetron Corp. v. Jones, 72 F.3d 341, 346 (3d Cir. 1995); City of New York v. New York, N.H. & H.R. Co., 344 U.S. 293, 296 (1953). A "'known' creditor is one whose identity is either known or 'reasonably ascertainable by the debtor.'" Chemetron, 72 F.3d at 346. "A creditor's identity is 'reasonably ascertainable' if that creditor can be identified through 'reasonably diligent efforts.'" Id. (quoting Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 798 n.4 (1983)).

An unknown creditor, on the other hand, "is one whose 'interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor]." Chemetron, 72 F.3d at 346 (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 317 (1950)). "For unknown claimants, notification by publication will generally suffice." Chemetron, 72 F.3d at 346.

A.    **Chemetron Does Not Dictate the Conclusion that Appellants Are Unknown Creditors**

Relying on Chemetron, the Bankruptcy Court concluded that Appellants were unknown creditors because Grace reviewed its books and records, but did not identify the Appellants as claimants.[3] In so concluding, the Bankruptcy Court erred.

---

[3] The Bankruptcy Court did not enter findings supporting its ruling; rather its order adopted the arguments set forth by the Debtors in their briefs. See Order Denying Appellants' Motion for Leave to File Late Proofs of Claim, A-337 to A-338.

The Third Circuit has held that while a debtor's duty of reasonable diligence does not require "a vast, open-ended investigation," the debtor has at least a duty to review its "own books and records." Chemetron, 72 F.3d at 346. In accord with Supreme Court precedent, the Third Circuit has further held that a debtor's duty of reasonable diligence depends on the specific facts of each case and that under some circumstances, a debtor's duty of reasonable diligence requires a debtor to look beyond its books and records:

> Although some courts have held, regardless of the circumstances, that the "reasonably ascertainable" standard requires only an examination of the debtor's books and records, without an analysis of the specific facts of each case . . . we do not construe it so narrowly. Situations may arise when creditors are "reasonably ascertainable," although not identifiable through the debtor's books and records.

Chemetron, 72 F.3d at 346-47 n.2. See also, Mullane, 339 U.S. at 314-15 (notice is adequate under Due Process clause if the "practicalities and peculiarities of the case" are reasonably met); Walker v. City of Hutchinson, 352 U.S. 112, 115-16 (1956) (stating that in Mullane the Court "called attention to the impossibility of setting up a rigid formula as to the kind of notice that must be given; notice required will vary with circumstances and conditions").

The specific facts of Chemetron – the speculative nature of the claims – did not require the debtor to look beyond its books and records. The Chemetron claimants alleged that they had suffered personal injuries as a result of being exposed to radiation emitted from the debtor's contaminated landfill. However, only two of the twenty-one claimants had actually lived in the vicinity of the landfill; the other twenty claimants had only visited properties near the landfill on a periodic basis; and none of the claimants lived in the vicinity of the landfill at the time the debtor filed for bankruptcy. For this reason, the court did not address precisely when the "reasonably ascertainable" standard requires more than reference to a debtor's books and records.

The specific facts of the Appellants' case demonstrate that the Appellants' claims were not speculative or conjectural, and that Grace had specific knowledge of Appellants' claims:

- Grace's books and records showed that it had shipped tons of Libby vermiculite to the precise site in question, in care of the Processing Distributors, Vermiculite Intermountain and Intermountain Insulation, at 333 West First Street over the course of several decades.

- Grace's books and records showed that it had licensed the Processing Distributors to use its patented vermiculite processing techniques and trademarked product names.

- Grace's books and records showed that it had received royalty payments on products manufactured and sold by the Processing Distributors.

- Grace's books and records showed that Libby vermiculite contained amphibole asbestos, a toxic substance released during the vermiculite processing operation.

- Grace's books and records showed that Block 66, on which 333 West First Street is located, was contaminated as a result of these activities.  Grace's knowledge of this fact was substantiated when Grace scheduled an environmental claim for Intermountain Insulation at "333 West First Street," when Grace scheduled an environmental claim for the EPA for the Subject Property, and when Grace told the EPA that the Subject Property was a vermiculite processing site.

- Grace filed for bankruptcy because of mounting liability stemming from its Libby operations.

- A simple title search of public records would have revealed that Appellant PacifiCorp is the current owner of a large portion of Block 66.  A search likewise would have revealed the VanCott Plan as an immediate past owner.

