# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br><br>W.R. Grace & Co., *et al*.,<br><br>     Debtors.<br><br>PacifiCorp and the VanCott Bagley Cornwall & McCarthy 401(k) Profit Sharing Plan,<br><br>     Appellants,<br><br>v.<br><br>W.R. Grace & Co., *et al*.,<br><br>     Appellee. | Chapter 11<br><br>Case No. 01-01139 (JKF)<br>Jointly Administered<br><br><br>C.A. No. 05-764 (RLB)<br><br><br>Re: Docket Nos. 3 and 4 |

## APPENDIX TO APPELLANTS' BRIEF

Richard S. Cobb (#3157)
Megan N. Harper (#4103)
**LANDIS RATH & COBB LLP**
919 Market Street, Suite 600
P.O. Box 2087
Wilmington, DE 19899
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

Attorneys for Appellants PacifiCorp and the
VanCott Bagley Cornwall & McCarthy 401(k)
Profit Sharing Plan

-and-

Steven J. McCardell, Esquire
Jared L. Inouye, Esquire
**MABEY & MURRAY LC**
1000 Kearns Building
136 South Main Street
Salt Lake City, UT 84101-1685
Telephone: (801) 320-6700
Facsimile: (801) 359-8256

Attorneys for Appellant PacifiCorp

-and-

J. Robert Nelson, Esquire
**VANCOTT, BAGLEY, CORNWALL &
MCCARTHY**

50 South Main Street
Salt Lake City, UT 84144-0450
Telephone: (801) 237-0270
Facsimile: (801) 534-0058

Attorneys for Appellant VanCott Bagley Cornwall
& McCarthy 401(k) Profit Sharing Plan

# APPENDIX
# TABLE OF CONTENTS

PAGE
NO.

Notice of Motion............................................................................................................ A-1

PacifiCorp and the Vancott Bagley Cornwall & McCarthy 401(K) Profit Sharing Plan's
Motion for Leave to File Late Proofs of Claim .......................................................... A-3

Debtors' Objection to PacifiCorp and the VanCott Bagley Cornwall & McCarthy
401(K) Profit Sharing Plan's Motion for Leave to File Late Proofs of Claim ....................... A-159

Reply Brief to W.R. Grace's Objection to PacifiCorp and the VanCott Bagley
Cornwall & McCarthy 401(K) Profit Sharing Plan's Motion for Leave to File Late
Proofs of Claim .........................................................................................................A174

Debtors' Response to PacifiCorp and the VanCott Bagley Cornwall & McCarthy
401(K) Profit Sharing Plan's Brief in Support of Their Motion for Leave to File Late
Proofs of Claim ........................................................................................................ A-296

Transcript of February 28, 2005 Hearing .............................................................. A-318

Order Denying PacifiCorp and the VanCott Bagley Cornwall & McCarthy 401(K)
Profit Sharing Plan's Motion for Leave to File Late Proofs of Claim................................... A-337

COPY

LLG & M

JAN 2 4 2005

RRM

copy : AM

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W.R. GRACE & CO., et al., | ) Case No. 01-01139 (JKF) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Hearing Date:** February 28, 2005 at 12:00 p.m. ET |
| | ) **Objections due:** February 11, 2005 at 4:00 p.m. ET |

### NOTICE OF MOTION

TO:    All parties required to receive notice pursuant to Del. L.R. 2002-1.

PacifiCorp and the VanCott Bagley Cornwall & McCarthy 401(k) Plan (collectively, the "Movants") have filed the attached **PacifiCorp and the VanCott Bagley Cornwall & McCarthy 401(K) Profit Sharing Plan's Motion for Leave to File Late Proofs of Claim** pursuant to 11 U.S.C. § 105(a) and Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure (the "Motion").

Objections, if any, to the relief requested in the Motion must be filed with the United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801, on or before **February 11, 2005 at 4:00 p.m. (ET).**

At the same time, you must also serve a copy of the objection upon the undersigned counsel so as to be **received no later than 4:00 p.m. (ET) on February 11, 2005.**

A HEARING, IF NECESSARY, ON THE MOTION WILL BE HELD BEFORE THE HONORABLE JUDITH K. FITZGERALD, UNITED STATES BANKRUPTCY COURT JUDGE, IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE, 824 N. MARKET STREET, 6TH FLOOR, WILMINGTON, DELAWARE 19801, ON **FEBRUARY 28, 2005 AT 12:00 P.M. (ET).**

487.001-6581.DOC

DKT. NO. 7571
DT. FILED 1|4|05

A-1

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF DEMANDED BY THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

Dated: January 14, 2005

LANDIS RATH & COBB LLP

Richard S. Cobb (#3157)
919 Market Street, Suite 600
P.O. Box 2087
Wilmington, DE 19899
(302) 467-4400

Attorneys for PacifiCorp and the VanCott Bagley Cornwall & McCarthy 401(k) Profit Sharing Plan

-and-

LEBOEUF, LAMB, GREENE & MACRAE
Steven J. McCardell  (#2144)
Jared L. Inouye  (#9776)
1000 Kearns Building
136 South Main Street
Salt Lake City, UT 84101-1685
(801) 320-6700

Attorneys for PacifiCorp

-and-

VANCOTT, BAGLEY, CORNWALL & MCCARTHY
J. Robert Nelson (#4519)
50 South Main Street
Salt Lake City, UT 84144-0450
(801) 237-0270

Attorneys for the VanCott Bagley Cornwall & McCarthy 401(k) Profit Sharing Plan

2

A-2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Hearing Date:** February 28, 2005 at 12:00 p.m. ET |
| | ) | **Objection Date:** February 11, 2005 at 4:00 p.m. ET |
| | ) | |

## PACIFICORP AND THE VANCOTT BAGLEY CORNWALL & MCCARTHY 401(K) PROFIT SHARING PLAN'S MOTION FOR LEAVE TO FILE LATE PROOFS OF CLAIM

PacifiCorp and the VanCott Bagley Cornwall & McCarthy 401(k) Profit Sharing Plan ("the VanCott Plan"), by and through their undersigned counsel, hereby move pursuant to 11 U.S.C. § 105(a) and Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure for entry of the proposed Order attached hereto, granting PacifiCorp and the VanCott Plan (collectively, the "Movants") leave to each file a late proof of claim on grounds of excusable neglect.

### INTRODUCTION

1.      Movants' claims are for environmental cleanup costs incurred and to be incurred to cleanup the Vermiculite Intermountain Site and adjoining property (the "Subject Property"), as to which the EPA previously filed a timely proof of claim. PacifiCorp owns a portion of the "Subject Property"; the VanCott Plan is a former owner of the Subject Property. The Subject Property was contaminated with amphibole asbestos from a vermiculite exfoliating plant (the "Vermiculite Intermountain Facility"), which processed vermiculite from the Libby, Montana vermiculite mine. W.R. Grace & Co. and/or various related entities ("Grace" or "Debtors") operated or arranged for the operation of the Vermiculite Intermountain Facility. The processed vermiculite was marketed under various Grace brand names, including the name "Zonolite."

487.001-6580.DOC

A-3

2.      The Bar Date may not apply to Movants' claims. The Instructions printed on the Proof of Claim Form state that the Proof of Claim Form only applies to claimants who are "alleging property damage with respect to asbestos in real property owned by a party . . . from a Grace asbestos-containing product or as a result of one of Grace's vermiculite mining, milling, or processing facilities." It is presently unclear to what degree Movants' claims result from a "Grace asbestos-containing product or as a result of one of Grace's vermiculite mining, milling, or processing facilities." To the extent Movants' claims are subject to the Bar Date, however, cause exists to grant Movants, and each of them, leave to file a late proof of claim.

## BACKGROUND

### A.    Grace's Chapter 11 Proceedings

3.      On April 2, 2001 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Chapter 11 cases have been consolidated, and pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to operate their businesses and manage their properties as debtors-in-possession.

4.      In its Statements and Schedules, Grace scheduled a contingent, disputed, unliquidated Environmental Claim for Intermountain Insulation Co., located at 333 W. First Street, Salt Lake City, Utah. See Schedule F, attached hereto as Exhibit G. Grace listed the amount of the 333 W. First Street claim as "unknown." The Vermiculite Intermountain Site, which is included in the Subject Property, is located at that same address: 333 West 100 South in Salt Lake City, Utah. *See* Administrative Order on Consent ("AOC"), ¶ 7.p, attached hereto as Exhibit B.

487.001-6580.DOC

5.       On April 22, 2002, this Court entered an order setting March 31, 2003 as the last date (the "Bar Date") for filing proofs of claim for all pre-petition claims relating to asbestos property damage, non-asbestos claims, and medical monitoring claims. D.I. 1963.

6.       On November 13, 2004, Grace filed a Chapter 11 Plan of Reorganization (the "Plan") (D.I. 6895) and a Disclosure Statement for Debtors' Plan of Reorganization (the "Disclosure Statement") D.I. 6896. A hearing on approval of the Disclosure Statement is set for January 21, 2005. D.I. 6924.

7.       Since Grace's plan has not been confirmed, Grace has not made any plan distributions to creditors holding pre-petition general unsecured claims.

8.       A bar date has not been set for asbestos personal injury claims and certain claims related to Zonolite Attic Insulation.

**B.     The EPA's Proof of Claim and PacifiCorp's Related Claim**

9.       On March 28, 2003, the Environmental Protection Agency ("EPA") filed a timely proof of claim, claim number 00009634. A copy of the EPA's claim is attached hereto as Exhibit A. EPA's claim has not been resolved. It asserts claims for environmental contamination at 32 specific sites, including the Subject Property. Exhibit A, at 18-19. EPA's Claim asserts that Grace:

> is liable to the United States pursuant to CERCLA in connection with the cleanup of environmental contamination at the Vermiculite Intermountain Site in Salt Lake City. From 1940 through at least the late 1980s, a vermiculite expansion plant was located at the site. There have been releases or threatened releases of a hazardous substance at the site, as soils at the site are contaminated with asbestos. The Debtor is liable to the United States because it was an operator of a facility at the site at the time hazardous substances were disposed of at such facility. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $5,000 as of January 31, 2003. The Debtor also is liable for future cleanup obligations at the site;

3

which the United States estimates will cost at least $300,000 to complete.

