

APR 24 1984    07 00 101

## CORPORATION ANNUAL REPORT
MUST BE FILED PRIOR TO MARCH 1ST

STATE OF UTAH

In compliance with Section 16-10-121 & 122, and Section 16-10-12 or 16-10-110, U.C.A., 1953, the following report ,and if applicable the statement of change of registered office and/or agent, is submitted: (PLEASE TYPE OR PRINT CLEARLY!!)

023186          DATE OF INC.  01/22/1941   D

**1** EXACT CORPORATE NAME    VERMICULITE-INTERMOUNTAIN INC.
REGISTERED AGENT        DONALD K. IRVINE/PD
REGISTERED OFFICE       333 WEST 1ST SOUTH
                        SALT LAKE CITY, UTAH  84101

**2** IF NEW REGISTERED AGENT AND/OR OFFICE, PLEASE COMPLETE

New Registered Agent _____

New Registered Office _____ City _____ State UTAH Zip ____
                        (Street Address)
(With the above change, the address of the registered office and the address of the business office of the registered agent are identical.)

**3** INCORPORATED UNDER THE LAWS OF_____ Utah _____(STATE OR COUNTRY

**4** IF INCORPORATED OUTSIDE THE STATE OF UTAH, GIVE THE ADDRESS OF THE PRINCIPLE OFFICE
IN THE STATE OR COUNTRY OF INCORPORATION.

_____ City _____ State or Country _____ Zip ____
(Street Address)

**5** TYPE OF BUSINESS CONDUCTED IN UTAH  Manufacturers of Zonolite Insulation
**6** NAMES AND RESPECTIVE ADDRESSES OF THE OFFICERS AND DIRECTORS OF THE CORPORATION.

| | NAME | STREET | CITY, STATE, ZIP |
|---|---|---|---|
| President | Donald K. Irvine, | 2436 Elizabeth St. #5 | Salt Lake City, Utah 84 |
| Vice-President | Don D. Wellman, | 1434 East Stratford Ave. | Salt Lake City, Utah 84 |
| Secretary | Emma F. Wellman, | 1434 East Stratford Ave. | Salt Lake City, Utah 84 |
| Treasurer | Emma F. Wellman, | 1434 East Stratford Ave. | Salt Lake City, Utah 84 |

DIRECTORS: (UTAH LAW REQUIRES AT LEAST 3 DIRECTORS.)

| | NAME | STREET ADDRESS | CITY, STATE, ZIP |
|---|---|---|---|
| 1 | Leland K. Irvine, | 1988 Sheridan Road | Salt Lake City, Utah  84103 |
| 2 | Donald K. Irvine, | 2436 Elizabeth St. #5 | Salt Lake City, Utah  84106 |
| 3 | Florence I. Orr, | 3001 East 15th Ave., | Anchorage, Alaska  99503 |

**7** AUTHORIZED SHARES (DO NOT CHANGE THE INFORMATION LISTED.)

| Number of Shares Authorized | Itemized By Class | Series, If Any Within A Class | Par Value Of Shares | Number of Shares Without Par Value |
|---|---|---|---|---|
| 200 | | | 100.0000 .0000 | |

**8** NUMBER OF SHARES ISSUED (MUST BE COMPLETED)

| Number of Shares Issued | Itemized By Class | Series, If Any Within A Class | Par Value Of Shares | Number of Shares Without Par Value |
|---|---|---|---|---|
| 41 | | | 100.00 | |

**9** STATED CAPITOL AS OF DATE OF THIS REPORT (Number of Shares Issued X Par Value)$ 4100.00

Under the penalties of perjury and as an authorized officer, I declare that this annual report and, if applicable, the statement of change of registered office or agent, has been examined by me and is, to the best of my knowledge and belief, true, correct, and complete.

**10** BY *Emma F. Wellman*        **11** _____ Sec-Tres
                                                Title or Position
Emma F. Wellman
Authorized Officer                  **12** DATE  Feb. 27, ____, 19 84

(If Registered Agent and/or Registered Office has been changed on this form,said change must be authorized by a resolution adopted by the Board of Directors, and The President or Vice President must sign the report.)

Send Report &
Remittance to:  Annual Report Division
                P.O.Box 5801
                Salt Lake City, Utah 84110  A-201

FEE $5.00 (If filed after March 1st, $10.00)
Make check payable to Annual Report Division

# EXHIBIT 3



# EXHIBIT 4

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W.R. GRACE & CO., et al., | ) Case No. 01-01139 (JKF) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) |

## AFFIDAVIT OF TINA M. PERKINS

| | |
|---|---|
| STATE OF UTAH | ) |
| | ) ss: |
| SALT LAKE COUNTY | ) |

Tina M. Perkins, being duly sworn, testifies as follows:

1.    I have personal knowledge of the facts set forth herein.  I submit this Affidavit in support of PacifiCorp's Reply to Grace's Objection to PacifiCorp and the VanCott Bagley Cornwall & McCarthy 401(k) Profit Sharing Plan's Motion for Leave to File Late Proofs of Claim.

2.    I am a Title Searcher licensed by the State of Utah Insurance Department.

3.    On February 18, 2005, I was given the following address:  333 West First Street, Salt Lake City, Utah.  I was asked to determine the name(s) of the current owner(s) of the block on which 333 West First Street was located.

4.    I initially determined that there was no "First Street" in Salt Lake City, and assumed that the incorrect address, 333 West First Street, was 333 West *First South Street*.  It is common knowledge and was reasonable to assume that "333 West First Street" was 333 West First South Street.

5.    I further determined that the address, 333 West First Street, does not presently exist in Salt Lake City.

6.    I determined that 333 West First South Street was located on Block 66. It is common knowledge that there is a precise grid system in Salt Lake City allowing a person to easily and precisely locate an address. Moreover, it is commonly known that odd-numbered addresses are located on the south side of a street and even-numbered addresses are located on the north side of the street. Using a Sidwell map, available online via Salt Lake County's website at http://recorder.slco.org/RecHome, I located the block between 300 West Street and 400 West Street; I located the block on the south side of First South Street. The block within these boundaries was Block 66.

7.    I determined that the owners of the north portion of Block 66 were Ramola Bengtzen, Utah Power & Light/PacifiCorp, and La Quinta Inns Incorporated. The plat and evidence of ownership of the parcels on the northern portion of Block 66 is attached hereto as Attachment A. The owners of the respective parcels were easily identified because each parcel on the plat contains a tax identification number. Taking the tax identification numbers listed for each parcel on the plat map, I was able to identify the owners of each parcel.