- The cost of a simple title search of public records is at most nominal.

In sum, Grace's books, records, and bankruptcy schedules clearly indicated that Grace had caused environmental damage on a specific parcel of property.  Thus, Grace knew that the current and former owners of the Subject Property were subject to statutory environmental

claims and, as such, were in position to assert their own claims against Grace.[4]  By contrast, the claims asserted in <u>Chemetron</u> were personal injury claims; the claimants did not live in the vicinity of the debtors' property; the debtor was unaware of the claimants' injuries; and there was no way the debtor could track down the claimants had the debtor known of the injuries.

Given the factual disparity between <u>Chemetron</u> and Appellants' case, the conclusion that the <u>Chemetron</u> debtor was not required to investigate outside its books and records cannot be applied equally to Grace.  Because Grace had specific knowledge of its environmental liability arising from Block 66 in downtown Salt Lake City and of the Appellants' CERCLA contribution claims against Grace, the Bankruptcy Court erred in summarily concluding that Appellants were unknown creditors simply because their names and addresses were not in Grace's books and records.  Under the "practicalities and peculiarities" of Appellants' case, notice by publication to Appellants was not "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action" and did not afford Appellants the opportunity to present their objections.  <u>Mullane</u>, 339 U.S. at 315.  The Bankruptcy Court failed to recognize that Grace's specific knowledge of an environmental claim arising from the Subject Property gave rise to the precise situation anticipated by the <u>Chemetron</u> court – the situation where a creditor is reasonably ascertainable, but not necessarily identifiable in the debtor's books and records.

In addition to <u>Chemetron</u>, the Bankruptcy Court accepted the Debtors' arguments based on <u>In re Bicoastal Corp.</u>, 147 B.R. 807 (Bankr. M.D. Fla. 1992) and <u>In re Texaco Inc.</u>, 182 B.R. 937, 954-55 (Bankr. S.D.N.Y. 1995), that creditors are unknown if they cannot be identified in a debtor's books and records.  While the specific facts of <u>Bicoastal</u> and <u>Texaco</u> may have rendered a search outside the debtors' books and records impractical and unreasonable, the specific facts

---

[4] Under applicable environmental law past and present owners of contaminated property are liable for cleanup costs. 42 U.S.C. §9607(a); 42 U.S.C. § 9614(f)(1).

of Appellants' case do not. In both <u>Bicoastal</u> and <u>Texaco</u>, the debtors were unaware of environmental claims linked directly to a specific parcel of real property. In both cases, the debtors did not know or have reason to know that a toxic plume had migrated from the debtors' property to the claimants' property. <u>Texaco</u>, 182 B.R. at 954-55 ("no evidence was presented remotely suggesting" that the debtor "had any reason to believe" that the toxic plume migrated two miles underground to the claimant's property); <u>Bicoastal</u>, 147 B.R. at 808-809 (debtor had no notice of potential claim). In contrast, in the Appellants' case, Grace had specific knowledge of an environmental claim arising from Block 66 in Salt Lake City. In <u>Bicoastal</u> and <u>Texaco</u>, both courts concluded that it was unreasonable to require the debtors to search for possible claimants since the affected areas were unknown and too large. <u>Texaco</u>, 182 B.R. at 954; <u>Bicoastal</u>, 147 B.R. at 809. Here, the affected area was known, geographically defined, and comparatively small. In short, given the specific facts of this case, allowing Grace to exercise the same level of diligence as the <u>Bicoastal</u> and <u>Texaco</u> debtors in identifying claimants amounts to a "mere gesture" and violates Appellants' right to due process. <u>See</u> <u>Mullane</u>, 339 U.S. at 315.

### B.     The Debtors Did Not Exercise Reasonable Diligence Since They Failed to Ascertain Appellants' Identities

*1.     Under Supreme Court precedent, the Debtors had a duty to identify the Appellants using public records.*

The Bankruptcy Court adopted the Debtors' argument that the duty of reasonable diligence did not require the Debtors to look outside their books and records to ascertain the current and former owners of contaminated land, despite the Debtors' knowledge of environmental liability arising directly from the Subject Property, and despite the fact that doing so would have required minimal effort and cost. In so concluding, the Bankruptcy Court erred. Under Supreme Court precedent, current and former owners of real property are reasonably

ascertainable where the debtor knows of the existence of a claim tied to real property and of related claimants whose identities and addresses are readily available in the public records.