*Id.*

10.     On July 29, 2004, PacifiCorp entered into an AOC with EPA in which PacifiCorp agreed to perform a removal action on PacifiCorp's portion of the Subject Property, presumably the "future cleanup" of the site described in EPA's claim. Exhibit B, ¶ 8. As recited in the AOC, the Subject Property includes the location of the Vermiculite Intermountain Facility and areas contaminated by asbestos emissions therefrom. *Id.* The plant operated between the 1940's and possibly as late as 1984 and performed various production operations with vermiculite concentrate from the Libby Vermiculite Mine located in Libby, Montana. *Id.* The AOC recites that EPA's records show that the plan received at least 25,000 tons of vermiculite concentrate from the Libby Mine. *Id.* The AOC also recites that PacifiCorp owned the property on which the plant operated from 1944 until 1954, leasing the property to the operator of the exfoliation plant, and that PacifiCorp sold the property in 1954 and reacquired it in 1984. *Id.*

11.     PacifiCorp estimates that the cost of its excavation of the contaminated soil will exceed $4 million. PacifiCorp's Proof of Claim, Attachment D.1, attached hereto as Exhibit C.

**C.     The VanCott Plan's Claim**

12.     The VanCott Plan purchased a portion of the Subject Property in 1979. In 1984, the VanCott Plan sold a portion of the Subject Property to Pacificorp. The VanCott Plan sold the balance of its portion of the Subject Property in 1998.

13.     The VanCott Plan has not, to date, incurred cleanup costs or entered into an agreement or order with EPA or any other party with respect to the Subject Property. The VanCott Plan has, however, been notified of potential environmental issues with respect to the Subject Property. By letter dated June 18, 2004, EPA requested information from the VanCott

4

Plan with respect to the Subject Property. PacifiCorp advised the VanCott Plan of potential liability by letter dated September 20, 2004. Copies of the two letters are attached to the concurrently filed Affidavit of Steven Swindle, attached hereto as Exhibit H, as Attachments 1 and 2. Although the VanCott Plan's liability with respect to the Subject Property has not yet been determined or quantified, the VanCott Plan, pursuant to this Motion, seeks authority to file a Proof of Claim in the form attached hereto as Exhibit I.

**D.    Bar Date Notice**

14.    PacifiCorp's environmental personnel who were dealing with issues leading to the AOC were unaware of the Bar Date. Rasmussen Aff., ¶ 4, attached hereto as Exhibit D. The same is true with respect to representatives of the VanCott Plan. Exhibit H, at ¶ 7.

15.    On April 22, 2002, this Court entered an order pursuant to Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure (the "Bar Date Order") establishing a bar date of March 31, 2003 (the "Bar Date") for "All Non-Asbestos Claims, Asbestos Property Damage Claims and Medical Monitoring Claims." D.I. 1963.

16.    On June 4, 2002, an Affidavit/Declaration of Service Regarding (1) Notice to Attorneys, (2) Certification, (3) Claims Bar Date Notice Materials, and (4) W.R. Grace & Co. Asbestos Property Damage Proof of Claim Form was filed with this Court. D.I. 2159. The Notice to Attorneys was sent to 124 attorneys "for individuals or entities who may or might have a current claim against Debtors relating to Asbestos Property Damage . . . ." D.I. 2159. Counsel for PacifiCorp was not listed on the attached service list.

17.    On or about July 9, 2002, a Declaration of Service Regarding: 1) Claims Bar Date Notice Materials, 2) Grace Non-Asbestos Proof of Claim Form was filed with the Court. D.I. 2351. Neither PacifiCorp nor the VanCott Plan were listed on the attached service list.

18.      An inquiry was made to Rust Consulting Inc., the Claims Processing Agent in the Grace case, as to whether PacifiCorp was ever served with the Bar Date Notice Package. However, Rust has not provided any evidence to PacifiCorp or counsel for PacifiCorp indicating that PacifiCorp was served with the Notice Package.

19.      PacifiCorp has not been able to determine that it received a Bar Date Notice Package prior to the expiration of the Bar Date. Exhibit D, ¶ 3. PacifiCorp has diligently searched, but can find no record of ever having received the Notice Package. Exhibit D, ¶ 3.

20.      Utah Power & Light, a name under which PacifiCorp does business, received notice of the Grace chapter 11 filing on May 2, 2001 and filed a routine proof of claim for electric services in this case on May 16, 2001. Davis Aff., ¶ 5, attached hereto as Exhibit E. A copy of Utah Power & Light's Proof of Claim is attached hereto as Exhibit F. The amount of the claim is $1,375.58. Exhibit F. The basis for the claim is electric utility service provided to a location outside of Salt Lake City which is unrelated to the Subject Property. Exhibit F; Exhibit E, ¶ 5. Utah Power & Light's claim was filed by Stacey Davis of Utah Power & Light's Customer Service Division. Exhibit E, ¶ 5.

21.      The Customer Service Division had no knowledge of the Bar Date, the contamination on the Subject Property, or Grace's connection to the vermiculite operations on the Subject Property. Exhibit E, ¶ 7.

22.      The VanCott Plan did not receive notice of the pendency of the Grace bankruptcy or of the Bar Date Notice. Prior to receipt of the June 18, 2004 letter, the VanCott Plan was not even aware of any potential liability with respect to the Subject Property. Exhibit H, ¶ 5.

6

## ARGUMENT

23.     Section 501 of the Bankruptcy Code and Rule 3003(c) of the Federal Rules of Bankruptcy Procedure allow a creditor to file a proof of claim within the time fixed by the court.

24.     Section 502(b)(9) of the Bankruptcy Code provides that a late filed claim is not allowed, unless the late filed claim is permitted under the Federal Rules of Bankruptcy Procedure.

25.     Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure provides that a court may allow a party tardily to file a claim "on motion made after the expiration of the specified period . . . where the failure to act was the result of excusable neglect." The United States Supreme Court has determined that a party's neglect to timely file a proof of claim before a bar date can constitute excusable neglect. *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993). In *Pioneer*, the Supreme Court established a two part test under Rule 9006(b). First, the Court held that the conduct must constitute neglect and not be deliberate. *Id.* at 395. "Neglect" "encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *Id.* at 388.

26.     Second, the Court held that the conduct must be excusable. *Id.* at 395. The determination of whether neglect is excusable is "at bottom an equitable one, taking into account of all relevant circumstances surrounding the party's omission," including 1) the danger of prejudice to the debtor, 2) the length of the delay and its potential impact on judicial proceedings, 3) the reason for the delay, including whether it was within the reasonable control of the movant, and 4) whether the movant acted in good faith. *Id.* at 395.

27.     The Third Circuit and the District of Delaware have applied the *Pioneer* factors and have allowed for the filing of late claims based on excusable neglect in several cases. *See In re Inacom Corp*, No. 00-2426, 2004 WL 2283599 (D. Del. Oct. 4, 2004) (applying *Pioneer* to

487.001-6580.DOC

A-9

allow a late filed proof of claim); *Manus Corp. V. NRG Energy, Inc., (In re O'Brien Environmental Energy, Inc.)*, 188 F.3d 116, 125 (3d Cir. 1999) (same); *Chemetron Corp v. Jones*, 72 F.3d 341, 349-50 (3d Cir. 2000); *In re Orthopedic Bone Screw Products Liability Litigation*, 246 F.3d 315, 321-33 (3d Cir. 2001); and *Welch & Forbes, Inc. v. Cendant Corp. (In re Cendant Corp. Prides Litigation)*, 233 F.3d 176, 181-82 (3d Cir. 2002).

28.    In addition, this Court has applied the *Pioneer* equitable framework in two instances in the W.R. Grace case. On February 23, 2004, based on *Pioneer*, this Court entered an order granting Royal Indemnity Company's Motion for Leave to File a Late Proof of Claim. D.I. 4667. Royal's claim arose from a 1995 settlement agreement with Grace, in which Grace agreed to indemnify and hold Royal harmless from any asbestos related claim. On October 25, 2004, based on *Pioneer*, this Court denied Intercat, Inc.'s Motion for Leave to File a Late Proof of Claim. Intercat's claim arose from a patent infringement action by Intercat in which Grace had intervened. Both Royal and Intercat received a Bar Date Notice Package.

29.    Movants should be authorized to file late claims based upon excusable neglect according to the foregoing factors.

A.    There is No Danger of Prejudice to the Debtor

30.    "[P]rejudice is not an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on facts in evidence." *O'Brien*, 188 F.3d at 127. Based on *O'Brien* and *Pioneer*, the U.S. District Court for the District of Delaware has held that the following factors should be considered in determining the danger of prejudice to the debtor: (a) "whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated"; (b) "whether the payment of the claim would force the return of amounts already paid out under the confirmed Plan or affect distribution to creditors"; (c) "whether payment of the claim would jeopardize the success of the debtor's reorganization"; (d) "whether allowance

8

of the claim would adversely impact the debtor actually or legally"; and (e) "whether allowance of the claim would open the floodgates to other future claims." *Inacom*, 2004 WL 2283599 at *4; *see also O'Brien*, 188 F.3d at 126-28.

31.    Based on the factors set forth in *Inacom*, allowance of Movants' claims does not present any danger of prejudice to Grace.

32.    First, Grace has known of its potential and unquantified liability relating to the Vermiculite Intermountain Facility Site, at 333 West 100 South, since June 1, 2001 when Grace filed its Schedules and Statements.   Schedule F of Grace's schedules lists an Environmental Claim for the 333 West 100 South site.

33.    Moreover, Grace was again apprised of its potential and unquantified liability relating to the Vermiculite Intermountain Facility Site on March 28, 2003, when the EPA filed its proof of claim.

34.    Second, there is no danger of prejudice to Grace or its creditors since Movants' claims will not affect plan distributions.  As of the date of this Motion, there have not been any plan distributions.