8.    A title search was not necessary to determine the current owners of Block 66.

9.    This whole process took me approximately 5 minutes.

10.    I did not charge anything for my services. I routinely get calls asking me to identify the current owners of a certain piece of property. Normally, I do not charge for such requests.

11.    Determining the current owners of certain parcels on a block, as was done here, is

a simple task. A reasonable title searcher would have solved this problem in an identical or

similar manner.



                                        Tina M. Perkins

Sworn to before me this

30th day of March, 2005

_____
            Notary Public

```
┌─────────────────────────────────────┐
│        NOTARY PUBLIC                 │
│      LORENA D. OSBORN                │
│      167 East 6100 South             │
│      Murray, Utah  84107             │
│      My Commission Expires           │
│         January 25, 2008             │
│        STATE OF UTAH                 │
└─────────────────────────────────────┘
```

A-207

# ATTACHMENT A

4

} [http://recorder.slco.org/RecHome2/doccache/15654793.tif]

che/15461934.tif]



```
VTDI 15-01-129-001-0000  DIST 01H              TOTAL ACRES       0.41
BENGTZEN, RAMOLA           TAX CLASS   UPDATE   REAL ESTATE     387200
                                       LEGAL    BUILDINGS          500
                                       PRINT  P TOTAL VALUE     387700
377 W 100 S
SALT LAKE CITY UT       84101129177 EDIT 1         FACTOR BYPASS
LOC: 377 W 100 S            EDIT 1   BOOK 6422  PAGE 2669  DATE 03/16/1992
SUB:                                            TYPE UNKN PLAT
  02/18/2005  PROPERTY DESCRIPTION FOR TAXATION PURPOSES ONLY
          COM AT NW COR LOT 5 BLK 66 PLAT A SLC SUR E 123.75 FT S
          176.37 FT M OR L NW'LY ALG CURVE TO RIGHT WITH RADIUS OF
          198.18 FT A DISTANCE OF 151.25 FT N 91.99 FT TO BEG
          6294-1340
```

A

```
PFKEYS: 1=VTNH 2=VTOP 4=VTAU 6=NEXT 7=RTRN VTAS 8=RXMU 10=RXBK 11=RXPN 12=PREV
```

```
VTDI 15-01-129-002-0000  DIST 01H              TOTAL ACRES        0.74
UTAH POWER & LIGHT CO          TAX CLASS  UPDATE   REAL ESTATE    563500
                                 SA       LEGAL    BUILDINGS           0
% PACIFIC CORP - R. STRONG                PRINT  V  TOTAL VALUE         0
700 NE MULTNOMAH ST #700
PORTLAND  OR          972322131   EDIT 1           FACTOR BYPASS
LOC: 141 S 400 W                EDIT 1   BOOK 6280  PAGE 0003  DATE 02/03/1992
SUB:                                               TYPE UNKN PLAT
   02/18/2005  PROPERTY DESCRIPTION FOR TAXATION PURPOSES ONLY
            BEG N 89¬58'22" E 123.75 FT FR NW COR LOT 5, BLK 66, PLAT A,
            SLC SURVEY; S 0¬02'07" E 165.0 FT; N 89¬58'22" E 24.75 FT; S
            0¬02'07" E 33.0 FT; S 89¬58'22" W 148.5 FT; S 0¬02'07 E
            132.0 FT; N 89¬58'22" E 161.5 FT; N 0¬02'07" W 34.06 FT; N
            89¬58'22" E 5.81 FT; N 0¬02'07" W 75.97 FT; N 89¬58"22' E
            7.7 FT; N 0¬02'07" W 220.04 FT; S 89¬58'22" W 51.25 FT TO
            BEG. 412-1
```

$\mathcal{B}$

```
PFKEYS: 1=VTNH 2=VTOP 4=VTAU 6=NEXT 7=RTRN VTAS 8=RXMU 10=RXBK 11=RXPN 12=PREV
```

A-211

```
VTDI 15-01-129-008-0000  DIST 01H              TOTAL ACRES        0.02
UTAH POWER & LIGHT COMPANY     TAX CLASS  UPDATE   REAL ESTATE      10400
                                  SA      LEGAL    BUILDINGS            0
% PACIFIC CORP - R. STRONG              PRINT  V   TOTAL VALUE          0
700 NE MULTNOMAH ST #700
PORTLAND  OR        972322131    EDIT 1         FACTOR BYPASS
LOC: 125 S 400 W # REAR        EDIT 1   BOOK 5328  PAGE 0002  DATE 00/00/0000
SUB:                                         TYPE UNKN PLAT
   02/18/2005  PROPERTY DESCRIPTION FOR TAXATION PURPOSES ONLY
           COM 165 FT S & 123.75 FT E FR NW COR LOT 5 BLK 66 PLAT A SLC
           SUR E 24.75 FT S 33 FT W 24.75 FT N 33 FT TO BEG
```

𝐵

```
PFKEYS: 1=VTNH 2=VTOP 4=VTAU 6=NEXT 7=RTRN VTAS 8=RXMU 10=RXBK 11=RXPN 12=PREV
```

A-212

```
VTDI 15-01-129-023-0000  DIST 01H                TOTAL ACRES        0.44
UTAH POWER & LIGHT CO           TAX CLASS   UPDATE   REAL ESTATE    228100
                                    SA      LEGAL    BUILDINGS        1000
% PACIFIC CORP - R. STRONG              PRINT  V  TOTAL VALUE           0
700 NE MULTNOMAH ST #700
PORTLAND  OR          972322131   EDIT 1          FACTOR BYPASS
LOC: 141 S 400 W # REAR         EDIT 1   BOOK 5567  PAGE 2324  DATE 07/11/1984
SUB:                                             TYPE UNKN PLAT
   02/18/2005  PROPERTY DESCRIPTION FOR TAXATION PURPOSES ONLY
         BEG N 89¬58'22" E 10 FT & S 0¬02'07" E 132.02 FT FR NW COR
         LOT 6, BLK 66, PLAT A, SLC SURVEY; S 0¬02'07" E 88.02 FT; S
         89¬58'22" W 7.7 FT; S 0¬02'07" E 75.97 FT; S 89¬58'22" W
         5.81 FT; S 0¬02'07" E 34.06 FT; N 89¬58'22" E 106.38 FT; N
         0¬25'13" W 198.05 FT; S 89¬58'22" W 91.54 FT TO BEG. 0.443
         AC
```