In Mullane, the Supreme Court stated that where claims are "conjectural or future," "impracticable and extended searches are not required in the name of due process." Mullane, 339 U.S. at 317-18. However, the Supreme Court tempered this statement by holding that "[w]here the names and post-office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency." Mullane, 339 U.S. at 318. Applying this rule, the Court observed that the names and addresses were on the books of the trustee. Thus, the situation where the claimants' names and addresses were on the books and records was but an example of when claimants' names and addresses are "at hand." Here, as stated above, the Appellants' claims are not conjectural or future. As discussed below, Appellants' identities and addresses were "at hand," or reasonably ascertainable. Therefore, under Mullane, publication notice in this case was unreasonable.

In other cases following Mullane, the Court has held that claimants' names and addresses are "at hand" if they are easily obtained from public records. Mennonite, 462 U.S. at 798; Schroeder v. City of New York, 371 U.S. 208, 212-13 (1962); Walker v. City of Hutchinson, 352 U.S. 112, 116 (1952). In Mennonite, the Court held that a mortgagee identified in a publicly recorded mortgage is "reasonably identifiable" and entitled to actual notice of a proceeding to sell the mortgaged property for nonpayment of taxes. Mennonite, 462 U.S. at 798. This was true even though the mortgage on file with the county recorder only identified the mortgagee by name and did not list an address. The Court stated: "We assume that the mortgagee's address could have been ascertained by reasonably diligent efforts," thereby holding that it was proper

for the county to look outside its books and records to other public records. Id. at 798 n.4 (citing Mullane, 339 U.S. at 317).

Schroeder involved a statute allowing the City of New York to condemn property after publication notice to affected landowners. The Court held that the statute violated Due Process because "a [landowner] whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question" is entitled to actual notice. Schroeder, 371 U.S. at 212-13 (citing Mullane, 339 U.S. at 318). The landowner's "name and address were readily ascertainable from both deed records and tax rolls." Id. Similarly, in Walker, relying on principles set forth in Mullane, the Court held that a person whose "name was known to the city and was on the official records" was "known" and entitled to actual notice of proceedings determining compensation for property condemned by the city of Hutchinson. Again, in both Schroeder and Walker, the Court held that the cities' duties of reasonable diligence required them to look outside their books and records to county deed records and tax rolls.[5]

Mennonite, Schroeder, and Walker are strikingly similar. In all of these cases, the interests of the parties entitled to receive notice were tied directly to real property. By virtue of this connection, all of the parties required to give notice knew of the existence of affected parties, but did not know the identities and addresses of such parties. Because of this link, the identities and addresses of such parties were ascertainable through public records. Under these

---

[5] The Debtors' Response to Appellants' Reply argued that Mennonite, Schroeder, and Walker are distinguishable from this case because those cases involved "state entities," and the holding of those cases that "state entities had duties to check their public records" is the same standard set forth by Chemetron ("that a party must review its own books and records"). Debtors' Response, at A-356. However, as discussed above, in each of these cases, the parties were required to look outside their books and records. Presently, the New York City Register maintains property records back to 1966 for Manhattan, the Bronx, Brooklyn, and Queens. The New York City Register does not maintain records for Orange County, which has its own records division. Likewise, Reno County, Kansas, in which the city of Hutchinson is located, maintains a registry of deeds.

circumstances, in all of these cases, the Court determined that reasonable diligence required that the identities and/or addresses of interested parties be ascertained using public records.

All of these cases are directly applicable to the case at hand. Grace's books and records indicated that it was subject to environmental liability arising from certain real property, Block 66. Grace scheduled an environmental claim for Intermountain Insulation relating to property located at 333 West First Street; the EPA filed an environmental claim relating to the Subject Property. Thus, Grace knew current and former owners of the Subject Property were environmental claimants whose claims were tied directly to the Subject Property. Although Grace did not know the Appellants' specific identities or addresses, it knew there were such claimants and it was reasonable to require Grace to ascertain them using public records. With little effort and nominal cost Grace could have looked to public records to determine the Appellants' identities and addresses.