35.    Third, there is no danger of prejudice because payment of Movants' claims will not jeopardize the success of Grace's reorganization, nor will allowance of Movants' claims adversely impact Grace.  Movants' claims are insubstantial in comparison to the amount of Grace's total liabilities and the amount Grace intends to distribute to Asbestos Property Damage claimants. Movants' claims will not have a material impact on the Debtor's financial condition. Although the final amount has not yet been determined, Movants' claims should be substantially less than $10 million.  Grace's most recent monthly operating report, filed on November 2, 2004, reporting for the period of September, 2004, indicates that Grace has estimated total liabilities in

9

excess of $2.8 billion. D.I. 6086. The proposed Disclosure Statement requires the Court to find that the aggregate of the Asbestos PI-SE Class Fund (Asbestos Personal Injury-Symptomatic Eligible Claim), the Asbestos PD Class Fund, and the Asbestos Trust Expenses Fund is not greater than $1.483 billion, thus setting a cap on the amount Asbestos PD and PI-SE Claimants will receive from the distribution and thus setting a cap on the amount other Grace creditors will "give up." D.I. 6896, at 4.3.1.8. Thus, to the extent, if any, that the possible amount of Movants' claims is a relevant factor, the claims are a tiny fraction of Grace's total liabilities and of the Asbestos PI-SE/PD Class Funds. Such claims will not materially dilute the overall projected distribution percentage to PI-SE/PD creditors or other Grace creditors.

36.    Fourth, allowance of Movants' claims will not open the floodgates to other future claims. The circumstances surrounding the claims are discreet and are not necessarily common to other asbestos property damage claimants.

**B.    Movants' Delay in Filing Their Claims Was Not Within Movants' Reasonable Control**

37.    In considering the reason for a party's delay in filing its claim, courts should consider both the creditor and the debtor's role in the delay. *O'Brien*, 188 F.3d at 128; *Chemetron Corp.* 72 F.2d at 360 (stating that the district court erred in failing to consider the debtor's role in the creditor's delay). Inadequate notice is an excusable reason for delay. *Pioneer*, at 398; *O'Brien*, at 129. In *Pioneer*, the Court held that the debtor's notice was inadequate because the bar date was placed in a notice regarding a creditors' meeting "without any indication of the significance of the bar date." Likewise, in *O'Brien*, the court found that notice in a 12 page application was buried in the middle of the document and did not list the relevant parties' names or claims.

10

38.    PacifiCorp has diligently searched, but can find no record of ever having been served with the Bar Date Notice. Moreover, the Declarations of Service regarding the Claims Bar Date Notice Materials do not indicate that PacifiCorp was ever served. The VanCott Plan did not receive any notices with respect to the pending case.

39.    Neither PacifiCorp's personnel dealing with environmental issues leading up to the AOC nor representatives of the VanCott Plan knew of the Bar Date until after the Bar Date had expired.

C.    **The Length of Delay and Potential Impact on Judicial Proceedings**

40.    The Third Circuit has held that the length of delay must be considered in "absolute terms," not merely "the delay's effect on the judicial proceedings." *O'Brien,* 188 F.3d at 130. *See also Inacom,* 2004 WL 2283599 at *6. In *O'Brien,* the Third Circuit explained that

> the delay factor in the excusable neglect inquiry should not be held to turn entirely on the urgency created by the debtor's time line. Such an approach makes the two month delay seem significant, whereas a similar delay, or even a much longer delay in a case where the debtor proceeds more expeditiously to resolve outstanding claims under its contracts, or allows itself more time between confirmation and closing under its plan, would be insignificant..

*Id.*

41.    The facts of *Inacom* illustrate the Third Circuit's statement. In *Inacom,* the court found that a delay of nearly 3 years was insignificant and did not impact judicial proceedings. Inacom, the debtor, filed its objection to Pro-Tec's, a creditor, claim on June 13, 2001. Inacom's plan was confirmed on May 23, 2003 and Pro-Tec did not respond to Inacom's objection until February, 2004 when it did not receive its expected distribution. Pro-Tec filed a motion for reconsideration asking the court to allow its claim on April 2, 2004 – two years and ten months after Inacom's objection and nine months after the plan was confirmed. Even so,

11

Pro-Tec argued, and the court agreed, that the length of the delay had no impact on the implementation of the Plan because Inacom was still litigating claims subject to the Objection and distribution was contingent on the outcome of that litigation.

42.    Here, Movants seek to file their proofs of claim 21 months after the Bar Date. However, this 21 month delay will have no material impact on the judicial proceedings: the delay will not affect the judicial proceedings relating to Asbestos PD Claims, nor will it affect the confirmation or implementation of Grace's plan of reorganization.

43.    The judicial proceedings relating to Asbestos PD Claims are still in their infancy. On the Petition Date, there were approximately eight asbestos property damage lawsuits pending against Grace. D.I. 6896, at 2.4.2. Approximately 4,300 Asbestos PD Claims were submitted prior to the Bar Date. *Id.* While Grace intends to object to and litigate "all or almost all" of these 4,300 claims, *Id.* Grace has not begun negotiations or litigation to resolve such claims. Motion for Entry of An Order Seeking the Estimation of Asbestos Claims and Certain Related Relief (the "Estimation Motion"), D.I. 6899, at p. 34. As stated in the Estimation Motion, Grace has indicated that it does not intend to litigate these claims until after plan confirmation. *Id.* Indeed, the very purpose of seeking an estimate of the amount of asbestos related claims is to postpone the lengthy claims litigation process until after plan confirmation. *Id.* Moreover, In Grace's Motion for Entry of a Case Management Order Establishing Protocols for Litigating Asbestos-Related Claims Following Plan Confirmation, filed November 13, 2004, Grace indicated that it intends to implement a "five step process for the litigation and allowance/disallowance of all Asbestos Claims." D.I. 6898. This "five step process" has not yet been approved or implemented.

12

44.     Movants' 21 month delay will not materially impact confirmation or implementation of the Debtors' plan.  On November 13, 2004, the Debtors filed a proposed Disclosure Statement and Plan with the Court.  A hearing on the approval of the Disclosure Statement has been scheduled for January 21, 2004.  Delay in filing Movants' claims will in no way prejudice Grace.  Grace has indicated that it does not intend to litigate the various asbestos claims until after an Estimation Order is in place and the Plan is confirmed.  Movants' claims are only a small fraction of Grace's liabilities to the Asbestos PI-SE and PD Claimants, and allowance of Movants' late claims will not materially affect outcome of the Debtors' Estimation Motion.  Once the Estimation Order is in place and the Plan is confirmed, there will be a long process of implementation.  The Asbestos Trust must be created and funded, all claims must be transferred to the Asbestos Trust, and the claims must be thoroughly reviewed and litigated.

45.     The delay in this case will not impact confirmation/implementation of the Plan since Grace does not intend to complete the claims review process and negotiate/litigate Asbestos PD claims until after Plan confirmation.  Similarly, the length of delay will not affect judicial proceedings relating to Asbestos PD claims since Movants' claims are only a tiny fraction of the total amount of Asbestos PD claims and since the claims review process is still in its early stages.

**D.     Good Faith**

46.     Movants, and each of them, have filed this Motion in good faith.

**E.     To Avoid an Inequitable Result, This Court Should Allow Movants Leave to File Their Late Claims**

47.     Grace has asserted that "the central task in these Chapter 11 cases has always been to define the Debtors' true liability to Asbestos Claimants."  Estimation Motion, D.I. 6899, p. 2.  Given the central task of these Chapter 11 proceedings and the circumstances surrounding

13

Movants' claims, as a matter of equity, this Court should allow Movants to each file a late claim. To avoid an inequitable result, this Court should not allow Grace to escape the environmental costs of nearly 30 years of vermiculite processing and at the same time retain the benefits of 30 years of profits. To avoid an inequitable result, this Court should not excuse Grace from the consequences of Grace's action giving rise to the contamination of the Subject Property.

## CONCLUSION

48.    WHEREFORE, for the reasons as set forth above, Movants respectfully request that the Court enter the proposed Order attached hereto as Exhibit J, which grants Movants leave to each file a late proof of claim for asbestos property damage costs, together with other relief as this Court deems just and equitable.

Dated: January 14, 2005

LANDIS RATH & COBB LLP

Richard S. Cobb (#3157)
919 Market Street, Suite 600
P.O. Box 2087
Wilmington, DE 19899
(302) 467-4400

Attorneys for PacifiCorp and the VanCott Bagley
Cornwall & McCarthy 401(k) Profit Sharing Plan

-and-

LEBOEUF, LAMB, GREENE & MACRAE
Steven J. McCardell  (#2144)
Jared L. Inouye  (#9776)
1000 Kearns Building
136 South Main Street
Salt Lake City, UT 84101-1685
(801) 320-6700

Attorneys for PacifiCorp

-and-

14

VANCOTT, BAGLEY, CORNWALL &
MCCARTHY
J. Robert Nelson (#4519)
50 South Main Street
Salt Lake City, UT 84144-0450
(801) 237-0270

Attorneys for the VanCott Bagley Cornwall &
McCarthy 401(k) Profit Sharing Plan

15

A-17

**EXHIBIT A**

# WR Grace

Bankruptcy Form 10

Index Sheet

SR00000579

| Claim Number: | 00009634 | Receive Date: | 03/28/2003 |
|---|---|---|---|

## Multiple Claim Reference

Claim Number _____

- ☐ MMPOC — Medical Monitoring Claim Form
- ☐ PDPOC — Property Damage
- ☐ NAPO — Non-Asbestos Claim Form
- ☐ Amended

Claim Number _____

- ☐ MMPOC — Medical Monitoring Claim Form
- ☐ PDPOC — Property Damage
- ☐ NAPO — Non-Asbestos Claim Form
- ☐ Amended

## Attorney Information

| Firm Number: | 00336 | Firm Name: | Us Dept of Justice |
|---|---|---|---|
| Attorney Number: | 00212 | Attorney Name: | James D Freeman |

Zip Code: 80202-2449

Cover Letter Location Number: SR00000579

| Attachments Medical Monitoring | Attachments Property Damage | Non-Asbestos |
|---|---|---|
| ☐ TBD | ☐ TBD | ☒ Other Attachments |
| ☐ TBD | ☐ TBD | |
| ☐ TBD | ☐ TBD | |
| ☐ TBD | ☐ TBD | |
| ☐ TBD | ☐ TBD | |
| | ☐ Other Attachments | |

**Other**

- ☐ Non-Standard Form
- ☐ Amended
- ☐ Post-Deadline Postmark Date

Box/Batch: WRBF0040/WRBF0158

Document Number: WRBF007653

A-19

| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF Delaware | | GRACE NON-ASBESTOS PROOF OF CLAIM FORM |
|---|---|---|

**Name of Debtor:**[1] W.R. Grace & Co. - Conn.    Case Number 01-1179

**NOTE:** Do not use this form to assert an Asbestos Personal Injury Claim, a Settled Asbestos Claim or a Zonolite Attic Insulation Claim. These claims will be subject to a separate claims submission process. This form should also not be used to file a claim for an Asbestos Property Damage Claim or Medical Monitoring Claim. A specialized proof of claim form for each of these claims should be filed.