$\beta$

```
PFKEYS: 1=VTNH 2=VTOP 4=VTAU 6=NEXT 7=RTRN VTAS 8=RXMU 10=RXBK 11=RXPN 12=PREV
```

```
VTDI 15-01-129-026-0000  DIST 01H                TOTAL ACRES       3.36
LA QUINTA INNS INC           TAX CLASS  UPDATE   REAL ESTATE    2431300
                                        LEGAL    BUILDINGS       872400
                                        PRINT  P TOTAL VALUE    3303700

PO BOX 2636
SAN ANTONIO TX        78299236    EDIT 1         FACTOR BYPASS
LOC: 106-132 S 300 W              EDIT 1   BOOK 7846  PAGE 0001  DATE 03/03/1999
SUB:                                             TYPE UNKN PLAT
    02/18/2005  PROPERTY DESCRIPTION FOR TAXATION PURPOSES ONLY
            BEG E 10 FT FR NW COR LOT 6, BLK 66, PLAT A, SLC SUR; S
            0¬02'06" E 132.02 FT; N 89¬58'22" E 91.54 FT; S 0¬25'13" E
            198.09 FT; N 89¬58'27" E 392.52 FT; N 0¬03'19" W 330.12 FT;
            S 89¬58'20" W 485.28 FT TO BEG.
```

PFKEYS: 1=VTNH 2=VTOP 4=VTAU 6=NEXT 7=RTRN VTAS 8=RXMU 10=RXBK 11=RXPN 12=PREV

A-214

# EXHIBIT 5

## PATENT LICENSE AGREEMENT

THIS AGREEMENT entered into this _____ day of _____, 1972 (effective as of July 1, 1972) by and between VERMICULITE INTERMOUNTAIN, INC., a corporation organized and existing under the laws of the State of Utah and having its principal place of business at P. O. Box 2398, Salt Lake City, Utah (hereinafter referred to as VERMICULITE INTERMOUNTAIN) and W. R. GRACE & CO., a corporation organized and existing under the laws of the State of Connecticut, acting through its CONSTRUCTION PRODUCTS DIVISION, having an office at 62 Whittemore Avenue, Cambridge, Massachusetts, 02140 (hereinafter referred to as GRACE).

WITNESSETH THAT:

WHEREAS, GRACE has developed a product and process for the fireproof coating of walls and ceilings of building structures known as MONOKOTE MK4 and;

WHEREAS, GRACE has or is about to file patent applications in the United States, and;

WHEREAS, in connection with this research and development activity related to the said product and process, GRACE has acquired a considerable body of patentable information, know-how and trade secrets and;

201820Z6

050ETXQ01308

A-216

WHEREAS, VERMICULITE INTERMOUNTAIN is interested in acquiring access to said technical information, know-how and trade secrets as well as licenses under the aforementioned patent applications and any patents which have or will issue thereon, and

WHEREAS GRACE is willing to make such disclosure and grant such rights to VERMICULITE INTERMOUNTAIN under terms and conditions specifically set forth below.

NOW, THEREFORE, in consideration of the mutual promises, undertakings, agreements and covenants set forth herein, the parties hereto do hereby agree as follows:

## ARTICLE I

As used through this Agreement the following terms shall have the meanings indicated:

(A) "Licensed Product" shall mean any material or composition for use as fireproof coating specifically designated as MONOKOTE MK4 encompassed by the claims of the Patent Rights or GRACE's Technology.

(B) The term "Patent Rights" shall mean patents which have issued or which shall issue to GRACE on United States patent applications, and any amendments, extensions, or continuation-in-part of said United States applications, which patent and application relate to the Licensed Product.

- 2 -

2018Z027

050ETXQ01309

A-217

(C) The term "Confidential Information" shall mean know-how and/or technology disclosed by GRACE to VERMICULITE INTERMOUNTAIN at any time if not possessed by VERMICULITE INTERMOUNTAIN at the time of disclosure, but any such know-how or information shall cease to be confidential information when it becomes public knowledge or when it becomes available to VERMICULITE INTERMOUNTAIN from any third party who did not obtain such information from GRACE.

(D) The term "GRACE's Technology" shall mean any and all information, formula, data, specifications, techniques, marketing information, or other know-how of any nature, whether or not patented or patentable, in possession or control (the term "control" being used in the sense that GRACE shall have the right to grant licenses thereunder without obligation to any third party) of GRACE at any time prior to the expiration or termination of this Agreement relating to the use of and manufacturing the Licensed Product.

## ARTICLE II

GRACE hereby grants to VERMICULITE INTERMOUNTAIN a non-transferable, non-exclusive right and license (without the right to sublicense) to make, use and sell Licensed Product, but solely within the following territory:

The State of Utah. All that part of the State of Idaho running south of Idaho County (but not including Idaho County) and the Montana state line. The following countys in Wyoming: Unita, Sweet Water, Lincoln, Sublette, Fremont, and Tetoa, and the following counties in Nevada: Elko, Eureka, White Pine and Lincoln.

20182028

- 3 -

050ETXQ01310

### ARTICLE III

VERMICULITE INTERMOUNTAIN agrees that it will for the term of this Agreement take all reasonable steps to preclude and prevent the disclosure to others of Confidential Information recieved from GRACE so long as such information shall remain confidential information.

GRACE agrees that during the term of this Agreement it will supply technical assistance as to the use of raw materials and production and marketing techniques associated with the manufacture and marketing of the Licensed Product.

20182029

- 3 -

## ARTICLE IV

(A) Vermiculite Intermountain agrees to pay GRACE ~~Zonolite~~ royalty of ~~one half cent ($0.005)~~ *eight cents ($0.08)* per ~~cubic foot~~ 45 to 50 lb. bag of Licensed Product which is made by Vermiculite Intermountain and either used or sold by Vermiculite Intermountain.

(B) Vermiculite Intermountain agrees that in no event shall royalties paid to ~~Zonolite~~ GRACE hereunder be less than One Hundred Dollars in any year following the execution of this Agreement. Should royalties paid by Vermiculite Intermountain in any such year not amount to One Hundred Dollars, ~~Zonolite~~ GRACE shall promptly notify Vermiculite Intermountain, and if Vermiculite Intermountain has not within thirty days after the date of such notice paid to Zonolite an amount which, when added to royalties already paid, will equal or exceed One Hundred Dollars, then this license shall terminate at the conclusion of said thirty day period.

## ARTICLE V

Vermiculite Intermountain shall at all times keep accurate records with respect to all operations and products falling under the scope of this license, and shall render written statements thereof to ~~Zonolite~~ GRACE

20182030

050ETXQ01312

A-220

— 4 —

within thirty days after the end of every calendar quarter during the term of this Agreement, and shall pay to ~~Geselite~~ GRACE with each such statement the amount of all royalties accrued during the calendar quarter to which the report appertains. ~~Geselite~~ Grace shall have the right, at its own expense, to have Vermiculite Intermountain's books examined at reasonable times and intervals for the purpose of verifying such statements by a certified public accountant to whom Vermiculite Intermountain has no reasonable objection.