Although Grace argued to the Bankruptcy Court that these cases all involved government entities looking in their own records, as noted above, in <u>Mennonite</u>, <u>Schroeder</u>, and <u>Walker</u>, the entities were required to look outside their own records. Furthermore, the Supreme Court has required extensive searches of outside records when the specific facts of the case so require. In <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 176 (1974) (citing <u>Mullane</u>, 339 U.S. at 314-18), the Court ruled that of six million potential members of a class action suit, the names and addresses of 2,250,000 class members were "easily ascertainable" and entitled to notice of a class action suit under Rule 23 of the Federal Rules of Civil Procedure. The <u>Eisen</u> petitioner brought a class action suit on behalf of himself and "odd-lot traders" on the New York Stock Exchange ("NYSE"). The petitioner sued two brokerage firms (the "Odd-Lot Brokerage Firms"), which handled 99% of the NYSE's odd-lot business. The Court affirmed the lower court's ruling that

with "reasonable effort," the petitioner could identify the names and addresses of potential members by comparing the records of the two Odd-Lot Brokerage Firms with intermediary brokerage firms who transmitted the potential class members' odd-lot transactions to the Odd-Lot Brokerage Firms. Eisen, 417 U.S. at 167 n.5, 176. Thus, in Eisen, the Court required the petitioner to use the respondent's books and records to ascertain the identities and addresses of millions of potential class members. Furthermore, despite the near "Herculean" cost and effort required, the Court found such costs and efforts reasonable.

Compared to Eisen, the effort required to ascertain identities of Appellants and other similarly situated parties is minimal. The EPA's proof of claim listed 30 environmental sites in 18 states. Grace knew of approximately 36 other processing distributors. Given that Grace paid approximately $4 million for publication notice, ascertaining the current and former owners of Grace's environmentally contaminated sites is not an unreasonable burden.

> 2.    *Supreme Court precedent requiring the Debtors to ascertain the identities of Appellants applies in the environmental and bankruptcy contexts.*

As discussed, the Supreme Court has repeatedly held that where a party required to give notice knows of a claim tied to real property and of affected claimants, claimants whose identities and addresses are available in public records are reasonably ascertainable. This rule has been applied in bankruptcy. In In re Argonaut Fin. Serv., Inc., 164 B.R. 107 (N.D. Cal. 1994), the debtor, a lessee of real property, argued that certain investors who had interests in the deed of trust lender's interest in the property were not entitled to actual notice of its chapter 11 case. The court found that the debtor knew that the trust deed lender had assigned a portion of its interest to investors. Given this knowledge, the court held that the identities of the investors were reasonably ascertainable since it would have been "easy" for the debtor to learn of the assignment and the assignee-investors' identities. Id. at 112. This was because "[t]here is and

was no secret regarding the identity of the assignees (indeed, the assignment was even officially recorded in Alameda County)." Id.

In Waterville Industries, Inc. v. First Hartford Corp., the court held that successors in title to contaminated real property were reasonably ascertainable.  124 B.R. 411, 413 (D. Maine 1991).  Waterville, the claimant, and the EPA entered into a consent agreement in 1989 requiring Waterville to clean up contaminated property, which Waterville purchased in 1983.  Waterville sued the property's predecessor in interest, First Hartford, for contribution.  First Hartford had filed for bankruptcy in 1981; its chapter 11 plan had been confirmed in 1984; and First Hartford had received a discharge in 1987.  First Hartford's defense to Waterville's contribution claim was that all pre-confirmation environmental liabilities had been discharged, and at the time it filed for bankruptcy, it had no reason to know that Waterville would purchase the property. However, the court disagreed.  The court held that First Hartford failed to give Waterville reasonable notice of its reorganization because the debtor "knew of certain specific environmental claims and knew of a class of claimants – subsequent title holders . . . that it could have listed. Id. at 413.  "As a result, [the debtor] was on notice that successors in title to the Waterville real estate . . . could be ultimately obliged to incur cleanup costs . . . giving them a right to recovery against [the debtor]." Id.

As in the Supreme Court cases discussed above, in both Argonaut and Waterville, the debtors had specific knowledge of claims tied directly to real property.  The Argonaut debtor knew of assignee-investors whose rights would be affected by the debtor's bankruptcy filing; the Waterville debtor knew that its property was contaminated and that successors in title would incur environmental liabilities.  Moreover, because the claims were tied to real property and

therefore the identities of the claimants could be ascertained with relative ease, the courts held that the claimants were reasonably ascertainable.