**Name of Creditor** (The person or other entity to whom the Debtor owes money or property):

United States of America

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☒ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

**Name and address where notices should be sent:**
James D. Freeman, Esq.
U.S. Dept. of Justice; Env. Enforcement Section
999 18th Street, Suite 945, North Tower
Denver, Colorado 80202-2449

**Account or other number by which creditor identifies Debtor:**

DJ Case No. 90-11-2-07106/5

Check here ☐ replaces
if this claim ☐ amends a previously filed claim, dated:____

**Corporate Name, Common Name, and/or d/b/a name of specific Debtor against whom the claim is asserted:**

W.R. Grace & Co. - Conn.

| 1. Basis for Claim<br>☐ Goods sold<br>☐ Services performed<br>☒ Environmental liability<br>☐ Money loaned<br>☐ Non-asbestos personal injury/wrongful death<br>☐ Taxes<br>☐ Other____ | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)<br>☐ Wages, salaries, and compensation (fill out below)<br><br>Your SS #: ____<br>Unpaid compensation for services performed<br>from ____ to ____ (date) |
|---|---|

| 2. Date debt was incurred: See Attached | 3. If court judgment, date obtained: See Attached |
|---|---|

**4. Total Amount of Claim at Time Case Filed:** See Attached    $____    To be provided upon request

(If all or part of your claim is secured or entitled to priority, also complete Item 5 below.)

☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Classification of Claim.** Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured Nonpriority, (2) Unsecured Priority, (3) Secured. It is possible for part of a claim to be in one category and part in another. **CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM AT TIME CASE FILED.**

☐ SECURED CLAIM (check this box if your claim is secured by collateral, including a right of setoff.)

Brief Description of Collateral:   See Attached

☐ Real Estate     ☐ Other (Describe briefly)____

Amount of arrearage and other charges at time case filed included in secured claim above, if any: $____

Attach evidence of perfection of security interest

☐ UNSECURED NONPRIORITY CLAIM    See Attached

A claim is unsecured if there is no collateral or lien on property of the debtor securing the claim or to the extent that the value of such property is less than the amount of the claim.

☐ UNSECURED PRIORITY CLAIM - Specify the priority of the claim.

☐ Wages, salaries, or commissions (up to $4650), earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties of governmental units - 11 U.S.C. § 507(a)(7).

☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**6. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

This Space is for Court Use Only

**7. Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. Acknowledgement:** Upon receipt and processing of this Proof of Claim, you will receive an acknowledgement card indicating the date of filing and your unique claim number. If you want a file stamped copy of the Proof of Claim form itself, enclose a self addressed envelope and copy of this proof of claim form.

WR Grace    BF.40.158.7853
00009634
SR=579

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): |
|---|---|
| 03/27/03 | James D. Freeman ~~signature~~ James D. Freeman, Esq.<br>Trial Attorney |

REC'D MAR 2 8 2003

[1] See General Instructions and Claims Bar Date Notice and its exhibits for names of all Debtors and "other names" used by the Debtors.

# SPECIFIC INSTRUCTIONS FOR COMPLETING
## GRACE NON-ASBESTOS PROOF OF CLAIM FORMS

*The instructions and definitions below are general explanations of the law. In particular types of cases or circumstances, there may be exceptions to these general rules.*

This Proof of Claim form is for Creditors who have Non-Asbestos Claims against any of the Debtors. Non-Asbestos Claims are any claims against the Debtors as of a time immediately preceding the commencement of the Chapter 11 cases on April 2, 2001 other than Asbestos Personal Injury Claims, Asbestos Property Damage Claims, Zonolite Attic Insulation Claims, Settled Asbestos Claims or Medical Monitoring Claims, as defined on the enclosed General Instructions. More specifically, Non-Asbestos Claims are those claims against one or more of the Debtors, whether in the nature of or sounding in tort, contract, warranty or any other theory of law or equity for, relating to or arising by reason of, directly or indirectly, any injury, damage or economic loss caused or allegedly caused directly or indirectly by any of the Debtors or any products or materials manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by one or more of the Debtors and arising or allegedly arising directly or indirectly, from acts or omissions of one or more of the Debtors, including, but not limited to, all claims, debts, obligations or liabilities for compensatory and punitive damages.

**Administrative Expenses:** Those claims for, among other things, the actual, necessary costs and expenses of preserving the estate as defined in Section 503 of the Bankruptcy Code that arose after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to Section 503 of the Bankruptcy Code. This form should not be used to make a claim for an administrative expense.

**Secured Claim:** A claim is a secured claim to the extent that the creditor has a lien on property of the debtor (collateral) that gives the creditor the right to be paid from that property before creditors who do not have liens on the property. Examples of liens are a mortgage on real estate and a security interest in a car, truck, boat, television set; or other item of property. A lien may have been obtained through a court proceeding before the bankruptcy case began; in some states a court judgment is a lien. In addition, to the extent a creditor also owes money to the debtor (has a right to setoff), the creditor's claim may be a secured claim. (See also Unsecured Claim.)

**Unsecured Claim:** If a claim is not a secured claim, it is an unsecured claim. Unsecured claims are those claims for which a creditor has no lien on the debtor's property or the property on which a creditor has a lien is not worth enough to pay the creditor in full.

**Unsecured Nonpriority Claim:** Certain types of unsecured claims are given priority, so they are to be paid in bankruptcy cases before most other unsecured claims (if there is sufficient money or property available to pay these claims). The most common types of priority claims are listed on the proof of claim form. Unsecured claims that are not specifically given priority status by the bankruptcy laws are classified as Unsecured Nonpriority Claims.

**Information about Creditor:** Complete this section giving the name, address, and telephone number of the creditor to whom the debtor owes money or property, and the debtor's account number, if any. If anyone else has already filed a proof of claim relating to this debt, if you never received notices from the court which sent notice, or if this proof of claim replaces or amends a proof of claim that was already filed, check the appropriate box on the form.

1.  **Basis for Claim:** Check the type of debt for which the proof of claim is being filed. If the type of debt is not listed, check "Other" and briefly describe the type of debt. If you were an employee of the debtor, fill in your social security number and the dates of work for which you were not paid.

2.  **Date Debt Incurred:** Fill in the date the debt was first owed by the debtor.

3.  **Court Judgments:** If you have a court judgment for this debt, state the date the court entered the judgment.

4.  **Amount of Claim:** Insert the amount of claim at the time the case was filed in the appropriate box based on your selected Classification of Claim in item 5. If interest or other charges in addition to the principal amount of the claim are included, check the appropriate place on the form and attach an itemization of the interest and charges.

5.  **Classification of Claim:** Check either Secured, Unsecured Nonpriority or Unsecured Priority as appropriate. (See Definitions above.)

    **Unsecured Priority Claim:** Check the appropriate place if you have an unsecured priority claim, and state the amount entitled to priority. (See Definitions, above.) A claim may be partly priority and partly nonpriority if, for example, the claim is for more than the amount given priority by the law. Check the appropriate place to specify the type of priority claim.

6.  **Credits:** By signing this proof of claim, you are stating under oath that in calculating the amount of your claim, you have given the debtor credit for all payments received from the debtor.

7.  **Supporting Documents:** You must attach to this proof of claim form, copies of documents that show the debtor owes the debt claimed or, if the documents are too lengthy, a summary of those documents. If documents are not available, you must attach an explanation of why they are not available.

*Be sure to date the claim and place original signature of claimant or person making claim for creditor where indicated at the bottom of the claim form. Please type or print name of individual under the signature. Be sure all items are answered on the claim form. If not applicable, insert "Not Applicable".*

RETURN CLAIM FORM (WITH ATTACHMENTS, IF ANY) TO THE FOLLOWING CLAIMS AGENT FOR THE DEBTORS:

> Claims Processing Agent
> Re: W. R. Grace & Co. Bankruptcy
> P.O. Box 1620
> Faribault, MN 55021-1620

The Bar Date for filing all NON-ASBESTOS CLAIMS against the Debtors is March 31, 2003 at 4:00 p.m. Eastern Time.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| W.R. GRACE & CO.- CONN., | ) Case No. 01-1179 (JFK) |
|  | ) |
| Debtor. | ) |

## PROOF OF CLAIM OF THE UNITED STATES ON BEHALF OF THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, THE UNITED STATES DEPARTMENT OF AGRICULTURE FOREST SERVICE AND THE ARMY CORPS OF ENGINEERS

This Proof of Claim is filed by the Attorney General of the United States at the request of the United States Environmental Protection Agency ("EPA"), the United States Department of Agriculture Forest Service (the "Forest Service"), and the Army Corps of Engineers. The Attorney General is authorized to make this Proof of Claim on behalf of the United States. This Proof of Claim asserts claims against the Debtor in connection with environmental contamination at various sites.