### ARTICLE V

Vermiculite Intermountain shall mark all of the containers in which the Licensed Product is packaged and sold as well as advertising and similar literature relative to Licensed Products with such reasonable and appropriate statutory patent notice as ~~Geselite~~ GRACE shall from time to time request.

### ARTICLE VI

Vermiculite Intermountain hereby agrees not to contest or dispute the validity of the ~~Licensed~~ Patent Rights or the validity of ~~Geselite's~~ GRACE'S title to the ~~Licensed~~ Patent Rights.

20182031

A-221

- 5 -

## ARTICLE VIII

If during the term of this Agreement
Vermiculite Intermountain shall make any invention
which shall constitute an improvement or refinement
of either the process or composition ~~covered by any~~ related to
~~of the claims of~~ the Licensed ~~Patent~~. Vermiculite  Product
Intermountain shall promptly disclose such invention
or inventions to ~~Zonolite~~.  Vermiculite Intermountain  GRACE
agrees to grant and hereby grants to ~~Zonolite~~ a  GRACE
royalty-free, non-exclusive license (with the right
to sub-license others) under any such inventions and
under any patents which may be obtained anywhere cover-
ing any such inventions.  Vermiculite Intermountain
agrees to execute any instruments or documents prepared
by ~~Zonolite~~ as may reasonably be necessary to confirm  GRACE
or make of record the license rights granted under this
article.

## ARTICLE ~~VIII~~ IX

(A)  The term of this Agreement and the license
granted hereunder shall be until January 1, 1978.  It may
be terminated by either party at the end of said term by
giving notice of termination ninety days prior to
December 31, 1977.  If not so terminated, it shall continue
from year to year thereafter unless and until terminated

20182032

050ETXQ01314

A-222

— 6 —

by either party giving to the other party written
notice of termination at least ninety days in advance
of the end of any subsequent anniversary date thereof.
Termination of this Agreement at any time for any
reason shall not relieve either of the parties hereto
from any obligations or undertakings which had vested
prior to such termination.

(B) Should Vermiculite Intermountain
violate or breach any of its obligations under this
Agreement, ~~Intermin~~ GPA(U may terminate this Agreement by
giving the licensee thirty (30) days written notice of
such termination, specifying the reason or reasons there-
for. Should the violation or breach specified be
corrected by Vermiculite Intermountain within said thirty
day period, then this Agreement shall not terminate but
shall continue in full force and effect.

## ARTICLE SIX

This Agreement constitutes the entire under-
standing of the parties and supersedes any prior agree-
ments or understandings between the parties relative to
the subject matter hereof.

20182033

050ETXQ01315

A-223

- 7 -

## ARTICLE XI

Any notices or other communications relative to this Agreement shall be deemed properly given if addressed as follows:

In the case of GRACE CONSTRUCTION PRODUCTS Division, W. R. Grace & Co. 62 Whittemore Ave Cambridge, Mass. 02140

In the case of VERMICULITE

Vermiculite Intermountain, Inc. P.O. Box 2298 Salt Lake City, Utah

IN WITNESS WHEREOF, the parties have hereunto caused this Agreement to be duly executed the day and year first above written.

W. R. GRACE & CO.

ATTEST:

By_____

_____    Pres. Construction Products Division

VERMICULITE INTERMOUNTAIN, INC.

ATTEST:

By_____

_____

20182034

050ETXQ01316

A-224

# EXHIBIT 6

# ZONOLITE

### CONSTRUCTION PRODUCTS DIVISION

02255535

W. R. GRACE & CO. 62 WHITTEMORE AVENUE CAMBRIDGE MASSACHUSETTS 02140 G 876-1400

**BRUCE R. WILLIAMS**
VICE PRESIDENT

October 10, 1975

Mr. L. K. Irvine
Vermiculite-Intermountain, Inc.
P. O. Box 2398
Salt Lake City, Utah 34110

Dear Lee:

Thank you for returning your signed copy of the Licensee Agreement for Vermiculite-Intermountain, Inc.

Last spring when I sent you the new Licensee Agreement, I pointed out that we would be preparing ore specifications (Schedule A) and would send these to you to become a part of the Agreement.

We have delayed preparing these specifications to gain more time and experience in operating the new Libby mill.

Establishing ore specifications this year has been difficult because the characteristics of the output from the new mill are not yet fixed. Changes to improve mill performance are continuing. Further, there are process and equipment modifications planned for other improvements throughout next year. Consequently, in the near term we still can have periods of erratic operation, which may result in some exceptions to the specifications enclosed.

In the interest of completing the Licensee Agreement, we have decided to prepare specifications for the ore as it is now being produced.

Enclosed is Schedule A to become a part of the Licensee Agreement.

If you have any questions on these specifications, please let me know.

Very truly yours,

Bruce R. Williams

BRW:cj
Enclosure

GRACE

Dsp 1 01177

001DSP01186

A-226

## SCHEDULE A -- SPECIFICATIONS

### ENOREE MILL VERMICULITE ORE CONCENTRATE

02255536

**EXPANSION CHARACTERISTICS**

| Specification # | TYPICAL | | | | SPECIFICATION RANGE | | B3C-1-75 | B4C-1-7 |
|---|---|---|---|---|---|---|---|---|
| Ore Size | #1 | #2 | #3 | #4 | #1 | #2 | #3 | #4 |
| Expanded Yield Bags/Ton | | | 61 | 50 | | | 55 min. | 48 min |
| % Rock | | | 6.5 | 4.5 | | | 12 max. | 12 max. |
| Bulk Density Lbs/cu.ft. | | | 45-60 | 40-55 | | | | |

#### TEST METHODS

| | |
|---|---|
| C-31 | Sampling Procedures |
| C-31F | Determination of Expanded Yield |
| C-31C | Determination of % Rock |
| C-31D | Determination of Density |

**SCREEN ANALYSIS**

| SCREEN | | TYPICAL | | | | SPECIFICATION RANGE | | | |
|---|---|---|---|---|---|---|---|---|---|
| U.S. | TYLER | #1 | #2 | #3 | #4 | #1 | #2 | #3 | #4 |
| 8 | 8 | | | | | | | 0 - 1 | |
| 12 | 10 | | | 5.0 | | | | 0 - 15 | |
| 16 | 14 | | | 21.0 | | | | 15 - 35 | |
| 20 | 20 | | | 34.0 | | | | 25 - 45 | 0 - 1.5 |
| 30 | 28 | | | 26.0 | 10.0 | | | 15 - 40 | 2 - 15 |
| 40 | 35 | | | 7.0 | 29.0 | | | 2 - 14 | 20 - 40 |
| 50 | 48 | | | 3.0 | 28.0 | | | 0 - 8 | 20 - 40 |
| 70 | 65 | | | 2.0 | 20.0 | | | 0 - 5 | 15 - 30 |
| 100 | 100 | | | | 8.0 | | | | 5 - 15 |
| Pan | Pan | | | 2.0 | 5.0 | | | 0 - 5 | 0 - 10 |