Under Argonaut and Waterville, the Appellants were reasonably ascertainable, Grace knew there would be a class of claims directly arising from the Subject Property. Because the claims were tied to real property, the identities of current and former owners – parties whose interests were sure to be affected by the Bar Date – were in public records and easily ascertainable. By holding that the Appellants were unknown creditors not deserving actual notice, the Bankruptcy Court failed to properly apply Chemetron, Supreme Court precedent, and applicable bankruptcy cases. Providing due process is a constitutional duty Grace cannot properly discharge by refusing to take the simple, inexpensive step of looking in public land records to determine which parties own and owned the land it contaminated. The Appellants urge the Court to conclude that in failing to hold Grace to constitutional requirements, the Bankruptcy Court committed reversible error.

## II.    THE BANKRUPTCY COURT'S ANALYSIS OF EXCUSABLE NEGLECT WAS INADEQUATE AND ITS' RULING IN THAT REGARD AN ABUSE OF DISCRETION

A determination of whether Appellants were or were not "known" creditors, while important, is not dispositive of whether there was excusable neglect in Appellants' failure to file proofs of claim before the court imposed March 31, 2003 bar date. Even if this Court concludes that Appellants are "unknown" creditors, the Bankruptcy Court abused its discretion by failing to give due regard to Appellants' claims of excusable neglect. Chemetron makes this point clearly. After concluding that the appellant in that case was not a "known creditor" entitled to actual notice of the bar date, the Chemetron court went on to find:

> Although we find little merit in claimants' notice arguments, we believe their claim of 'excusable neglect' received inadequate consideration. Bankruptcy Rule 9006 empowers a bankruptcy

> court to permit a creditor to file a late claim if movant's failure to
> comply with an earlier deadline 'was the result of excusable
> neglect . . . In the instant case, because claimants are unknown
> creditors and Chemetron's publication notice was sufficient,
> claimants must show that their failure to file in a timely manner
> was due to 'excusable neglect,' otherwise their claims arising
> prepetition will be barred.

Chemetron, 72 F.3d at 349.

With respect to excusable neglect, Chemetron made mention of the Supreme Court's

germinal decision on the issue, Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. Partnership,

507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed 2d 74 (1993). With respect to the excusable neglect

issue, Pioneer was significant for two reasons. First, it reflected a liberal approach toward the

issue. The Supreme Court concluded that excusable neglect was a "somewhat 'elastic concept'

and [was] not limited strictly to omissions caused by circumstances beyond the control of the

movant." Pioneer, 507 U.S. at 391. Second, the Court identified factors that required evaluation

in determining the issue including "the danger of prejudice to the debtor, the length of the delay

and its potential impact on judicial proceedings, the reason for the delay including whether it was

within the reasonable control of the movant, and whether movant acted in good faith." Pioneer,

507 U.S. at 395.

It is evident from Chemetron and two other recent Third Circuit decisions, Orthopedic

Bone Screw Products Liability Litigation, 246 F.3d 315 (3d Cir. 2001) ("Orthopedic") and

Manus v. NRG Energy, Inc. (In re O'Brien Environmental Energy, Inc.), 188 F.3d 116 (3d Cir.

1999) ("Manus"), that in this Circuit a cursory review of the Pioneer factors is not adequate. In

that regard, Chemetron noted:

> Although the totality of circumstances analysis conducted by the
> district court was more appropriate than that conducted by the
> bankruptcy court, the district court's analysis also fell short of that
> required under Pioneer. The district court failed to undertake a
> comprehensive analysis of how the claimants' late filing would

> prejudice Chemetron and also failed to consider the role that
> Chemetron might have played in contributing to the delay.

72 F.3d at 350.

Although they did not arise in the context of a motion to extend a bankruptcy claims bar date, Orthopedic and Manus both focused on the excusable neglect issue. In different contexts, each involved a requested extension of a deadline. In Manus it was in connection with a bankruptcy court determination of the amount necessary to cure an executory contract. In Orthopedic the issue arose with respect to participation in a mandatory non-opt out settlement class. The creditor in Manus had failed to respond timely to an application to fix the amount necessary to cure a default under a contract in conjunction with its assumption by the debtor pursuant to 11 U.S.C. § 365. In Orthopedic, on the other hand, the claimant had failed to comply with a registration deadline. In each case, the Third Circuit reversed a trial court conclusion that excusable neglect had not been established.