1. Blackburn & Union Privileges Site (Walpole, Massachusetts): The Debtor is liable to the United States pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601- 9675, and administrative orders issued pursuant to CERCLA in connection with the cleanup of environmental contamination at the Blackburn & Union Privileges Superfund Site (also known as the South Street Site) in Walpole, Massachusetts. Industrial operations have been located at the site for many years. There have been releases or threatened releases of hazardous substances at the site, as soils, sediments, and groundwater are contaminated with inorganic chemicals, including asbestos, lead, arsenic, and nickle, volatile organic compounds ("VOCs") and semi-volatile

organic compounds. The site is on the National Priorities List established pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605 ("NPL"). The Debtor is liable to the United States because it owned and operated a facility on the site at the time hazardous substances were disposed of. The Debtor is a party to several administrative orders EPA has issued in connection with the site, including a September 1999 administrative order on consent in which the Debtor and one other PRP agreed to perform the remedial investigation/feasibility study ("RI/FS") for the site and to pay for EPA's oversight of such work. When the Debtor filed for bankruptcy, it stopped performing work under the RI/FS order. Under the terms of the RI/FS order, the Debtor established a letter of credit in the amount of $800,000 to pay for EPA's oversight costs. In July 2002, EPA drew on the letter of credit and established a trust account in the amount of $800,000. In September 2002, EPA withdrew $56,165 from the trust account for the Debtor's share of outstanding oversight costs due under the RI/FS order. The Debtor is liable for the United States' future RI/FS oversight costs, which the United States estimates will be at least $1 million. The Debtor also is liable for future cleanup obligations at the site, including the cost of conducting the RI/FS as required in the 1999 administrative order, which the United States estimates will be at least $1.6 million, and the cost of groundwater remediation, which the United States estimates will be between $10 million and $20 million. The remedial action for the site also may include the remediation of contaminated soils and/or sediments. The United States' response actions at the site are not inconsistent with the National Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, and set forth at 40 C.F.R. ¶300, as amended ("NCP"). Other PRPs along with the Debtor may also be jointly and severally liable to the United States pursuant to CERCLA with respect to the cleanup of environmental contamination at the site.

2

2.    <u>Solvents Recovery Service of New England (Southington, Connecticut)</u>: The

Debtor is liable to the United States pursuant to CERCLA and an administrative order issued

under CERCLA in connection with the cleanup of environmental contamination at the Solvents

Recovery Service of New England ("SRSNE") Site located in Southington, Connecticut. From

at least 1957 through 1991, a hazardous waste treatment, storage and disposal facility was located

at the site. There have been releases or threatened releases of hazardous substances at the site, as

groundwater is contaminated with VOCs, including isopropyl alcohol, acetone, and toluene and

soil is contaminated with lead, cadmium, polychlorinated biphenyls ("PCBs") and VOCs. The

SRSNE Site is on the NPL. The Debtor is liable to the United States because it arranged for the

disposal of hazardous substances at the site. The Debtor is a party to several administrative

orders EPA has issued in connection with the site, including a 1997 administrative order with

approximately 500 PRPs to expand the groundwater treatment system and to conduct the RI/FS

for the site. Work required under this order has not yet been completed. The Debtor is liable for

the United States' unreimbursed response costs relating to the site of at least $11,859,984 as of

March 2001. The Debtor also is liable for future cleanup obligations at the site, which the United

States estimates will cost at least $18 million to complete. The United States' response actions at

the site are not inconsistent with the NCP. Other PRPs along with the Debtor may also be jointly

and severally liable to the United States pursuant to CERCLA with respect to the cleanup of

environmental contamination at the SRSNE site.

3.    <u>Acton Plant Site (Acton, Massachusetts)</u>: The Debtor is liable to the United

States pursuant to CERCLA and a judicially-approved consent decree in connection with the

cleanup of environmental contamination at the Acton Plant Site located in Acton and Concord,

Massachusetts. Industrial operations have been located at the site for many years. There have

3

been releases or threatened releases of hazardous substances at the site, as groundwater is contaminated with VOCs and heavy metals, including lead, arsenic, chromium, iron, manganese and nickel; sediments are contaminated with cadmium; and soils and sludges in disposal areas at the site are contaminated primarily with arsenic, VOCs, including vinyl chloride, ethyl benzene, benzene, 1,1 dichlorethylene, and bis(2-ethylhexyl). The Acton Plant Site is on the NPL. The Debtor is liable to the United States because it owned and operated a facility at the site at the time hazardous substances were disposed of and is the current owner and operator of the facility. In 1980, EPA entered into a consent decree whereby the Court ordered the Debtor to undertake cleanup of the facility and to ensure restoration of the aquifer to a fully usable condition. Work under this consent decree is on-going. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $1,006,960 as of July 1, 2002. The Debtor also is liable for future cleanup obligations at the site, which the United States estimates will cost at least $40 million to complete. The United States' response actions at the site are not inconsistent with the NCP.

4.    Cambridge Plant Site (Cambridge, Massachusetts): The Debtor is liable to the United States pursuant to CERCLA in connection with the assessment of environmental contamination at the Cambridge Plant Site in Cambridge, Massachusetts. Industrial operations have been located at the site for many years. There have been releases or threatened releases of hazardous substances at the site, as surface soils are contaminated with asbestos. The Debtor is liable to the United States because it owned and operated a facility at the site at the time hazardous substances were disposed of and is the current owner and operator of a portion of the site. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $120,000 as of July 1, 2002. The Debtor also is liable for any future cleanup

4

obligations at the site. The United States' response actions at the site are not inconsistent with the NCP.

5.    Wells G&H (Woburn, Massachusetts): The Debtor is liable to the United States pursuant to CERCLA and a judicially-approved consent decree in connection with the cleanup of environmental contamination at the Wells G&H Site in Woburn, Massachusetts. The site includes the aquifer and land mass area located within the zone of contribution of two contaminated municipal wells known as Wells G and H. There have been releases or threatened releases of hazardous substances at the site, as groundwater is contaminated with VOCs, including trichloroethylene ("TCE") and tetrachloroethylene ("PCE"); sediments in the Aberjona River are contaminated with polycyclic aromatic hydrocarbons ("PAHs") and heavy metals; and soils are contaminated with PAHs, PCBs, VOCs, and pesticides. The Wells G&H Site is on the NPL. The Debtor is liable to the United States because it owns a facility that is a source of the contamination at the site and operated the same facility at the time hazardous substances were disposed of. In 1991, EPA entered into a consent decree with several entities that owned or operated facilities that contributed to contamination at the site, including the Debtor, whereby each entity agreed to clean up its property and to jointly conduct a study of the contamination in the aquifer in the central area of the site. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $6,314,228 as of June 30, 2002. The Debtor also is liable for future cleanup obligations at the site, including the cleanup and the study that the consent decree requires (which the United States estimates will cost at least $5 million to complete) and the cleanup of the central area of the site (which the United States estimates will cost at least $28 million to complete). The United States' response actions at the site are not inconsistent with the NCP. Other PRPs along with the Debtor may also be jointly and severally

5

liable to the United States pursuant to CERCLA with respect to the cleanup of environmental contamination at the site.

6.     Li Tungsten Site (Glen Cove, New York): The Debtor is liable to the United States pursuant to CERCLA and administrative orders issued under CERCLA in connection with the cleanup of environmental contamination at the Li Tungsten Site in Glen Cove, New York. Industrial operations and an associated landfill have been located at the site for many years. There have been releases or threatened releases of hazardous substances at the site, as the soil is contaminated with low levels of radiation and heavy metals. The site is on the NPL. The Debtor is liable to the United States because it arranged for the disposal of hazardous substances at the site. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $17 million through February 2003. The Debtor also is liable for future cleanup obligations at the site, which the United States estimates will cost at least $30 million to complete. The United States' response actions at the site are not inconsistent with the NCP. Other PRPs along with the Debtor may also be jointly and severally liable to the United States pursuant to CERCLA with respect to the facility.

7.     Zonolite/Grace Site (Hamilton Township, New Jersey): The Debtor is liable to the United States pursuant to CERCLA in connection with the cleanup of environmental contamination at the Zonolite/Grace Site in Hamilton Township, New Jersey. From at least 1950 to 1994, a vermiculite expansion plant was located at the site. There have been releases or threatened releases of a hazardous substance at the site, as surface soils are contaminated with asbestos. The Debtor is liable to the United States because it operated a facility at the site at the time hazardous substances were disposed of at the site. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $44,956.24 as of January 31,

6

2003. The Debtor also is liable for future cleanup obligations at the site, which the United States estimates will cost at least $1.9 million to complete. The United States' response actions at the site are not inconsistent with the NCP. Other PRPs along with the Debtor may also be jointly and severally liable to the United States pursuant to CERCLA with respect to the cleanup of environmental contamination at the site.

      8.    Central Chemical Site (Hagerstown, Maryland): The Debtor is liable to the United States pursuant to CERCLA in connection with the cleanup of environmental contamination at the Central Chemical Site in Hagerstown, Maryland. From the early 1930s through the mid-1980s, a chemical plant was located at the site. There have been releases or threatened releases of hazardous substances at the site, as soil, groundwater, surface water, and sediments at the site are contaminated with arsenic, lead, benzene, aldrin, chlordane, DDD, DDE, DDT, dieldrin and methoxychlor. The contamination extends beyond the facility property boundaries onto adjacent property being developed for residential use. The site is on the NPL. The Debtor is liable to the United States because it arranged for the disposal of hazardous substances at the site. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $457,485 as of August 2001. The Debtor also is liable for future cleanup obligations at the site, which the United States estimates will cost at least $30 million to complete. The United States' response actions at the site are not inconsistent with the NCP. Other PRPs along with the Debtor may also be jointly and severally liable to the United States pursuant to CERCLA with respect to the cleanup of environmental contamination at the site.