#### TEST METHODS

| | |
|---|---|
| C-31 | Sampling Procedures |
| C-31A | Screen Analysis |

RCE/lpj
10/3/75

Dsp 1  01178

001DSP01187

A-227

## SCHEDULE A — SPECIFICATIONS
### LIBBY MILL VERMICULITE ORE CONCENTRATE

**EXPANSION CHARACTERISTICS**                                   02255537

|  | TYPICAL | | | | SPECIFICATION RANGE | | | |
|---|---|---|---|---|---|---|---|---|
| Specification # | | | | | L1C-1-75 | L2C-1-75 | L3C-1-75 | L4C-1- |
| Ore Size | #1 | #2 | #3 | #4 | #1 | #2 | #3 | #4 |
| Expanded Yield Bags/Ton | 83 | 70 | 70 | 51 | 80 min. | 66 min. | 65 min. | 45 m |
| % Rock | 18 | 28 | 20 | 20 | 22 max. | 32 max. | 22 max. | 22 m |
| Bulk Density lbs/cu.ft. | 45-60 | 50-65 | 55-65 | 55-65 | | | | |

#### TEST METHODS

| | |
|---|---|
| C-31 | Sampling Procedures |
| C-31F | Determination of Expanded Yield |
| C-31C | Determination of % Rock |
| C-31D | Determination of Density |

### SCREEN ANALYSIS

| SCREEN | | TYPICAL | | | | SPECIFICATION RANGE | | | |
|---|---|---|---|---|---|---|---|---|---|
| U.S. | TYLER | #1 | #2 | #3 | #4 | #1 | #2 | #3 | #4 |
| .530 | .525 | | | | | | | | |
| 3/8 | .371 | | | | | | | | |
| .265 | 3 | 1.0 | | | | 0 - 10 | | | |
| 4 | 4 | 15.0 | | | | 5 - 30 | | | |
| 6 | 6 | 43.0 | 1.0 | | | 25 - 60 | 0 - 3 | | |
| 8 | 8 | 29.0 | 26.0 | | | 15 - 45 | 10 - 45 | 0 - 1 | |
| 12 | 10 | 7.0 | 47.0 | 1.0 | | 0 - 15 | 30 - 65 | 0 - 8 | |
| 14 | 12 | ---- | 13.0 | --- | | ----- | 5 - 25 | ----- | |
| 16 | 14 | 2.0 | 8.0 | 17.0 | | 0 - 6 | 0 - 20 | 5 - 35 | |
| 20 | 20 | 1.0 | 3.0 | 33.0 | | 0 - 6 | 0 - 12 | 20 - 45 | 0 - 1.5 |
| 30 | 28 | | | 29.0 | 13.0 | | | 20 - 40 | 5 - 25 |
| 40 | 35 | | | 12.0 | 35.0 | | | 5 - 20 | 20 - 50 |
| 50 | 48 | | | 4.0 | 32.0 | | | 0 - 10 | 20 - 45 |
| 70 | 65 | | | 1.0 | 13.0 | | | 0 - 5 | 5 - 25 |
| 100 | 100 | | | | 4.0 | | | | 0 - 10 |
| Pan | Pan | 2.0 | 2.0 | 3.0 | 3.0 | 0 - 9 | 0 - 9 | 0 - 9 | 0 - 9 |

#### TEST METHODS

| | |
|---|---|
| C-31 | Sampling Procedures |
| C-31A | Screen Analysis |

RCE/lpj
10/3/75

Dsp 1 01179

001DSP01188

A-228

# EXHIBIT 7

## PATENT LICENSE AGREEMENT

THIS AGREEMENT entered into this _16_ day of _September_, 1974
(effective as of November 7, 1973) by and between ROBINSON INSULATION CO.,
a corporation organized and existing under the laws of the State of Montana
and having its principal place of business at 12th Street North and River
Drive, Great Falls, Montana, (hereinafter referred to as LICENSEE) and
W. R. GRACE & CO., a corporation organized and existing under the laws of
the State of Connecticut acting through its CONSTRUCTION PRODUCTS DIVISION,
having an office at 62 Whittemore Avenue, Cambridge, Massachusetts, 02140
(hereinafter referred to as GRACE).

WITNESSETH THAT:

WHEREAS, GRACE has developed a product and process for the
fireproof coating of walls and ceilings of building structures known as
MONOKOTE Fire Proofing type MK-5 and;

WHEREAS, GRACE has filed patent applications in the United States
related to such product and process and;

WHEREAS, in connection with research and development activity
related to the said product and process, GRACE has acquired a considerable
body of patentable information, know-how and trade secrets and;

-1-

15187987

135Z00163

A-230

WHEREAS, LICENSEE is interested in acquiring access to said technical information, know-how and trade secrets as well as licenses under the aforementioned patent applications and any patents which have issued or will issue thereon, and;

WHEREAS, GRACE is willing to make such disclosure and grant such rights to LICENSEE under terms and conditions specifically set forth below.

NOW, THEREFORE, in consideration of the mutual promises, undertakings, agreements and covenants set forth herein, the parties hereto do hereby agree as follows:

## ARTICLE I

As used through this Agreement the following terms shall have the meanings indicated:

(A) "Licensed Product" shall mean any material or composition for use as fireproof coating specifically designated as MONOKOTE Fire Proofing type MK-5 encompassed by the claims of the Patent Rights or GRACE's Technology.

(B) The term "Patent Rights" shall mean U.S. Patent No. 3,719,513 issued March 6, 1973; U.S. Patent Application Serial No. 322,271 filed January 9, 1973 and any patents which have issued or which shall issue to GRACE on United States patent applications, and any amendments, extensions, or continuation-in-part of said United States applications, which patents and applications relate to the Licensed Product.

- 2 -

15187988

(C) The term "Confidential Information" shall mean know-how and/or technology disclosed by GRACE to LICENSEE at any time if not possessed by LICENSEE at the time of disclosure, but any such know-how or information shall cease to be confidential information when it becomes public knowledge or when it becomes available to LICENSEE from any third party who did not obtain such information from GRACE.