In terms of the standard which governs this appeal, Orthopedic is particularly significant. Recognizing excusable neglect to be an issue committed to the discretion of the trial court, the Third Circuit in Orthopedic noted: "We will therefore not disturb an exercise of discretion unless there is a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." 246 F.3d at 320. The Orthopedic court noted that, "in reviewing the District Court's order denying the appellant Sambolin participation in the settlement, we are hampered by the summary treatment given his claim by the Court." In that same spirit, the Court, citing Interpace Corp. v. City of Philadelphia, 438 F.2d 401, 404 (3d Cir. 1971), observed that in ruling on the excusable neglect issue: "It is a salutary practice to give litigants, either orally or in writing, at least a minimum articulation of the reasons for its decision." Orthopedic, 246 F.3d at 321. With that as background, the Circuit

Court analyzed the Pioneer factors as they pertained to Sambolin's assertion of excusable neglect. Finding that the effect of inclusion of the claimant in the settlement class was at best marginal, that the reasons for and duration of the delay were within reason and that the movant had acted in good faith, the Court concluded that "the District Court did not perform a balancing of the equitable factors of excusable neglect in determining Sambolin's exclusion from the settlement class, and because none of the equitable factors support the District Court's result, we conclude that its holding was necessarily in error." 246 F.3d at 329.

Manus, although it acknowledged that a Pioneer analysis in fact had been undertaken, disagreed with the bankruptcy court's evaluation of potential prejudice as well as the reason for and extent of the delay. Like Orthopedic, the Third Circuit in Manus complained that the trial court's decision failed to include an adequate factual analysis or detailed articulation of the prejudice that would result from relieving the appellant from an imposed deadline. In that regard, the Court emphasized that "prejudice is not an imagined or hypothetical harm," and "a finding of prejudice should be a conclusion based on facts and evidence." 188 F.3d at 128.

Orthopedic, Manus, and another recent decision, Welch & Forbes, Inc. v. Cendant. Corp. (In re Cendant Corp. Prides Litigation), 233 F.3d 188, 196 (3d Cir. 2000), reflect the Third Circuit's liberal approach in extending deadlines based on excusable neglect. That attitude is entirely consistent with the "elastic" approach of the Supreme Court in Pioneer. Taken together, Chemetron, Orthopedic, Manus and Cendant Corp., require that, in any determination of excusable neglect, there be a thorough analysis of the facts and a specific articulation of the court's reasoning.

The proceedings and decision below were fundamentally at odds with the thorough consideration mandated by the recent Third Circuit excusable neglect decisions. As a starting

point, the Bankruptcy Court did not even conduct an evidentiary hearing. The Appellants did present affidavits of PacifiCorp representatives, Dale Rasmussen (Exhibit D to Motion to File Late Claims, at A-100 to A-102) and Stacey Davis (Exhibit E to Motion to File Late Claims, at A-103 to A-105), and of Steven Swindle, president of VanCott, Bagley, Cornwall & McCarthy and a trustee of the VanCott Plan (Exhibit H to Motion to File Late Claims, at A-111 to A-129). The Rasmussen Affidavit detailed procedures for monitoring legal notices to PacifiCorp and noted that, after careful inquiry, it did not appear that the Bar Date Notice was received by PacifiCorp, clearly not by any individual involved in discovery and removal of asbestos from the Subject Property. The Davis Affidavit indicated that the PacifiCorp Customer Service Department had filed a $1,375 claim for electric service to Grace but that, at the time, the Department was unaware of asbestos contamination at the Subject Property. The Swindle Affidavit not only denied receipt of the Bar Date Notice by either the VanCott Plan or the VanCott firm but also indicated that, as of the March 31, 2003 Bar Date, the VanCott Plan did not, and had not for approximately five years, owned any part of the Subject Property. Further, as of the Bar Date, the VanCott Plan was unaware of any environmental problems associated with the Subject Property. Not until it received a June 18, 2004 inquiry from the EPA did the VanCott Plan have any information of an environmental problem with respect to the Subject Property.