      9.    Galaxy/Spectron Site (Elkton, Maryland): The Debtor is liable to the United States pursuant to CERCLA in connection with the cleanup of environmental contamination at the Galaxy/Spectron Site near Elkton, Maryland. From at least 1961 through 1988, a hazardous

7

waste treatment, storage and disposal facility was located at the site. There have been releases or threatened releases of hazardous substances at the site, as soil, surface water, and groundwater at the site are heavily contaminated with chlorinated organic solvents. The Debtor is liable to the United States because it arranged for the disposal of hazardous substances at a solvent recovery facility at the site. The site is on the NPL. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $1,108,922 as of September 2002. The Debtor also is liable for future cleanup obligations at the site, which the United States estimates will cost at least $16 million to complete. The United States' response actions at the site are not inconsistent with the NCP. Other PRPs along with the Debtor may also be jointly and severally liable to the United States pursuant to CERCLA with respect to the cleanup of environmental contamination at the site.

10.    Watson Johnson Landfill Site (Richland Township, Pa): The Debtor is liable to the United States pursuant to CERCLA in connection with the cleanup of environmental contamination at the Watson Johnson Landfill Site in Richland Township, Pennsylvania. From the 1950s until the early 1970s, an industrial and municipal landfill was located at the site. There have been releases or threatened releases of hazardous substances at the site, as soil is contaminated with VOCs, semi-volatile compounds, PCBs, and metals; groundwater is contaminated with tetrachloromethane and TCE; and sediments are contaminated with metals and PCBs. Moreover, sampling of nearby residential wells has revealed elevated levels of arsenic and TCE in some home wells and mercury has been found in sediments downstream of the site. The site is on the NPL. The Debtor is liable to the United States because it arranged for the disposal of hazardous substances at the site. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $836,012 as of September 2002. The

8

Debtor also is liable for future cleanup obligations at the site, which the United States estimates will cost at least $8.75 million to complete. The United States' response actions at the site are not inconsistent with the NCP. Other PRPs along with the Debtor may also be jointly and severally liable to the United States pursuant to CERCLA with respect to the environmental contamination at the site.

11.    Zonolite/Grace Site (Ellwood City, Pa): The Debtor is liable to the United States pursuant to CERCLA in connection with the cleanup of environmental contamination at the Zonolite/Grace Site in Ellwood City, Pennsylvania. From 1953 through 1969, a vermiculite expansion facility was located at the site. There have been releases or threatened releases of a hazardous substance at the site, as surface soil is contaminated with asbestos. The Debtor is liable to the United States because it owned and operated a facility at the site at the time hazardous substances were disposed of at the site. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $50,953.23 as of October 2002. The Debtor also is liable for future cleanup obligations at the site, which the United States estimates will cost at least $200,000 to complete. The United States' response actions at the site are not inconsistent with the NCP. Other PRPs along with the Debtor may also be jointly and severally liable to the United States pursuant to CERCLA with respect to the environmental contamination at the site.

12.    Zonolite/Grace Site (Prince George's County, Md) The Debtor is liable to the United States pursuant to CERCLA in connection with the cleanup of environmental contamination at the Zonolite/Grace Site, in Beltsville, Maryland. From 1966 through the early 1990s, a vermiculite expansion facility was located at the site. There have been releases or threatened releases of a hazardous substance at the site, as soils at the site are contaminated with

9

asbestos. The Debtor is liable to the United States because it owned and operated a facility at the site at the time hazardous substances were disposed of. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $54,109.41 as of October 2002. The Debtor also is liable for future cleanup obligations at the site, which the United States estimates will cost at least $50,000 to complete. The United States' response actions at the site are not inconsistent with the NCP. Other PRPs along with the Debtor may also be jointly and severally liable to the United States pursuant to CERCLA with respect to the environmental contamination at the facility.

      13.    Zonolite/Grace Site (New Castle, Pa): The Debtor is liable to the United States pursuant to CERCLA in connection with the cleanup of environmental contamination at the Zonolite/Grace Site in New Castle, Pennsylvania. From 1968 through 1992, a vermiculite expansion facility was located at the site. There has been a release or threatened release of a hazardous substance at the site, as soils at the site are contaminated with asbestos. The Debtor is liable to the United States because it owned and operated a facility at the site at the time hazardous substances were disposed of at the facility. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $28,764.86 as of October 2002. The Debtor also is liable for future cleanup obligations at the site, which the United States estimates will cost at least $500,000 to complete. The United States' response actions at the site are not inconsistent with the NCP. Other PRPs along with the Debtor may also be jointly and severally liable to the United States pursuant to CERCLA with respect to environmental contamination at the site.

      14.    Aqua-Tech Environmental Site (Greer, South Carolina): The Debtor is liable to the United States pursuant to CERCLA and an administrative order issued under CERCLA in

10

connection with the cleanup of environmental contamination at the Aqua-Tech Environmental Site near Greer, South Carolina. A hazardous waste treatment, storage and disposal facility was located at the site. There have been releases or threatened releases of hazardous substances at the site, as soil, surface water and groundwater at the site are contaminated with various VOCs and metals, including cadmium, chromium, cobalt, lead, mercury, nickel, and zinc. The site is on the NPL. The Debtor is liable to the United States because it arranged for the disposal of hazardous substances at the site. In 1995, EPA entered into an administrative order with approximately 90 PRPs, including the Debtor, who agreed to perform the RI/FS for the site and to reimburse EPA for its oversight costs. Work under this order is not yet complete. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $1,625,813 as of November 2002. The Debtor also is liable for future cleanup obligations at the site, which the United States estimates will cost at least $12 million to complete. The United States' response actions at the site are not inconsistent with the NCP. Other PRPs along with the Debtor may also be jointly and severally liable to the United States pursuant to CERCLA with respect to the environmental contamination at the site.

15.     Green River Disposal Site (Maceo, Kentucy): The Debtor is liable to the United States pursuant to CERCLA and administrative orders issued under CERCLA in connection with the cleanup of environmental contamination at the Green River Disposal Site near Owensboro, Kentucky. From 1970 through 1984, an industrial and municipal landfill was located at the site. There have been releases or threatened releases of hazardous substances at the site, as groundwater at the site is contaminated with barium, beryllium, cadmium and manganese. The site is on the NPL. The Debtor is liable to the United States because it arranged for the disposal of hazardous substances at the site. The Debtor was a party to two administrative orders issued

11

by EPA in connection with this site. In 1990, EPA issued an order requiring four PRPs, including the Debtor, to initiate cleanup work at the site. Also in 1990, EPA entered into an administrative order whereby four PRPs, including the Debtor, agreed to perform the RI/FS for the site. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $453,315 as of March 2002. The Debtor also is liable for future cleanup obligations at the site, which the United States estimates will cost at least $3.5 million to complete. The United States' response actions at the site are not inconsistent with the NCP. Other PRPs along with the Debtor may also be jointly and severally liable to the United States pursuant to CERCLA with respect to environmental contamination at the site.

16.    W.R. Grace Site (Wilder, Kentucky): The Debtor is liable to the United States pursuant to CERCLA in connection with the cleanup of environmental contamination at the W.R. Grace Site in Wilder, Kentucky. From 1953 until the mid-1990s a vermiculite expansion facility was located at the site. There have been releases or threatened releases of a hazardous substance at the site, as soils at the site are contaminated with asbestos. The Debtor is liable to the United States because it owned and operated a facility on the site at the time hazardous substances were disposed of at the site. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $28,343.39 as of July 2002. The Debtor also is liable for future cleanup obligations at the site, which the United States estimates will cost at least $2.1 million to complete. The United States' response actions at the site are not inconsistent with the NCP. Other PRPs along with the Debtor may also be jointly and severally liable to the United States pursuant to CERCLA with respect to environmental contamination at the site.

17.    Reclamation Oil Site (Detroit, Michigan): The Debtor is liable to the United States pursuant to CERCLA in connection with the cleanup of environmental contamination at

12

A-33

the Reclamation Oil Site in Detroit, Michigan. The site is an abandoned waste treatment, storage and disposal facility. There have been releases or threatened releases of hazardous substances at the site, as (among other things) sampling of abandoned storage containers indicated the presence of VOCs and semi-VOCs and at least one container had high levels of PCBs. The Debtor is liable to the United States because it arranged for the disposal of hazardous substances at the site. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $4,469,704 as of June 2002. The Debtor also is liable for any future cleanup obligations at the site. The United States' response actions at the site are not inconsistent with the NCP. Other PRPs along with the Debtor may also be jointly and severally liable to the United States pursuant to CERCLA with respect to environmental contamination at the site.

18.    <u>Western Minerals Products Site (Minneapolis, Minnesota)</u>: The Debtor is liable to the United States pursuant to CERCLA in connection with the cleanup of environmental contamination at the Western Minerals Products Site in Minneapolis, Minnesota. From 1946 through 1989, a vermiculite expansion facility was located at the site. The site includes residential properties near the vermiculite expansion facility at which asbestos-containing materials were disposed of. There have been releases or threatened releases of a hazardous substance at the site, as soil and dust at the site are contaminated with asbestos. The Debtor is liable to the United States because it owned and operated a facility at the site at the time hazardous substances were disposed of at the site and arranged for the disposal of asbestos-contaminated material at portions of the site. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $6,907,445.90 as of January 31, 2003. The Debtor also is liable for future cleanup obligations at the site, which the United States estimates will cost at least $1 million to complete. The United States' response actions at the site

13

are not inconsistent with the NCP. Other PRPs along with the Debtor may also be liable to the United States pursuant to CERCLA with respect to environmental contamination at portions of the site.

19.    R&H Oil/Tropicana (San Antonio, Texas): The Debtor is liable to the United States pursuant to CERCLA in connection with the cleanup of environmental contamination at the R&H Oil/Tropicana Site in San Antonio, Texas. The site was used as a refinery and gasoline blending facility, and spent oils were reprocessed on a portion of the site. There have been releases or threatened releases of hazardous substances at the site, as groundwater at the site is contaminated with benzene, toluene, ethylbenzene, naphthalene, xylenes, arsenic, barium and zinc. The site has been proposed for inclusion on the NPL. The Debtor is liable to the United States because it arranged for the disposal of hazardous substances at the site. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $1,556,174 as of November 2002. The Debtor also is liable for future cleanup obligations at the site, which the United States estimates will cost at least $11,640,000 to complete. The United States' response actions at the site are not inconsistent with the NCP. Other PRPs along with the Debtor may also be jointly and severally liable to the United States pursuant to CERCLA with respect to environmental contamination at the site.