(D) The term "GRACE's Technology" shall mean any and all information, formula, data, specifications, techniques, marketing information, or other know-how of any nature, whether or not patented or patentable, in possession or control (the term "control" being used in the sense that GRACE shall have the right to grant licenses thereunder without obligation to any third party) of GRACE at any time prior to the expiration or termination of this Agreement relating to the use of and manufacturing of the Licensed Product.

## ARTICLE II

(A) GRACE hereby grants to LICENSEE a non-transferable, non-exclusive right and license (without the right to sublicense) to make, use and sell Licensed Product, but solely within the territory set forth in Schedule A attached.

(B) LICENSEE agrees to pay GRACE royalties as follows:

(1) Fifteen cents (15¢) per 45-50 pound bag of License Product sold subsequent to the date of this Agreement.

(2) A minimum royalty per calendar year under this Agreement shall be ONE THOUSAND DOLLARS ($1,000) beginning with the calendar 1975 and continuing throughout the life of this Agreement. The minimum

-3-

15187989

135Z00165

A-232

royalty herein specified shall be paid by LICENSEE
to GRACE regardless or irrespective of actual sales
of License Product.

(3) The maximum royalty per calendar year under this
Agreement shall be TWENTY-FIVE HUNDRED DOLLARS
($2,500) beginning with the calendar year 1975 and
continuing throughout the life of this Agreement.
The maximum royalty shall be the limit of LICENSEE's
obligation for royalty regardless and irrespective
of actual sales of License Product for any calendar
year.

(C) (1) Within THIRTY (30) days after each calendar period
during the term of this Agreement or with THIRTY (30)
days after the date of termination or expiration of
this Agreement, LICENSEE shall report to GRACE in
writing the amount of its royalty due.  Each such
report should be accompanied by the payment to GRACE
of the amount shown to be due.

(2) LICENSEE agrees to keep books and records concerning
its sale of License Product with repsect to this Agreement
in sufficient detail to permit determination of the
royalties due to GRACE hereunder.  GRACE shall have the
right to inspection of books and records at any reasonable
time during reasonable business hours by an independent
Certified Public Accountant, to the extent reasonably
necessary to verify the accuracy of the reports and payments
made to GRACE by LICENSEE hereunder.

-4-

15187990

135Z00166

## ARTICLE III

LICENSEE agrees that it will take all reasonable steps to preclude and prevent the disclosure to others of Confidential Information received from GRACE so long as such information shall remain confidential information.

GRACE agrees that during the term of this Agreement it will supply technical assistance as to the use of raw materials and product and marketing techniques associated with the manufacture and marketing of the Licensed Product.

## ARTICLE IV

LICENSEE shall mark all of the containers in which the Licensed Product is packaged and sold as well as advertising and similar literature relative to Licensed Product with such reasonable and appropriate statutory patent notice as GRACE shall from time to time request.

## ARTICLE V

LICENSEE hereby agrees not to contest or dispute the validity of the Patent Rights or the validity of GRACE's title to the Patent Rights.

-5-

135Z00167

A-234

## ARTICLE VI

If during the term of this Agreement LICENSEE shall make any invention which shall constitute an improvement or refinement of either the process or composition related to the Licensed Product, LICENSEE shall promptly disclose such invention or inventions to GRACE. LICENSEE agrees to grant and hereby grants to GRACE a royalty-free, non-exclusive license (with the right to sublicense others) under any such inventions and any patents which may be obtained anywhere covering any such inventions. LICENSEE agrees to execute any instruments or documents prepared by GRACE as may reasonably be necessary to confirm to make of record the license rights granted under this article.

## ARTICLE VII

(A) The term of this Agreement and the license granted hereunder shall be until January 1, 1978. It may be terminated by either party at the end of said term by giving notice of termination ninety (90) days prior to December 31, 1977. If not so terminated, it shall continue from year to year thereafter unless and until terminated by either party giving to the other party written notice of termination at least ninety (90) days in advance of the end of any subsequent anniversary date thereof. Termination of this Agreement at any time for any reason shall not relieve either of the parties hereto from any obligations or undertakings which had vested prior to such termination. Such termination shall not relieve LICENSEE of its obligation under Article III.

-6-

15187992

135Z00168

A-235

(B)  Should LICENSEE violate or breach any of its obligations under this Agreement, GRACE may terminate this Agreement by giving the LICENSEE thirty (30) days written notice of such termination, specifying the reason or reasons therefor.  Should the violation or breach specified be corrected by LICENSEE within said thirty day period, then this Agreement shall not terminate but shall continue in full force and effect.

## ARTICLE VIII

This Agreement constitutes the entire understanding of the parties and supersedes any prior agreements or understandings between the parties relative to the subject matter hereof.

## ARTICLE IX

Any notices or other communications relative to this Agreement shall be deemed properly given if addressed as follows:

### In the case of GRACE

Construction Products Division
W. R. Grace & Co.
62 Whittemore Avenue
Cambridge, Massachusetts 02140

--7--

15187993

135Z00169

In the Case of LICENSEE

Robinson Insulation Co.
12th Street North and River Drive
Great Falls, Montana

IN WITNESS WHEREOF, the parties have hereunto caused this
Agreement to be duly executed the day and year first above written.

W. R. GRACE & CO.

ATTEST:

BY _____

President
Construction Products Division

ROBINSON INSULATION CO.

ATTEST:

By _____

15187994

135200170

A-237

## SCHEDULE A

The State of Montana except the following counties: Lincoln, Flathead, Sanders, Lake, Mineral, Missoula and Ravalli. All that part of North Dakota lying west of and including the counties of Towner, Eddy, Emmons, Ramsey, Wells, Benson and Burleigh. The following counties in Wyoming: Park, Washakie, Campbell, Yellowstone National Park, Hot Springs, Sheridan, Crook, Big Horn, Johnson and Weston.

15187995

135200171

# EXHIBIT 8

## SALES AND TRADEMARK LICENSING AGREEMENT

THIS AGREEMENT made as of the _17_ day of _June_,
1975 by and between W. R. GRACE & CO., a Connecticut corpora-
tion, acting through its Construction Products Division with
a place of business at 62 Whittemore Avenue, Cambridge,
Massachusetts ("Grace") and SOUTHWEST VERMICULITE COMPANY, a New
Mexico corporation with a place of business at 5119 Edith Boulevard,
N.E., Albuquerque, New Mexico ("Company").