In addition to the Affidavits, Appellants' Motion to File Late Claims expressly incorporated by reference a number of pleadings filed in their bankruptcy cases by the Debtors including their Statement of Financial Affairs and Schedules (Exhibit G to Motion to File Late Claims, at A-110), their Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code (the "Plan") (Bankr. D.I. 6895) and related Disclosure Statement

(Bankr. D.I. 6896) filed only two months before Appellants filed the Motion to File Late Claims and Debtors' November 2, 2004 Operating Report (Bankr. D.I. 6806). At the time Grace filed its Plan, two major creditor groups, the Zonolite property damage claimants and the asbestos personal injury claimants, still had not been required to file proofs of claim. Nonetheless, as pointed out in the Motion to File Late Claims, Grace's November 2, 2004 Operating Report estimated total liabilities of in excess of $2.8 billion. Further, the Plan was premised and conditioned on asbestos personal injury and property damage claims not exceeding $1.483 billion. In contrast, Appellants estimated that their claims with respect to the Subject Property amounted in aggregate to less than $10 million. Motion to File Late Claims, at A-12. In early 2005, when the Bankruptcy Court considered Appellants' Motion to File Late Claims, the Plan had not been confirmed. As of the date of the Bankruptcy Court's ruling on the Motion to File Late Claims, Grace's Reorganization Plan still was in limbo. The Bankruptcy Court had not even entered an order approving the Disclosure Statement and authorizing solicitation of Plan consents. Finally, Grace's Statement of Financial Affairs and Schedules disclosed a contingent, disputed unliquidated environmental claim of Intermountain Insulation Co. with respect to the Subject Property. Although Intermountain Insulation did not file a timely proof of claim with respect to the Subject Property, one was filed by the EPA.

Grace, in its Objection, did not challenge these factual allegations. Instead, it argued that Appellants' Motion to File Late Claims, if granted, would "thwart the purposes of the Bar Date," "detrimentally affect the Debtor's plan projections" and "open the 'floodgates' for similar claims." Debtor's Objection, at A-171. These contentions simply do not stand up to scrutiny. While bar dates are important in bankruptcy administration, that alone cannot preclude late claims or there would be no purpose to the excusable neglect exception in Rule 9006 (b) of the

Federal Rules of Bankruptcy Procedure. Grace's "plan projections" contention is equally unavailing when the court takes into account the fact that (1) Appellants claims are but a small fraction (about 1%) of Grace's total obligations, (2) the claims of major creditor groups (Zonolite claims and asbestos personal injury claims) still have not been filed, let alone adjudicated, and (3) Plan consideration and confirmation has yet to occur and, given the Debtors' current conflicts, may not occur for some time.

Grace's "floodgate" argument is equally uncompelling. Appellants' Motion to File Late Claims turns on facts which are unique to the Appellants. There is no indication in the record that others have come forward or are primed to come forward on the same set of facts on which the Appellants' premised their Motion to File Late Claims. As such, a ruling that Appellants' neglect was excusable undoubtedly will have little or no impact on the administration of the Debtors' cases. Thus, in terms of prejudice, the Bankruptcy Court's ruling was wholly unsupported.

In terms of the other Pioneer factors, the record is equally devoid of facts to support Grace's position. Grace presented no facts refuting affidavits to the effect that Appellants' failure timely to file claims was inadvertent. Moreover, as to the VanCott Plan, the uncontradicted evidence in the Swindle Affidavit indicates that the VanCott Plan was unaware of any problem with the Subject Property until mid-2004 when the VanCott Plan received an inquiry letter from the EPA. Within months the VanCott Plan, joined by PacifiCorp, filed the Motion to File Late Claims. This was long before serious consideration, let alone confirmation, of Grace's Plan.

Appellants submit that the record before the Bankruptcy Court did not support its conclusion that excusable neglect had not been established. Indeed, the uncontradicted facts

make a compelling showing of excusable neglect. The Bankruptcy Court's consideration of the issues was manifestly inadequate, and its decision a clear abuse of discretion.