20.    Intermountain Insulation Site (Salt Lake City, Utah): The Debtor is liable to the United States pursuant to CERCLA in connection with the cleanup of environmental contamination at the Intermountain Insulation Site in Salt Lake City, Utah. From 1984 through 1988, a vermiculite expansion plant was located at the site. There have been releases or threatened releases of a hazardous substance at the site, as soils at the site are contaminated with

14

asbestos. The Debtor is liable to the United States because it was an operator of a facility at the site at the time hazardous substances were disposed of at such facility. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $5,000 as of January 31, 2003. The Debtor also is liable for any future cleanup obligations at the site. The United States' response actions at the site are not inconsistent with the NCP. Other PRPs along with the Debtor may also be jointly and severally liable to the United States pursuant to CERCLA with respect to environmental contamination at the site.

21.    Libby Asbestos Site (Libby, Montana):  The Debtor is liable to the United States pursuant to CERCLA, an administrative order issued pursuant to CERCLA, and a judicial consent decree in connection with the cleanup of environmental contamination at the Libby Asbestos Site in and near Libby, Montana. The site includes the Debtor's former vermiculite mine and processing facilities in Libby and nearby properties on which asbestos-containing materials were disposed. There have been releases or threatened releases of a hazardous substance at the site, as soil and dust at the site are contaminated with asbestos. The Debtor is liable to the United States because it owned and operated a facility at the site at the time hazardous substances were disposed of at the site and arranged for the disposal of asbestos-containing material at portions of the site. In addition, in May 2000, EPA issued an administrative order to the Debtor whereby the Debtor was required to perform cleanup of a former vermiculite processing facility known as the Export Plant. This work is ongoing. The Debtor is liable for the United States' (through the EPA) unreimbursed response costs relating to the site of at least $81,979,000 as of January 31, 2003. The Debtor also is liable for the response costs that the United States (through the EPA) will incur in the future, which the United States

15

estimates will be at least $46 million. Finally, the Debtor is liable for the response costs that the United States (through the Forest Service) will incur in the future for cleanup of Forest Service roads on and near the Debtor's former vermiculite mine, which the United States estimates will be at least $2.2 million, and for the cleanup of asbestos-contaminated Forest Service property along the Kootenai River, which the United States estimates will be several million dollars. Some or all of the future response costs the United States claims on behalf of the Forest Service regarding the Libby Asbestos Site may overlap the future response costs the United States claims on behalf of EPA for the site. The United States' response actions at the site are not inconsistent with the NCP. The Debtor's liability for response costs incurred by the United States (through EPA) at the Libby Asbestos Site, and the amount of such costs, is the subject of a lawsuit styled United States v. W.R. Grace & Company-Conn., et al., Case No. 01-72-M-DWM (D. Mont.).

22.    Libby Asbestos Site (Access): The Debtor also is liable to the United States for its unlawful failure to provide EPA with requested access to certain Libby Asbestos Site properties in 2000 to effectuate cleanup activities. The United States' penalty claim related to the Debtor's failure to provide access has been resolved in a consent decree in the lawsuit styled United States v. W.R. Grace & Company et al., Case No. 00-167-M-DWM (D. Mont.), in which the Debtor (along with Debtor Kootenai Development Company) agreed that the United States would be allowed a general unsecured claim in the amount of $71,000 and agreed to perform a supplemental environmental project providing $2,750,000 for a Montana non-profit corporation to establish and administer a program to pay for medical care for certain asbestos related illnesses. The consent decree was approved by both the Montana District Court and the Bankruptcy Court.

23.    Libby Asbestos Site Material Recipients (Nationwide Investigation):  The Debtor also is liable for the Agency for Toxic Substance and Disease Registry's ("ATSDR") investigations and health consultations at facilities throughout the country that received asbestos-contaminated vermiculite from the Libby mine.  With respect to investigations and health consultations at sites that are specifically addressed elsewhere in this Proof of Claim, the costs of these activities are included in the unreimbursed response cost amount for those sites.  Nationwide investigatory costs and costs of investigations and health consultations at sites that are not included elsewhere in this Proof of Claim total $1,791,164.

24.    RAMP Industries Site (Denver, Colorado):  The Debtor is liable to the United States pursuant to CERCLA and a judicial consent decree in connection with the cleanup of environmental contamination at the RAMP Industries Site in Denver, Colorado.  The site was formerly the location of a processing and disposal facility for low level radioactive wastes, mixed wastes (a mixture of hazardous and radioactive waste), various items contaminated with radioactive materials, and medical wastes.  There have been releases or threatened releases of hazardous substances at the site, as approximately 5,000 fifty-five gallon drums containing (among other things) trichloroethane, tetrachloroethylene, methylene chloride, acetone, ethyl benzene, toluene, and methanol mixed with radioactive isotopes were abandoned at the site.  The Debtor is liable to the United States because it arranged for the disposal of hazardous substances at the site.  In a federal district court action styled United States v. AAI Corporation, Case No. 00-N-1909 (D. Colo.), the Debtor (and numerous other entities) executed a consent decree with the United States that was entered by the court on April 4, 2001.  Under the terms of this consent decree the Debtor agreed and was ordered by the Court to pay $7,203.73 to the United States.

17

The Debtor has not complied with this order and is therefore liable to the United States for this amount.

25.   <u>Robinson Insulation (Minot, North Dakota)</u>:  The Debtor is liable to the United States pursuant to CERCLA in connection with the cleanup of environmental contamination at the Robinson Insulation Site.  From 1947 through 1993 a vermiculite expansion plant was located at the site.  There have been releases or threatened releases of a hazardous substance at the site, as soils at the site are contaminated with asbestos.  The Debtor is liable to the United States because it was an operator of a facility at the site at the time hazardous substances were disposed of at the site.  The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $1,416,000 as of December 2002.  The Debtor also is liable for future cleanup obligations at the site, which the United States estimates will cost at least $50,000 to complete.  The United States' response actions at the site are not inconsistent with the NCP.

26.   <u>Vermiculite Intermountain Site (Salt Lake City, Utah)</u>:  The Debtor is liable to the United States pursuant to CERCLA in connection with the cleanup of environmental contamination at the Vermiculite Intermountain Site in Salt Lake City.  From 1940 through at least the late 1980s, a vermiculite expansion plant was located at the site.  There have been releases or threatened releases of a hazardous substance at the site, as soils at the site are contaminated with asbestos.  The Debtor is liable to the United States because it was an operator of a facility at the site at the time hazardous substances were disposed of at such facility.  The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $5,000 as of January 31, 2003.  The Debtor also is liable for future cleanup obligations at the site,

18

which the United States estimates will cost at least $300,000 to complete. The United States' response actions at the site are not inconsistent with the NCP.

27.    Western Mineral Processing Site (Denver, Colorado): The Debtor is liable to the United States pursuant to CERCLA in connection with the cleanup of environmental contamination at the Western Mineral Processing Site in Denver, Colorado. From 1967 through 1988, a vermiculate expansion plant was located at the site. There have been releases or threatened releases of a hazardous substance at the site, as soils at the site are contaminated with asbestos. The Debtor is liable to the United States because it owned and operated a facility at the site at the time hazardous substances were disposed of at such facility. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $296,863.07 as of December 2002. The Debtor also is liable for future cleanup obligations at the site, which the United States estimates will cost at least $650,000 to complete. The United States' response actions at the site are not inconsistent with the NCP.

28.    Casmalia Resources (Santa Barbara, California): The Debtor is liable to the United States pursuant to CERCLA in connection with the cleanup of environmental contamination at the Casmalia Resources Site in Santa Barbara County, California. The site is a former hazardous waste disposal facility. There have been releases or threatened releases of hazardous substances at the site, as landfills on the site have been found to contain industrial and commercial wastes including sludges, pesticides, solvents, acids, metals, caustics, cyanide and non-liquid polychlorinated biphenyls. The site is on the NPL. The Debtor is liable to the United States because it arranged for the disposal of hazardous substances at the site. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $38

19

million. The Debtor also is liable for future cleanup obligations at the site, which the United

States estimates will cost at least $265 million to complete. The United States' response actions

at the site are not inconsistent with the NCP. Other PRPs along with the Debtor may also be

jointly and severally liable to the United States pursuant to CERCLA with respect to the facility.

29.    Harrington Tools Site (Glendale, Ca): The Debtor is liable to the United States

pursuant to CERCLA in connection with the cleanup of environmental contamination at the

Harrington Tools Site in Glendale, California. From at least 1966 through 1976, a vermiculite

expansion plant was located at the site. There have been releases or threatened releases of a

hazardous substance at the site, as soils at the site are contaminated with asbestos. The Debtor is

liable to the United States because it owned and operated a facility at the site at the time

hazardous substances were disposed of at the site. The Debtor is liable for the United States'

unreimbursed response costs relating to the site of at least $29,825.82 as of October 2002. The

Debtor also is liable for any future cleanup obligations at the site. The United States' response

actions at the site are not inconsistent with the NCP.

30.    Operating Industries Inc. Site (Monterey Park, California): The Debtor is liable to

the United States pursuant to CERCLA and a judicially-approved consent decree in connection

with the cleanup of environmental contamination at the Operating Industries Inc. Site in

Monterey Park, California. From 1948 through 1984 a landfill was located at the site. There

have been releases or threatened releases of hazardous substances at the site, as groundwater,

soil, and leachate at the site are contaminated with various organic and inorganic compounds.