### W I T N E S S E T H:

WHEREAS, Grace produces vermiculite ore; and

WHEREAS, the Company is in the business of expanding
vermiculite ore and desires to purchase vermiculite ore from
Grace; and

WHEREAS, Grace owns a number of valuable trademarks and
has acquired considerable good will in said trademarks; and

WHEREAS, Company would like to sell certain products
under certain trademarks of Grace; and

WHEREAS, Grace is willing to sell vermiculite ore and to
license said trademarks to Company subject to the terms and
conditions hereinafter specified.

NOW THEREFORE, in consideration of the mutual promises,
undertakings and covenants herein set forth the parties have
agreed as follows:

1. _Definitions_  As used in this Agreement, the following
terms shall have the meanings indicated.

WRG0 5424453

S8020118617

A-240

(a) "Vermiculite ore" means concentrates of unexpanded vermiculite ore in the various sizes produced at Grace's mines from time to time meeting the specifications set forth in Schedule A.

(b) "Ton" means short ton.

(c) "Contract year" means a continuous period of twelve calendar months commencing on the 1st day of January in each calendar year in which this Agreement is in effect and ending on the 31st day of December in the same calendar year.

(d) "Trademarks" mean those trademarks (or any portion thereof) enumerated in the attached Schedule B.

(e) "Licensed Products" means products containing vermiculite ore supplied by Grace and specifically identified in the attached Schedule B.

(f) "Confidential Information" means any and all information, data, specifications, techniques, formulae and manufacturing processes concerning Licensed Products and any other information or knowhow of any nature disclosed by Grace to Company whether disclosed orally, visually or in writing and whether or not patentable relating to the processing of vermiculite ore or the use of vermiculite (expanded or unexpanded) alone or in combination with other matter or in any process provided that confidential information shall not include any information which (i) was already known to Company at the time of receipt thereof from Grace (as evidenced by written records of Company) or (ii) was known to the general public at the time of receipt from Grace or (iii) subsequently becomes known to the general public through

- 2 -

WRGO 5424454

S8020118618

A-241

no fault or omission on the part of Company.

(g)  "Territory" means the <u>State of New Mexico</u> and all counties in Texas west of and including the following counties: Lipscomb, Hemphill, Wheeler, Collingsworth, Childress, Cattle, King Stonewall, Scurry, Mitchell, Sterling, Irion, Crockett, Terrell.

2.  <u>Purchase and Sale of Ore</u>

(a)  Upon reasonable advance notice, Grace agrees to sell to Company all the vermiculite ore which the Company requires for expansion in the plant now operated by Company at Albuquerque, New Mexico, PROVIDED THAT during the term hereof Grace shall not be required to furnish more than 4000 tons of vermiculite ore in any full contract year.

If Grace is <u>for any reason unable to supply</u> the quantity of any size of vermiculite ore ordered by Company during any contract year, then Grace may at its election offer other available sizes of vermiculite ore in lieu of the sizes ordered by Company.  If Company is not willing to accept the sizes offered by Grace by way of substitution, then Company may purchase the sizes of ore ordered from another supplier, but no rights are granted herein for the use of Trademarks in connection with products made or manufactured from such ore.

- 3 -

WRG05424455

S8020118619

A-242

(b) If the Company should in any contract year require ore in an amount in excess of the maximum amount of ore which Grace is obligated to sell to Buyer hereunder during that contract year, Grace, to the extent consistent with its other commitments and its own consumption, shall endeavor (but shall not be obligated) to supply such excess.

3. Prices

(a) Company shall pay for the various sizes of vermiculite ore purchased hereunder at prices set from time to time. Grace may by written notice increase or decrease said prices for any size of vermiculite ore, such revised price to become effective on the date stated in such notice but in no event sooner than sixty (60) days from the date of the giving of such notice. Such increased or decreased prices shall be effective in respect of all vermiculite ore shipped by Grace to Company on or after the effective date of such price change. Such changed prices shall remain in effect until again decreased or increased as aforesaid.

(b) If Grace is prevented from revising prices or from continuing any price already in effect by any action of government or by reason of compliance with any request of government, Grace may terminate this Agreement without liability to Company upon not less than ninety (90) days prior written notice to Company.

- 4 -

WRG0 5424456

58020118620

A-243

(c)  All prices shall be f.o.b. Grace's plant.

4.  Payment

Invoices are payable at the offices of Grace, at 62 Whittemore Avenue, Cambridge, Massachusetts, directed to the Accounts Receivable Department, (or to such other place as Grace may from time to time direct) net thirty days from date of invoice.  Demurrage charges that may be involved in connection with shipments hereunder shall be payable by Company as shall be charges for delivery of vermiculite ore other than in bulk.  If Company shall fail to fulfill the terms of payment, Grace may, at its option and without prejudice to any other lawful remedy, defer further shipments hereunder until such default is made good, treat such default as a breach of this entire Agreement or terminate this Agreement.

5.  Shipments, Weights, and Risk of Loss

(a)  Grace's invoices, weights, volumes, sizes, and tares shall be deemed prima facie correct except that weights of a common carrier shall be deemed conclusive.  Vermiculite ore shall be shipped in bulk unless otherwise agreed.

(b)  Grace shall not be liable for any delay in transportation, however occasioned.

(c)  Title to and all risk of loss of vermiculite ore sold hereunder shall pass to Company upon delivery thereof f.o.b. Grace's plant.

6.  Examination, Suitability and Claims

Company shall examine and test each shipment of vermiculite ore promptly upon delivery to Company and before

- 5 -

WRG05424457

S8020118621

A-244

any part of the vermiculite ore has been changed from its original condition and Company hereby waives all claims for any cause after any part of the vermiculite ore has been treated, processed or changed in any manner (except for reasonable test quantities). Company assumes sole responsibility for determining whether the vermiculite ore is suitable for its contemplated use (whether or not such use is known to Grace). Company waives all claims of which Grace is not notified in writing within sixty (60) days after delivery of the vermiculite ore or in respect of vermiculite ore disposed of or returned without Grace's consent.

    7.  Warranties, Remedies, and Limitations

    (a)  Grace warrants to Company that at the time of delivery the vermiculite ore sold hereunder will conform substantially to the specifications herein set forth. Grace's liability and Company's remedy under this warranty are limited in Grace's discretion to replacement of vermiculite ore returned to Grace which is shown to Grace's reasonable satisfaction to have been nonconforming or to refund of the purchase price. Transportation charges for the return of nonconforming vermiculite ore to Grace and the risk of loss thereof will be borne by Grace but only if returned in accordance with written instructions from Grace.

    (b)  Grace makes no warranty against patent infringement resulting from the manufacture, processing, use or sale of the vermiculite ore or from use of the vermiculite ore in combination with other matter or in the operation of any

WRGO5424458

S8020118622

A-245

process, and if a claim, suit, or action is based thereon, Company shall defend, indemnify, and save harmless Grace there-from.