## III. THE BANKRUPTCY COURT ERRED IN RULING THAT THE VANCOTT PLAN RECEIVED ACTUAL NOTICE OF THE BAR DATE

Because it did not enter specific findings, it is not clear whether the Bankruptcy Court's ruling included a determination that personal service of the Bar Date Notice in fact had been effected on the VanCott Plan. The only evidence to support that conclusion would have been the relevant proof of service which included the VanCott Firm as one of the served entities. To reach a conclusion of actual service, however, the court would have had to disregard, or entirely discount, the two affidavits of Steven Swindle, president of the VanCott Firm and a trustee of the VanCott Plan. Swindle stated categorically that neither he nor any other responsible member of the VanCott Firm had ever seen the Bar Date Notice. Swindle speculated that the VanCott Firm, as opposed to the VanCott Plan, may have been included in the service list because it previously had represented Grace in a matter unrelated to the bankruptcy and as to which services had been completed and fully compensated. Swindle conjectured that the Bar Date Notice may not have been delivered because of address errors. The address reflected in the proof of service included the wrong Salt Lake City zip code and did not include the VanCott Firm's suite number. Swindle noted that, in the past, the failure to include a suite number had resulted in non-delivery of mail directed to the Firm.

The inquiry into effective service does not end with inclusion in a service list. True, under Rule 9006 (e) of the Rules of Bankruptcy Procedure and common law, a presumption of "actual notice" arises with respect to mailed pleadings. That presumption only arises, however, if there is proper mailing. In that regard, the Fifth Circuit, in In re Eagle Bus. Mfg., Inc., 62 F.3d 730, 735-36 (5th Cir. 1995) noted, "[t]o determine if a mailing was accomplished the courts may

consider whether the notice was correctly addressed, whether proper postage was affixed, whether it was properly mailed, and whether a proper certificate of service was filed." In this case, the VanCott Plan pointed to three separate mistakes in Grace's addressing of the Bar Date Notice. For one thing, the VanCott Plan was not the addressee. Rather, the alleged service was on the VanCott Firm. Beyond that, the address included an incorrect zip code and did not include a suite number. Taken together with Swindle's denial of receipt, these addressing errors are significant.

In its response, other than pointing to the proof of service, Grace introduced no evidence to substantiate actual delivery. Instead, Grace argued (1) that an unidentified attorney had been advised by an unidentified VanCott Firm receptionist that deliveries to the VanCott Plan should be through the Firm's general mailing address and (2) that, although incorrect, the zip code was close to the correct number. Grace did not attempt to refute allegations with respect to failure to include a suite number.

Whether the VanCott Plan did or did not receive the Bar Date Notice raises a clear issue of fact. Yet, the Bankruptcy Court reached its decision without witnesses, most particularly the one person most competent to testify as to the issue of receipt, the VanCott Firm president, Steven Swindle. If the Court elected to proceed on affidavit alone, the combination of a flat denial of receipt, uncontested addressing errors and a specific statement that similar errors previously had led to non-delivery of mail would not support a conclusion of proper service. At a minimum, Swindle's denial of receipt would bear directly on the VanCott Plan's case for excusable neglect under Bankruptcy Rule 9006 (b).

## CONCLUSION

Appellants respectfully request that this Court reverse the Bankruptcy Court's Order denying Appellants leave to file late proofs of claim on either or both of the grounds set forth in this Brief. Alternatively, the matter should be remanded for further consideration and findings with respect to the excusable neglect issue.

Dated: November 28, 2005                   **LANDIS RATH & COBB LLP**


                                           Richard S. Cobb (#3157)
                                           Megan N. Harper (#4103)
                                           919 Market Street, Suite 600
                                           P.O. Box 2087
                                           Wilmington, DE 19899
                                           Telephone: (302) 467-4400
                                           Facsimile: (302) 467-4450

                                           Attorneys for Appellants PacifiCorp and the
                                           VanCott Bagley Cornwall & McCarthy 401(k)
                                           Profit Sharing Plan

                                           -and-

                                           MABEY & MURRAY LC
                                           Steven J. McCardell, Esquire
                                           Jared L. Inouye, Esquire
                                           1000 Kearns Building
                                           136 South Main Street
                                           Salt Lake City, UT 84101-1685
                                           Telephone: (801) 320-6700
                                           Facsimile: (801) 359-8256

                                           Attorneys for Appellant PacifiCorp

                                           -and-

VANCOTT, BAGLEY, CORNWALL &
MCCARTHY
J. Robert Nelson, Esquire
50 South Main Street
Salt Lake City, UT 84144-0450
Telephone:  (801) 237-0270
Facsimile:  (801) 534-0058

Attorneys for Appellant VanCott Bagley Cornwall
& McCarthy 401(k) Profit Sharing Plan