The Debtor is liable to the United States because it arranged for the disposal of hazardous

substances at the site. The major response actions to date at the site have been performed by

PRPs under a series of consent decrees and administrative orders, including the Third Partial Consent Decree in which the Debtor and other PRPs agreed to participate as work defendants for the site, which was entered by the District Court in 1992 in a case styled United States v. Chevron Chemical Company, et al., Case No. CV 91-6520 MRP (Kx) (C.D. Cal.). The Debtor is liable for future cleanup obligations relating to the site, including work required under the Third Partial Consent Decree. The Debtor also is liable to the United States for all unreimbursed response costs incurred and to be incurred by the United States in connection with the site (except to the extent the covenant not to sue in the Third Partial Consent Decree limits the Debtor's liability for certain of the costs), which the United States currently estimates at $50 million. The United States' response actions at the site are not inconsistent with the NCP. Other PRPs along with the Debtor may also be jointly and severally liable to the United States pursuant to CERCLA with respect to the facility.

31.    Vermiculite Northwest Site (Spokane): The Debtor is liable to the United States pursuant to CERCLA in connection with the cleanup of environmental contamination at the Vermiculite Northwest Site in Spokane, Washington. From 1951 through 1974, a vermiculite expansion facility was located at the site. There have been releases or threatened releases of a hazardous substance at the site, as soils at the site are contaminated with asbestos. The Debtor is liable to the United States because it owned and operated a facility at the site at the time hazardous substances were disposed of at such facility. The Debtor is liable for the United States' unreimbursed response costs relating to the site of at least $77,285.52 as of March 2003. The Debtor also is liable for any future cleanup obligations at the site. The United States' response actions at the site are not inconsistent with the NCP.

21

32.   Curtis Bay Site (Baltimore, Maryland):  The Debtor is liable to the United States pursuant to CERCLA in connection with the cleanup of environmental contamination at the Curtis Bay Site in Baltimore, Maryland.  From approximately 1957 through 1960, radioactive materials were processed and disposed of at the site.  There have been releases or threatened releases of a hazardous substance at the site, as soils at the site are contaminated with radioactive material (including thorium and uranium compounds).  The Debtor is liable to the United States because it owned and operated a facility at the site at the time hazardous substances were disposed of at such facility and is the current owner and operator of the site.  The Debtor is liable for the United States' (through the Army Corps of Engineers) unreimbursed response costs relating to the site of approximately $6 million as of November 2002.  The Debtor also is liable for the response costs that the United States will incur in the future, which the United States estimates will be between $66 million and $96 million.  The United States' response actions at the site are not inconsistent with the NCP.

### INJUNCTIVE OBLIGATIONS UNDER ENVIRONMENTAL STATUTES

33.   The Debtor has injunctive obligations to comply with environmental requirements applicable to its facilities.  These obligations include but are not limited to obligations to perform environmental assessment and clean up work under the consent decrees and administrative orders issued pursuant to CERCLA and discussed above in connection with the following sites:  the Acton Plant Site, located in Acton, Massachusetts, and the Wells G&H Site, located in Woburn, Massachusetts.  Further, the Debtor is obligated to perform environmental assessment and remediation work under other consent decrees and administrative orders issued by the EPA under environmental laws and regulations other than CERCLA, including but not limited to the

22

following facilities: the Hatco Chemical facility in Fords, New Jersey; the W.R. Grace thorium facility, located at 4000 North Hawthorne Street in Chattanooga, Tennessee; the W.R. Grace Agricultural Chemical site in Charleston, South Carolina, and all other orders referenced in the Debtor's response to Question 17 (c) in its Statement of Financial Affairs, as amended. The Debtor may have other injunctive obligations to remedy environmental violations and or releases of hazardous materials at its facilities, including but not limited to the violations and release of hazardous materials at sites owned by the Debtor as listed in its response to Questions 17(a) and 17(b) of its Statement of Financial Affairs, amended.

34.    The Debtor also has injunctive obligations under consent decrees and administrative orders issued pursuant to CERCLA to perform environmental assessment and remediation work at certain sites not owned by Debtor including the following sites: the Libby Asbestos Site, located in Libby, Montana; the Blackburn & Union Privileges Site in Walpole, Massachusetts; the Solvents Recovery Service of New England Site in Southington, Connecticut; the Li Tungsten Site in Glen Cove, New York; the Aqua-Tech Environmental Site in Greer, South Carolina; and the Operating Industries Inc. Site in Monterey Park, California. The Debtor is required to perform these obligations.

35.    It is the United States' position that it is not required to file a proof of claim with respect to the Debtor's injunctive obligations to comply with work requirements under consent decrees and administrative orders, and to comply with other environmental requirements imposed by law. The Debtor and any reorganized debtor(s) must comply with the mandatory injunctive requirements of any consent decrees and administrative orders, and must comply with any other environmental requirements imposed by law.

23

A-44

36.     Court ordered and regulatory obligations are mandatory injunctive obligations with which the Debtor must comply, and for which proofs of claim need not be filed under the Bankruptcy Code. Nevertheless, this claim is filed in a protective fashion only for the court ordered and regulatory obligations identified above to protect the United States' rights with respect to any such obligations of the Debtor. The United States reserves the right to take future actions to enforce any such obligations of the Debtor. Nothing in this Proof of Claim constitutes a waiver of any rights of the United States or an election of remedies.

## ADDITIONAL PROOF OF CLAIM TERMS

37.     This Proof of Claim asserts claims for the known liability of the Debtor to the United States on behalf of EPA, the Forest Service, and the Army Corps of Engineers. The United States reserves the right to amend this claim to assert subsequently discovered liabilities, or to update the amounts of the claims set forth above.

38.     The United States has not perfected any security interest on its claims against the Debtor, although the United States does reserve all rights to the extent it has a trust interest in insurance proceeds with respect to any matters covered by this Proof of Claim and to the extent of any rights provided in provisions of administrative orders or consent decrees issued to or with the Debtor relating to financial assurance. The United States is entitled to administrative expense priority, and may file an administrative expense application at the appropriate time, for the cost of post-petition response actions with respect to property of the estate, the cost of complying with the Debtor's injunctive obligations, and for any post-petition penalties. The remainder of the United States' claim is filed as a general unsecured claim.

24

39.     This claim is without prejudice to any right under 11 U.S.C. § 553 to set off, against this claim, debts owed (if any) to the Debtor by the United States or any agency or instrumentality of the United States.

40.     No judgments have been rendered on the claims asserted herein, except that there have been administrative orders and consent decrees issued related to certain of the claims as indicated herein.

41.     No payments to the United States have been made by the Debtor on these claims, except as provided herein.

42.     This Proof of Claim includes claims for all prejudgment interest on all response costs incurred pursuant to CERCLA as allowed by law.

43.     References to actions taken by the Debtor include actions taken by predecessors-in-interest of the Debtor.

Dated this 27th day of March, 2003.

Respectfully submitted,

CATHERINE MCCABE
Deputy Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice

JAMES FREEMAN
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
999-18th Street, North Tower
Denver, Colorado 80202
(303) 312-7376

25

A-46

COLM CONNELLY
United States Attorney
District of Delaware

ELLEN SLIGHTS
Assistant United States Attorney
Office of United States Attorney
1201 Market Street
Suite 1100
P.O. Box 2046
Wilmington, DE 19899-2046

OF COUNSEL

ANDREA MADIGAN
Enforcement Attorney
United States Environmental Protection Agency
999 Eighteenth Street, Suite 300
Denver, Colorado 80202

26

**EXHIBIT B**



2004 AUG 24  AM 8: 02

FILED
EPA REGION VIII
HEARING CLERK

UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY
REGION 8

IN THE MATTER OF:
Vermiculite Intermountain Site
Salt Lake City, Utah

PacifiCorp, d/b/a Utah Power
Respondent

ADMINISTRATIVE ORDER ON
CONSENT FOR REMOVAL ACTION

U.S. EPA Region 8
CERCLA Docket No.  CERCLA–08–2004–0017

Proceeding Under Sections 104, 106(a), 107
and 122 of the Comprehensive
Environmental Response, Compensation,
and Liability Act, as amended, 42 U.S.C. §§
9604, 9606(a), 9607 and 9622

2

## TABLE OF CONTENTS

I.     JURISDICTION AND GENERAL PROVISIONS ........................ 3

II.     PARTIES BOUND ......................................... 3

III.     DEFINITIONS .......................................... 4

IV.     FINDINGS OF FACT ...................................... 6

V.     CONCLUSIONS OF LAW AND DETERMINATIONS .................... 6

VI.     ORDER .............................................. 7

VII.     DESIGNATION OF CONTRACTOR, PROJECT COORDINATOR, AND ON-SCENE COORDINATOR ......................................... 7

VIII.     WORK TO BE PERFORMED .................................. 9

IX.     SITE ACCESS .......................................... 11

X.     ACCESS TO INFORMATION ................................. 13

XI.     RECORD RETENTION ..................................... 14

XII.     COMPLIANCE WITH OTHER LAWS ............................ 15

XIII.     EMERGENCY RESPONSE AND NOTIFICATION OF RELEASES ........... 15

XIV.     AUTHORITY OF ON-SCENE COORDINATOR ...................... 16

XV.     PAYMENT OF RESPONSE COSTS ............................. 16

XVI.     DISPUTE RESOLUTION ................................... 18

XVII.     FORCE MAJEURE ....................................... 18

XVIII.     STIPULATED PENALTIES ................................. 19

XIX.     COVENANT NOT TO SUE BY EPA ............................ 21

XX.     RESERVATIONS OF RIGHTS BY EPA .......................... 21

XXI.     COVENANT NOT TO SUE BY RESPONDENT ...................... 22

XXII.     OTHER CLAIMS ........................................ 23

XXIII.     CONTRIBUTION PROTECTION .............................. 24

XXIV.     INDEMNIFICATION ..................................... 24

XXV.     INSURANCE .......................................... 25

XXVI.     FINANCIAL ASSURANCE .................................. 25

XXVII.     MODIFICATIONS ....................................... 26

XXVIII.     ADDITIONAL REMOVAL ACTIONS ............................ 26

XXIX.     NOTICE OF COMPLETION OF WORK .......................... 27

XXX.     SEVERABILITY/INTEGRATION/APPENDICES ..................... 27

XXXI.     EFFECTIVE DATE ...................................... 28