(c)   Grace warrants to Company that it will convey good title to the vermiculite ore sold hereunder.  Grace's liability and Company's remedy under this warranty are limited to the removal of any title defect or, at the election of Grace, to the replacement of the vermiculite ore or any part thereof which is defective in title.

THE FOREGOING WARRANTIES ARE EXCLUSIVE AND ARE GIVEN AND ACCEPTED IN LIEU OF ANY AND ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTY OF MERCHANTABILITY.  THE REMEDIES OF COMPANY FOR ANY BREACH OF WARRANTY SHALL BE LIMITED TO THOSE PROVIDED HEREIN, AND FOR DELAY OR NONDELIVERY WHICH IS NOT EXCUSABLE, TO THE PURCHASE PRICE OF THE VERMICULITE ORE IN RESPECT OF WHICH THE DELAY OR NONDELIVERY IS CLAIMED, TO THE EXCLUSION OF ANY AND ALL OTHER REMEDIES INCLUDING, WITHOUT LIMITATION, INCIDENTAL OR CON-SEQUENTIAL DAMAGES.  NO AGREEMENT VARYING OR EXTENDING THE FOREGOING WARRANTIES, REMEDIES, OR THIS LIMITATION WILL BE BINDING UPON GRACE UNLESS IN WRITING, SIGNED BY DULY AUTHORIZED OFFICER OF GRACE.

8.   Taxes, Duties, and Excises

In the absence of satisfactory evidence of exemption supplied to Grace by Company, Company shall pay in addition to the price of the vermiculite ore all taxes, duties, excises or other charges for which Grace may be responsible for collection

- 7 -

WRGO5424459

S8020118623

A-246

or payment to any government (national, state, or local) upon, measured by or relating to the importation, exportation, production, or any phase or part of the production, storage, sale, transportation, and/or use of the vermiculite ore supplied hereunder.

9. Company's Obligations

Company acknowledges that Grace is relying on Company to help service the market for Licensed Products in the Territory. Accordingly, during the term of this Agreement Company shall:

(a) maintain at its present plant location in the Territory and identified in paragraph 2(a) hereof adequate facilities for the proper expansion of vermiculite ore, and the production of and sale of Licensed Products;

(b) use its best efforts to promote, maintain, and increase in the Territory the sale and use of Licensed Products;

(c) take no action which will adversely affect or detract from the promotion, maintenance and increase in the Territory of the sale and use of Licensed Products, or its ability adequately to service the demand for Licensed Products within the Territory;

(d) at all times carry an adequate inventory of expanded vermiculite and Licensed Products at its place or places of business in the Territory;

(e) promote the good will of Grace and use the Trademarks strictly in accordance with the manner herein provided;

- 8 -

WRG05424460

S8020118624

A-247

(f) manufacture Licensed Products in accordance with Grace's standards, specifications and instructions from time to time in effect.

(g) observe all the provisions of this Agreement on its part to be observed.

10. **License Grant**

Grace hereby grants to Company a non-transferable, exclusive right and license (without the right to sublicense except as provided in Paragraph 16 hereof) to use the Trademarks in the Territory, but solely in connection with the sale of the Licensed Products. No express or implied license is granted under any Patent of W. R. Grace & Co. which may be pertinent or related to any product embraced by the trademarks licensed hereunder.

11. **Trade Names**

The Company will not at any time, either during or after the termination of this Agreement, claim any right, title, or interest in or to, or the right to use, the Trademarks except to the extent and in the manner herein authorized by Grace. Grace shall have the right at any time to withdraw Company's right to use any such Trademark by giving written notice thereof to Company but any such notice (except in case of default) shall not become effective sooner than one hundred and eighty (180) days from the date of the giving of such notice.

12. **Quality Control**

(a) Grace shall have the sole right to specify the uses to which the Trademarks may at any time be put, the kinds and quality of products to which they shall be applied, the

- 9 -

WRG05424461

S8020118625

A-248

specific products to which the Trademarks shall be applied
and the manner in which the Trademarks may be used.  Grace
shall fully, entirely, and exclusively govern the control
and use of the Trademarks by Company and in this connection
Company agrees not to use any of the Trademarks in connection
with any material, product, or in any fashion or at any time
not specifically sanctioned and agreed to by Grace in writing.

(b)  Company agrees to furnish Grace from time to
time at Grace's request with a sample of each and every
product which it is authorized to market or sell under any
of the Trademarks.

(c)  Company agrees that Grace representatives may
at any time or times during the regular business day upon
reasonable notice visit the manufacturing, warehouse, or
other facilities of Company for the purpose of inspecting
Company's products sold under the Trademarks and/or obtaining
modest samples of any such products.

13.  Labeling

(a)  Any and all bags, packages, containers and
advertising of Company which bear or refer to any of the
Trademarks shall be plainly marked with any such Trademarks
and such Trademark, where appropriate, shall be followed by
a capital "R" within a circle.  Such Trademarks shall always
be followed by a short descriptive statement indicating the
class of material to which the Trademarks are applied viz.,
"Zonolite Vermiculite Insulating Fill".  Labels on any bags,
packages, or containers sold by Company under the Trademarks
shall also bear the legends "_____is a vermiculite

- 10 -

WRG05424462

SS020118626

A-249

processing distributor of the Construction Products Division,
W. R. Grace & Co." and "_____ is a U. S. Reg. TM
of W. R. Grace & Co.

   (b)  The format, design, and content of any labels,
bags, packages, literature, or advertising material which
bear or refer to any of the Trademarks shall all be approved
in writing by Grace prior to their use in connection with
any commercial sale or advertising, PROVIDED THAT Grace shall
not by reason of any such approval be deemed to have warranted
or agreed with any representations made as to any product
sold by Company.

   14.  **Rights in General**

   (a)  Company hereby concedes, recognizes and
acknowledges the validity of the Trademarks and agrees not to
challenge the validity thereof at any time or in any way.

   (b)  Use by the Company of the Trademarks shall at
all times be only on the basis of rights granted to Company
pursuant to this Agreement, and any such use shall inure to
the benefit of Grace.  Company shall neither have nor acquire
any rights in, under, or to the Trademarks by reason of
Company's use thereof except as specifically set forth herein.

   15.  **Confidential Information  and Patents**

   (a)  From time to time during the term of this
Agreement Grace in its discretion may make available in
writing or otherwise disclose and identify to Company Confidential
Information which Company acknowledges is a vital commercial
asset of Grace.  Company hereby agrees that without the prior
express written consent of Grace it will not use Confidential

- 11 -

WRG05424463