## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| W. R. Grace & Co., *et al.*, | Chapter 11 |
| Debtors. | Case No. 01-01139 (JKF)<br>Jointly Administered |
| Pacificorp and the VanCott Bagley<br>Cornwall & McCarthy 401(k) Profit<br>Sharing Plan, | Case No. 05-764 (RLB) |
| Appellants, | On Appeal from an Order of the United States<br>Bankruptcy Court for the District of Delaware<br>in Case No. 01-01139 (JKF) |
| v. | Re: Docket Nos. 3 and 4 |
| W. R. Grace & Co., *et al.*, | |
| Appellees. | |

### BRIEF OF APPELLEES

<u>Counsel for the Appellees:</u>
David M. Bernick, P.C.
Janet S. Baer
James W. Kapp III
Lori Sinanyan
**KIRKLAND & ELLIS LLP**
200 East Randolph Drive
Chicago, Illinois 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

and

Laura Davis Jones (#2436)
James E. O'Neill (#4042)
**PACHULSKI, STANG, ZIEHL, YOUNG JONES
& WEINTRAUB PC**
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Dated: December 14, 2005

## DISCLOSURE PURSUANT TO RULE 26.1
## OF THE FEDERAL RULES OF APPELLATE PROCEDURE

The Debtors-Appellees are W. R. Grace & Co. and 61 subsidiaries and affiliates of W. R. Grace & Co. that filed chapter 11 cases on April 2, 2001. W. R. Grace & Co. is a publicly held Delaware Corporation. W. R. Grace & Co. is a holding company. It owns, or through one of its wholly owned subsidiaries owns, 100% of the stock of the 61 affiliated debtors. There are no publicly held companies that own, control or hold with the power to vote 10% or more of the voting securities of W. R. Grace & Co.

# TABLE OF CONTENTS

Statements of Issue Presented ........................................................................................... 2

Preliminary Statement ....................................................................................................... 3

Statement of the Facts ....................................................................................................... 5

Argument............................................................................................................................ 8

I.      The Bankruptcy Court Correctly Concluded That The Late Claimants
        Were Unknown Creditors And, Therefore, Not Entitled To Actual Notice. .......... 8

        A.      The Debtors Had No Obligation To Conduct An Ancillary
                Investigation of the Public Records. ........................................................ 12

        B.      The Late Claimants' Reliance on the State Foreclosure Cases Is
                Misplaced. ............................................................................................... 15

II.     Both VanCott And PacifiCorp Had Notice In Order To File A Timely
        Proof Of Claim. ................................................................................................... 19

        A.      VanCott Received Actual Notice Of The Bar Date. ................................ 20

        B.      The Debtors Should Not Be Held Accountable For PacifiCorp's
                Incomplete Proof Of Claim .................................................................... 23

III.    The Late Claimants Failed To Prove Excusable Neglect Or Even Neglect.......... 24

Conclusion........................................................................................................................ 29

i

# TABLE OF AUTHORITIES

Page

**Cases**

Chemetron Corp. v. Jones,
  72 F.3d 341 (3d Cir. 1995)..................................................................................passim

Eisen v. Carlisle & Jacquelin,
  417 U.S. 156 (1974)..........................................................................................19, 20

Haynes v. Locks,
  711 F. Supp. 901 (E.D. Tenn. 1989) .............................................................................20

In re Argonaut,
  164 B.R. 107 (N.D. Cal. 1994)......................................................................................11

In re Bicoastal Corp.,
  147 B.R. 807 (Bankr. M.D. Fla. 1992)...............................................................13, 14, 15

In re Comdisco, Inc.,
  2003 WL 685645, at *8 (N.D. Ill. 2003) ......................................................................24

In re Diet Drugs Prod. Liab. Litig.,
  92 Fed. Appx. 890 (3d Cir. 2004) ................................................................................29

In re Gordon,
  1996 WL 673169, at *3 (Bankr. N.D. Ohio 1996)...........................................................21

In re Grand Union Co.,
  204 B.R. 864 (Bankr. D. Del. 1997) .............................................................................26

In re Li,
  242 B.R. 280 (Bankr. E.D. Pa. 1999)............................................................................21

In re Longardner & Assoc., Inc.,
  855 F.2d 455 (7th Cir. 1988)...................................................................................22, 24

In re Ms. Interpret,
  222 B.R. 409 (Bankr. S.D.N.Y. 1998) ..........................................................................23

In re Nam,
  1993 WL 436026, at *1, fn. 3 (E.D. Pa. 1993) ...............................................................31

In re Pettibone Corp.,
  123 B.R. 304 (Bankr. N.D. Ill. 1990)............................................................................22

DOCS_DE:113697.1

## TABLE OF AUTHORITIES (Continued)

Page

In re STN Enter., Inc.,
  94 B.R. 329 (Bankr. D. Vt. 1988) .................................................................. 22, 23, 24

In re Texaco Inc.,
  182 B.R. 937 (Bankr. S.D.N.Y. 1995). ...................................................................... 14, 15

In re Trans World Airlines, Inc.,
  96 F.3d 687 (3d Cir. 1996) .......................................................................................... 26

In re Trump Taj Mahal Assoc.,
  1993 WL 534494 at *6, fn. 7 (D.N.J. 1993) .................................................................. 27

In re Vertientes, Ltd.,
  845 F.2d 57 (3d Cir. 1988) .............................................................................................. 3

Interpace Corp. v. City of Philadelphia,
  438 F.2d 401 (3d Cir. 1971) .......................................................................................... 30

Katchen v. Landy,
  382 U.S. 323 (1966) .............................................................................................. 19, 25

Manus v. NRG Energy, Inc. (In re O'Brien Env'l Energy, Inc.),
  188 F.3d 116 (3d Cir. 1999) .......................................................................................... 29

Mennonite Bd. of Missions v. Adams,
  462 U.S. 791 (1983). ............................................................................................. passim

Mullane v. Cent. Hanover Bank & Trust Co.,
  339 U.S. 306 (1950) ...................................................................................... 8, 9, 10, 14

Orthopedic Bone Screw Prod. Liab. Litig.,
  246 F.3d 315 (3d Cir 2001) ...................................................................................... 29, 30

Pioneer Inv. Services Co. v. Brunswick Ass'n Ltd. P'ship,
  507 U.S. 380 (1993) ........................................................................................... 25, 26, 28

Schroeder v. City of New York,
  371 U.S. 208 (1962) ................................................................................................ 16, 19

Tulsa Prof'l Collection Serv., Inc. v. Pope,
  485 U.S. 478 (1988) ...................................................................................................... 9

Walker v. City of Hutchinson,
  352 U.S. 112 (1956) ............................................................................................ 16, 18, 19

Waterville Indus., Inc. v. First Hartford Corp.,
  124 B.R. 411 (D. Maine 1991) ...................................................................................... 11

DOCS_DE:113697.1

## TABLE OF AUTHORITIES (Continued)

Page

Welch & Forbes, Inc. v. Cendant Corp. (In re Cendant Corp. Prides Litig.),
    233 F.3d 188 (3d Cir. 2000) ............................................................................... 28

Wright v. Placid Oil Company,
    107 B.R. 104 (N.D. Tex. 1989) ......................................................................... 27

**Rules**

Bankruptcy Rule 9006(b)(1) ............................................................................. 23

## Statements of Issue Presented[1]

The Debtors concur with the Late Claimants' statements of issue 2 and 3.[2] However, the Late Claimants have misstated issue 1. The holding and issue on appeal is not whether the Late Claimants were or were not potential creditors reasonably ascertainable from an investigation of public records. Instead, the Bankruptcy Court determined that the Debtors had no duty to engage in such an investigation because the Late Claimants were unknown creditors and thus not entitled to actual notice of the Bar Date.[3] Since, under Third Circuit law, the Late Claimants were not entitled to actual notice, the Debtors had no duty to go beyond an investigation of their books and records.[4] Moreover, the Bankruptcy Court indicated that the Late Claimants had the burden to inform the Debtors of their purported claims in the chapter 11 cases, which the Late Claimants failed to do.[5]

---

[1]   Citations to "A-__" herein refer to the designated pages in the Appendix to Appellants' Brief; citations to "B-__" herein refer to the designated pages in the Appendix to Appellee's Brief. The Late Claimants appear to have omitted the exhibits to the Debtors' Objection to PacifiCorp and the VanCott Bagley Cornwall & McCarthy 401(k) Profit Sharing Plan's Motion for Leave to File Late Proofs of Claim (the "Debtors' Objection"), notwithstanding that the Debtors' Objection is included in the Appendix to Appellants' Brief. Accordingly, the Debtors have submitted the exhibits to the Debtors' Objection as part of the Appellees' Appendix.

[2]   See Statement of the Facts section herein for definition of capitalized terms.

[3]   "[D]ue process requires that if [Appellant] was a creditor known to the debtor that it had -- that it get actual notice. . . . If [Appellant] is a creditor at all, it's a clearly unknown creditor. That publication notice as to [Appellant] is sufficient. . ." Transcript of Hearing on February 28, 2005 ("Transcript"), A-318 to A-336, at A-330:20-22 and 331:14-16.

[4]   "I don't see how the debtor has any duty to search out your client under these circumstances." Transcript, A-318 to A-336, at A-328:15-16.

[5]   "It seems to me that unless that present owner was the same owner pre-petition that it's the creditor, i.e. the owner's burden to make sure that the interest is transferred of record on the Bankruptcy Court dockets." Transcript, A-318 to A-336, at A-323:21-24.

2

Therefore, to the extent issue 1 is to be restated rather than stricken, the Debtors believe that it should be restated as follows, "Whether the Bankruptcy Court erred in concluding that the Late Claimants were unknown creditors and therefore not entitled to actual notice."

## Preliminary Statement

The Bankruptcy Court did not abuse its discretion in determining that the Late Claimants were "unknown" creditors and, as a result, that the Debtors had no duty to provide them with actual notice. Courts have consistently held that a debtor generally need only review its own books and records for "known" creditors and that other potential creditors are only entitled to publication notice. The decision to permit or deny an untimely proof of claim lies within the sound discretion of the bankruptcy court, and the court's decision will only be disturbed upon a showing of an abuse of that discretion. See, In re Vertientes, Ltd., 845 F.2d 57, 59 (3d Cir. 1988).

The Late Claimants have never disputed the reasonableness of the Debtors' review of their books and records to identify claimants, nor do they contend that such a search should have unveiled the Late Claimants. Indeed, it is undisputed that the Debtors did not conduct any business transactions or have any contractual dealings with either of the Late Claimants with respect to the Site. Moreover, the Late Claimants never alerted, or otherwise gave notice to, the Debtors as to their claims relating to the Site. It is also uncontested that the Debtors never (i) operated the Site, (ii) owned or leased the Site, or (iii) had any other connection to the Site -- other than the fact that the Debtors sold vermiculite to a company that apparently processed the vermiculite at the Site. Therefore, it is apparent that the Debtors had no actual knowledge, through a careful search of their books and records or otherwise, that the Late Claimants had any interests in the Site.

3

The Late Claimants contend that the Debtors had an obligation to search the title records with respect to any property (and adjacent land) where the Debtors' product might have been processed or used by the Debtors' hundreds of customers. Such a burdensome and cost-prohibitive investigation goes well beyond "reasonable diligence" and is not required by the applicable caselaw. The Late Claimants, however, urge this Court to ignore controlling, factually-similar precedent and to follow antiquated case law pertaining to factually-distinguishable situations outside of the bankruptcy context. This Court, just as the Bankruptcy Court, should decline to do so.

Furthermore, although the Debtors were not required to serve actual notice on either of the Late Claimants, VanCott was adequately served with notice of the Bar Date yet failed to file a proof of claim. PacifiCorp also, by its own admission, was adequately notified of these chapter 11 cases, as demonstrated by its filing of a timely proof of claim under its trade name (Utah Power & Light). PacifiCorp has provided no justification for its failure to set forth claims related to the Site in its Utah Power & Light proof of claim. The bottom line is that VanCott and PacifiCorp were sufficiently notified of these chapter 11 cases and failed to file a timely proof of claim related to the Site.

Similarly, the Bankruptcy Court did not abuse its discretion in concluding, after reviewing all applicable pleadings and considering the arguments, that the Late Claimants failed to establish that excusable neglect justified the late filing of their proofs of claim. Since notice was sufficient with respect to each of the Late Claimants, and the Late Claimants have cited no other reason for their failure to file timely claims, the Late Claimants failed to established any *neglect* whatsoever for their failure to file timely claims, let alone *excusable neglect*. In particular, the Late Claimants have failed to justify the application of excusable neglect in the

4

present circumstance where the Debtors provided adequate publication notice, a fact the Late Claimants have never contested. The adequacy of such publication notice is not an issue on appeal before this Court.

## Statement of the Facts

From 1963 until about 1984, the above-captioned debtors and debtors-in-possession (the "Debtors") sold unprocessed vermiculite to Intermountain Insulation Co. ("Intermountain"). Upon information and belief, Intermountain processed the product, at least in part, at 333 W. First Street, Salt Lake City, Utah (the "Site") and then Intermountain sold the product under the "Zonolite" name, pursuant to licenses that were issued by a predecessor of the Debtors.

The Debtors (i) never owned, leased, or otherwise held any ownership interest in the Site or adjacent land, (ii) never owned, leased, or otherwise held any ownership in any land located or any business carried on adjacent to the Site, and (iii) never operated any business or other activity at the Site or on adjacent land. Further, the Debtors (i) had no contractual dealings concerning the Site with either PacifiCorp or the VanCott Bagley Cornwall & McCarthy 401(k) Profit Sharing Plan ("VanCott" and together with PacifiCorp, the "Late Claimants"), (ii) did not know that either of the Late Claimants had any legal interest in the Site, and (iii) never received any communication from the Late Claimants about their interests in the Site, their intent to file claims concerning the Site, or alleged contamination at the Site.

On April 2, 2001, the Debtors filed for bankruptcy under chapter 11 of title 11 of the United States Code.

After a thorough review of their books and records, the Debtors scheduled Intermountain in their Statement of Financial Affairs and Schedules (the "Schedules") as a contingent, disputed, unliquidated environmental claimant.

5

On April 25, 2001, notice of the commencement of the chapter 11 cases (the "Notice of Commencement") was served on (a) Intermountain, (b) VanCott at 50 S. Main St., Salt Lake City, Utah 84145 and (c) PacifiCorp under its Utah Power & Light trade name.[6] On May 16, 2001, PacifiCorp filed a proof of claim under its trade name for utility services. Exhibit F to Late Claimants' Motion, A-106 to A-108, at A-107.

On June 27, 2001, the Debtors filed their *Motion for Entry of Case Management Order, Establishment of a Bar Date, Approval of the Proof of Claim Forms and Approval of the Notice Program* (the "Bar Date Motion"). Bankr. D.I. 586.

During the course of the following ten months, the Debtors worked with the Bankruptcy Court and every official committee in these cases to craft the notice of the Bar Date (the "Bar Date Notice"), the Bar Date Notice package, and a comprehensive system of publication of the Bar Date Notice that would ensure (with a high degree of probability) that every affected party was aware of the existence of the Bar Date, the scope of the Bar Date, and the process for filing a proof of claim. The Debtors filed successive versions of the Bar Date Motion during the course of this lengthy process. In addition, the Bankruptcy Court received and considered multiple responses from all of the official committees in these chapter 11 cases.

By order dated April 22, 2002 (the "Bar Date Order"), the Bankruptcy Court approved the Bar Date Notice and set March 31, 2003 (the "Bar Date") as the last date for filing proofs of claim, for, in part, unsecured non-asbestos claims. Of particular note, the Bar Date Order states as follows:

---

6    According to PacifiCorp's website, PacifiCorp "operates ... as Utah Power in Utah and Idaho." PacifiCorp Home Page, which is available at http://www.pacificorp.com.   Exhibit A to Debtors' Objection, B-16 to B-17, at B-17.

> ORDERED that notice of the entry of this Order and of the Bar Date to unknown
> claimants pursuant to the Debtors' Bar Date Notice Plan for Asbestos Property
> Damage Claims and Other Claims (the "Notice Plan"), as modified, and filed on
> April 12, 2002, shall be deemed good, adequate and sufficient notice of the Bar
> Date. . .

Bar Date Order at pg. 5. Bankr. D.I. 1963. Once the detailed proof of claim forms were

approved and the Bar Date Order was entered, the Debtors spent over $4 million to publish the

Bar Date Notice in a myriad of national and local publications, including local publications in

Utah and in Salt Lake City (e.g. *The Tribune and Desert News*).

On April 26, 2002, the Bar Date Notice was served on (a) Intermountain and (b) VanCott

at 50 S. Main St., Salt Lake City, Utah 84145. Exhibits C and F to Debtors' Objection, B-23 to

B-26, at B-26 and B-39 to B-42, at B-42 respectively. Intermountain and VanCott did not file

any proofs of claim before or on the Bar Date.

Upon information and belief, the Debtors have become aware that the Environmental

Protection Agency (the "EPA") conducted soil sampling at the Site on or about mid-October

2002. Prior to conducting such sampling, PacifiCorp -- as the owner of the Site -- would have

been required to grant the EPA access to the Site.

On March 28, 2003, the EPA filed a proof of claim for contamination of the Site. The

EPA was served with both the Notice of Commencement and the Bar Date Notice at numerous

regional addresses. The EPA was also scheduled on the Debtors' Schedules which were filed on

June 6, 2001.

On January 14, 2005, almost two years after the Bar Date had passed, the Late Claimants

filed *Motion for Leave to File Late Proofs of Claim* (the "Late Claimants' Motion"). Late

Claimants' Motion, A-3 to A-158. The Late Claimants' Motion sought leave from the Bar Date

Order so that each of the Late Claimants could file late proofs of claim on account of

"environmental cleanup costs" incurred and to be incurred to clean up the Site and the adjacent

7

land.  According to the Late Claimants, (i) PacifiCorp is one of the current owners of "Block

66," which includes the Site, and (ii) VanCott was a prior owner of the Site, having (a) purchased

a portion of the Site in 1979, (b) sold a portion of it in 1984 to PacifiCorp, and (c) sold the

remaining portion in 1988.

The Bankruptcy Court held a hearing on the Late Claimants' Motion on February 28,

2005.  After reviewing all of the pleadings and considering the arguments of counsel, on

September 22, 2005, the Bankruptcy Court entered a final order (the "Order") denying the Late

Claimants' Motion and adopting the reasoning articulated by the Debtors in their pleadings.

Bankr. D.I. 9488.  The Bankruptcy Court specifically stated in their Order that it had "reviewed

the briefs, response briefs, reply brief, all exhibits and considered the arguments of counsel.  The

court agrees with and adopts the reasoning in Debtor's Brief (D.I. 7746) and Response (DI

8283)."  Order, A-337 to A-338, at A-337-338.  On October 3, the Late Claimants timely

appealed the Order to this Court.

**Argument**

I.    **The Bankruptcy Court Correctly Concluded That The Late Claimants Were
      Unknown Creditors And, Therefore, Not Entitled To Actual Notice.**

The case law is well settled that only "known" creditors are entitled to actual notice while

"unknown" creditors, such as the Late Claimants, are entitled only to publication notice.  In the

instant case, the Bankruptcy Court correctly concluded that the Late Claimants were "unknown"

creditors.[7]  As a result, the Debtors had no duty to provide them with actual notice of the Bar

Date.  See, e.g., Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 317 (1950).  Instead,

---

[7]    "If [Appellant is] a creditor at all, it's a clearly unknown creditor."  Transcript, A-318 to A-336, at A-331:14-
      15.

the Debtors' publication notice, which was approved by the Bankruptcy Court, constitutes

sufficient notice for each of the Late Claimants. See Chemetron Corp. v. Jones, 72 F.3d 341,

348 (3d Cir. 1995) ("It is well established that, in providing notice to unknown creditors,

constructive notice of the bar claims date by publication satisfied the requirements of due

process.") The Late Claimants have not disputed the adequacy of the publication notice and it is

not an issue before this Court.

The Supreme Court of the United States has stated that a "known" creditor is one whose

identity is either "known or reasonably ascertainable by the debtor." Tulsa Prof'l Collection

Serv., Inc. v. Pope, 485 U.S. 478, 490 (1988). An "unknown" creditor is one whose "interests

are either conjectural or future or, although they could be discovered upon investigation, do not

in due course of business come to knowledge [of the debtor]." Mullane, 339 U.S. at 317. A

creditor's identity is "reasonably identifiable" if that creditor can be ascertained through

"reasonably diligent efforts." Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 798 n. 4

(1983). The Court of Appeals for the Third Circuit (the "Third Circuit") held that "reasonable

diligence" does not require "a vast, open-ended investigation. . . The requisite search instead

focuses on the debtor's own books and records. Efforts beyond a careful examination of these

documents are generally not required." Chemetron, 72 F.3d at 346-47 (internal citations and

quotes omitted).

The Debtors' efforts to identify "known" creditors were reasonable and satisfy

Chemetron and its progeny. In particular, the Debtors diligently reviewed their books and

records to identify potential or actual claimants. Indeed, this search identified Intermountain (the

entity that operated at the Site), as Intermountain conducted direct business transactions with the

Debtors. The Late Claimants do not dispute the reasonableness of the Debtors' investigation of

9

their books and records, nor do they contend that such a search would have uncovered the Late Claimants' alleged claims. Therefore, it is apparent that the Late Claimants' interests concerning the Site did not come to the knowledge of the Debtors in the due course of business. See Mullane, 339 U.S. at 317.

In fact, the particular factual circumstances only emphasize the Debtors' unawareness of the Late Claimants' interests in the Site. It is undisputed that the Debtors (i) never operated or arranged for the operation of the Site or adjacent land, (ii) never owned, leased, or otherwise held any ownership interest in the Site or adjacent land, and (iii) never owned, leased, or otherwise held any ownership in any business carried on at the Site or adjacent land. Indeed, the Debtors had no reason to believe that Intermountain (an entity already receiving the Notice of Commencement and Bar Date Notice) was not the owner of the Site.

The Late Claimants do not dispute the fact that the Debtors did not conduct any business transactions or have any contractual dealings with either of the Late Claimants with respect to the Site. It is also undisputed that the Late Claimants never communicated, or otherwise gave notice, to the Debtors of their claims relating to the Site. Thus, the Debtors only knew of Intermountain (its former customer) and the EPA (which notified the Debtors that it had a potential claim). As a result thereof, the Debtors properly provided both Intermountain and the EPA with actual notice of the Bar Date, and even scheduled the EPA for potential contamination of the Site.

The Debtors had no actual knowledge, through a diligent search of their books and records or otherwise, that the Late Claimants had legal interests in the Site.[8] Due process does

---

[8]    Unlike the debtor in In re Argonaut, 164 B.R. 107 (N.D. Cal. 1994), the Debtors had no reason to know that other claimants existed. In Argonaut, the debtor, a lessee of real property, failed to provide notice of its chapter
(Continued...)

10

not require that the Debtors should be compelled to use the estates' resources to identify and

serve every entity that owned property (and adjacent land) where the Debtors' products were

used by independent third parties. Such an expansive investigation does not constitute

"reasonable diligence" and is not required by the applicable caselaw.[9]  See Chemetron, 72 F.3d

at 346-47.

The Late Claimants attempt to argue that Chemetron is not applicable to these present

circumstances because the Chemetron court encountered claims of a speculative nature.  In

contrast, the Late Claimants list a number of "specific facts" to demonstrate that their claims

were not speculative or conjectural in nature.  See Appellants' Brief at 13.  The vast majority of

these facts, however, only relate to Intermountain and its transactions with the Debtors and do

not refer to any other entity or hint at the existence of a third party.  Indeed, the Debtors

performed a reasonably diligent search of their books and records and only identified

Intermountain as a potential creditor related to this Site as it was Intermountain that conducted

---

11 cases to investors who had purchased interests in the deed of trust lender's interest in the property. The court found that these investors should have received actual notice of the debtor's bankruptcy cases because they were "known" creditors. The court based its decision on its finding that, "[t]here is some evidence, including a declaration by Duane Tucker, Argonaut's attorney at the time of the filing, that Argonaut knew that [the deed of trust lender] had been further assigned to some other entities." Id. at 112. In contrast to Argonaut, there is no evidence whatsoever that the Debtors had any knowledge as to the ownership of the Site or that Intermountain was not the owner of the Site.

9    The Late Claimants incorrectly cite to Waterville for the proposition that the Debtors must conduct a search of all record holders of the Site. Waterville Indus., Inc. v. First Hartford Corp., 124 B.R. 411 (D. Maine 1991). The court in Waterville simply required that some notice of the plan be provided by the debtors. In particular, the Waterville court determined that the debtors had provided inadequate publication notice, as well as having failed to give actual notice to the affected creditor. See id. at 413. In contrast, here, the Debtors have provided actual notice to the very people to which they were required to provide notice -- Intermountain and the EPA. Moreover, publication notice was provided by the Debtors to all unknown creditors, including the Late Claimants. The sufficiency of such publication notice has not been questioned by the Late Claimants and is not an issue before this Court. Finally, in Waterville, the party required to provide notice was the owner of the property and in the best position to know of claims asserted against the property. Here, the Debtors never owned, operated, leased or had any other legal rights in the Site or adjacent land. Indeed, the Late Claimants were and are in a much better position to be aware of the condition of the Site than the Debtors.

11

direct business transactions with the Debtors. Intermountain did in fact receive actual notice of the Bar Date. The Debtors had no reason to know or believe that Intermountain was not the owner of the Site nor did they have a duty to investigate further under Chemetron or its progeny.

The remaining "facts" cited by the Late Claimants in their Appellants' Brief at 13 -- a title search, at a nominal cost, would have revealed that PacifiCorp is the current owner of the Site and that VanCott was the immediate past owner -- are not facts at all but are simply arguments that the Late Claimants attempt to couch as facts. True, a single title search might not be overly expensive with respect to this one property but the obligation being urged by the Late Claimants is not limited solely to the Site and one title search. Indeed, the Late Claimants demand that the Debtors had an obligation to search the title records with respect to *any* property (and adjacent land) where the Debtors' product might have been processed or used by hundreds of customers. The cost of such an investigation would no doubt be expensive and burdensome.

Therefore, under controlling caselaw, the Debtors did not have a duty to conduct any investigation outside their books and records to uncover unknown creditors such as the Late Claimants.

A.    **The Debtors Had No Obligation To Conduct An Ancillary Investigation of the Public Records.**

Indeed, courts have held that chapter 11 debtors that own (or previously owned) allegedly contaminated property have no obligation to provide adjacent land-owners with actual notice of a claims bar date. For example, in Chemetron, the Third Circuit found that a chapter 11 debtor that owned and operated a nuclear facility and nearby landfill had no obligation to provide actual notice to parties that resided on (or visited) the land. In reaching this decision, the Third Circuit noted that the bankruptcy court had incorrectly applied a "reasonably foreseeable" test, rather than the appropriate "reasonably ascertainable" standard, and that the potential claimants were

12

not "reasonably ascertainable." Id. at 346-47. Even assuming that it was "reasonably

foreseeable" that such claimants may exist, their identities were not "reasonably ascertainable"

by the Debtors. See id. As a result, the Third Circuit held that such an investigation, above and

beyond an investigation of the debtor's books and records, was not required. See id. at 349.

Courts have also found that chapter 11 debtors have no duty to search out successors-in-

interest to property for purposes of providing them with actual notice of a claims bar date. In

Bicoastal,[10] the court held that a claimant, which (i) owned property downstream from property

that was formerly owned by the chapter 11 debtors and (ii) claimed that its property was

environmentally damaged because of actions of the debtor on the debtor's property, was not a

known creditor of the debtor. In particular, the court held that due process did not require that

the debtor conduct an "impracticable and extended" search for all potential creditors. See id.,

*citing* Mullane, 339 U.S. at 317-18. Instead, the court found that the debtor's publication notice

was reasonably calculated to provide the claimant with sufficient notice of the bar date. Id.

Likewise, in Texaco,[11] the court found that the owner of land adjacent to a chapter 11 debtor was

an "unknown" creditor. The courts in each of these cases based their determinations on findings

that the respective debtors were not in a position to determine the extent of the toxins emanating

from their respective properties.

The facts in the present case are even more compelling than the facts in Chemetron,

Bicoastal, and Texaco. In particular, the debtors in such cases each owned the property where

the alleged contamination occurred. Accordingly, they were in the best position to know the

---

[10]   In re Bicoastal Corp., 147 B.R. 807 (Bankr. M.D. Fla. 1992).

[11]   In re Texaco Inc., 182 B.R. 937, 954-55 (Bankr. S.D.N.Y. 1995).

extent of any contamination that stemmed from their respective businesses. Still, the courts, including the Third Circuit, held that an investigation beyond the debtors' books and records was not required. Here, however, the Debtors connection to the Late Claimants is even more attenuated. The Debtors never owned, operated, leased or had any other legal rights in the Site or adjacent land -- they merely sold vermiculite concentrate to the operators of the Site. Therefore, the Debtors were even less-equipped to ascertain the extent of any contamination caused by Intermountain on the Site (or adjacent land) than the debtors in Chemetron, Bicoastal, and Texaco.

Further, in Bicoastal, the creditor did not have knowledge of the debtor's bankruptcy case until after the claims bar date. See id. The court, however, still found that the debtor had no duty to provide actual notice and held that the claimants were prohibited from filing a late proof of claim. In this situation, both of the Late Claimants knew of the Debtors' bankruptcy, and VanCott even received actual notice of the Bar Date.

The Late Claimants incorrectly attempt to distinguish both Bicoastal and Texaco on the grounds that the debtors in those cases were unaware of environmental claims linked directly to a specific parcel of real property, while here the Debtors had some sort of particular familiarity with the Site. It cannot be seriously challenged, however, that the Debtors were not in a viable position to determine the extent of any difficulties arising from the Site. See, e.g., Texaco, 182 B.R. at 952. As has been established, the Debtors had no connection whatsoever to the Site -- other than a customer apparently processed the Debtors' product at the Site. The mere fact that the EPA asserted a claim for environmental contamination at a number of sites, including the Site, does not make the Debtors any more aware of the difficulties pertaining to the Site or somehow make the identities of the Late Claimants any more "reasonably identifiable" from a

14

diligent search of the Debtors' books and records. The EPA's filing of a claim only notified the Debtors that the EPA asserted a claim -- a claim which the Debtors properly scheduled.

Indeed the parties in the best position to be aware of any difficulties pertaining to the Site are the owners of the Site -- PacifiCorp and VanCott themselves. Not only is PacifiCorp in an optimal position to be aware of such claims, but as the current owner of the Site it would have had specific knowledge of such claims. In fact, an on-site investigation was performed by the EPA at the Site in October 2002, well before the Bar Date. Despite this, PacifiCorp has never even attempted to explain its failure to apprise the Debtors of such claims. Moreover, VanCott alleges that it was unaware of any problem with the Site until mid-2004. See Appellants' Brief at 27. If such is the case and VanCott was truly unaware of its own claims, it is inexplicable how VanCott should have nonetheless been a "known" creditor of the Debtors with respect to the Site.

As a result thereof, the Debtors' search of its own books and records was reasonably diligent and in accordance with the applicable caselaw.

## B.    The Late Claimants' Reliance on the State Foreclosure Cases Is Misplaced.

The Late Claimants insist that the Debtors had a duty to conduct an ancillary investigation of public records in order to identify the Late Claimants. See Appellants' Brief at 15-19. In addition, they demand that the Debtors should have performed title searches of all of their customers' properties -- a demand that would have resulted in thousands, if not tens of thousands, of such searches. In the aggregate, the cost of performing such search would have been overwhelming and would have imposed an outrageous burden on the Debtors' estates.

15

Unfortunately for the Late Claimants, the cases cited by the Late Claimants --

Mennonite,[12] Schroeder[13] and Walker[14] (collectively, the "State Foreclosure Cases") -- do not

support this proposition. In particular, the State Foreclosure Cases address whether specific

statutes (each providing for publication notice by the state to notify affected parties of specified

events relating to real property) provided constitutionally adequate notice to affected parties. For

the following reasons, these State Foreclosure Cases are inapposite to the pending issue of

whether a chapter 11 debtor has an obligation to search public records (in addition to a search of

its own books and records) to identify potential claimants.

First and foremost, the State Foreclosure Cases do not even involve chapter 11 debtors.

These cases address the limited issue of whether the publication notice of a particular statutory

scheme was sufficient to notify interested parties. This distinction is critical because the issue of

what constitutes sufficient notice in a bankruptcy context has already been decided by courts in

the wake of these State Foreclosure Cases, the most recent of which is over twenty years old. In

particular, in Chemetron, the Third Circuit held that a debtor's investigation to identify "known"

creditors need not be vast and open-ended, and instead should focus on the debtor's own books

and records. See Chemetron, 72 F.3d at 346-47. The Late Claimants, however, are in effect

asking the Court to ignore controlling precedent specifically addressing the issue, in favor of

cases that (i) deal with a different issue outside of a bankruptcy context, (ii) were decided before

---

[12]   Mennonite Bd. of Missions v. Adams, 462 U.S. 791 (1983).

[13]   Schroeder v. City of New York, 371 U.S. 208 (1962).

[14]   Walker v. City of Hutchinson, 352 U.S. 112 (1956).

16

the most applicable line of controlling cases, and (iii) can be distinguished from the present situation.

The Bankruptcy Court already determined what constitutes sufficient publication notice for the Debtors -- the very issue raised in the State Foreclosure Cases. Indeed, the Debtors' publication notice was specifically developed to reach the Debtors' creditors. See Mennonite, 462 U.S. at 798 (publication notice must be "reasonably calculated" to reach the intended recipient). In these chapter 11 cases, the Debtors took extraordinary measures to ensure that potential claimants knew of the Bar Date. Specifically, the Debtors (i) retained a notice consultant to design a notice program that would reach (with a high degree of probability) each of the Debtors' potential claimants, (ii) worked with the Bankruptcy Court and every official committee in these chapter 11 cases, over the course of ten months, to develop a notice program that would reach substantially all potential creditors, and (iii) spent over $4 million to publish the Bar Date Notice in a myriad of national and local publications, including local publications in Utah and in Salt Lake City (e.g. *The Tribune & Desert News*).

Further, the Court specifically determined that the Debtors' notice program was legally sufficient. In particular, in addition to approving the Bar Date Notice, the Bar Date Order provides:

> ORDERED that notice of the entry of this Order and of the Bar Date to unknown claimants pursuant to the Debtors' Bar Date Notice Plan for Asbestos Property Damage Claims and Other Claims (the "Notice Plan"), as modified, and filed on April 12, 2002, shall be deemed good, adequate and sufficient notice of the Bar Date ...

Bar Date Order at pg. 5. Bankr. D.I. 1963. The Late Claimants have never challenged the sufficiency of publication notice and it is not an issue before this Court.

Second, the noticing parties in each of the State Foreclosure Cases not only knew of the existence of the claimants, they knew the names of the parties to be noticed. Thus, the only

17

information the state agencies lacked was the address of such claimants.[15] The courts in the

State Foreclosure Cases determined that it was not unreasonable to require a state agency which

already possessed the name of the claimant to search for the address of the known claimant.

Here, the Debtors had no knowledge whatsoever of the Late Claimants' interests in the Site and

certainly did not have a list of names of impacted creditors such as the agencies had in the State

Foreclosure Cases. Thus, the burden of imposing a duty upon the Debtors to search the public

records would be much more overreaching and burdensome than the searches the state agencies

were required to undertake in the State Foreclosure Cases.

Finally, the State Foreclosure Cases dealt with state entities who were obligated to

provide notice. This fact is significant because the public recording systems are kept by the state

or other governmental organizations and, therefore, constitute such entities' books and records.

Therefore, the holding in the State Foreclosure Cases -- that the state entities had duties to check

their public records -- is effectively the same standard as the rule enumerated in Chemetron (that

a party must review its own books and records).[16] Such an investigation would be much more

burdensome for a chapter 11 debtor, who would have to undertake an ancillary, independent

investigation of the public records to identify owners and part owners of every location where it

sold its products (and every adjacent land). Such a time-intensive and burdensome endeavor

---

[15]  For example, in Mennonite, the mortgage on file with the county recorder identified the name of the mortgagee. See id. at 798, fn. 4. In Walker, the appellant's name was in fact known to the city and was on the official records. See id. at 16.

[16]  For example, in Mennonite, the same county that was responsible for maintaining the mortgage records was obligated to provide notice of impeding tax sales. Therefore, it was searching its own books and records. The Late Claimants attempt to distinguish Schroeder and Walker on grounds that the governmental agencies who maintained the mortgage records were different than the ones required to provide the notice. However, as both are governmental entities, the burden of checking with a sister or neighboring agency regarding their records does not equate to the burden that the Late Claimants would impose on the Debtors -- an ancillary, independent investigation of the public records.

18

would undermine a "chief purpose of the bankruptcy law [which] is to secure a prompt and effectual administration and settlement of the [debtor's] estate. . ." Katchen v. Landy, 382 U.S. 323, 328 (1966).

Therefore, as the Debtors' diligent investigation of their books and records did not uncover the claims of the Late Claimants relating to the Site, nor is there any evidence to indicate that the Debtors otherwise had actual knowledge of such claims, the Late Claimants are undeniably "unknown" creditors.[17] Thus, the State Foreclosure Cases are inapplicable to the present circumstances. Controlling precedent simply does not require the Debtors to sort through public records to identify claims with respect to property where its product may have been used or processed. As a result, the Debtors exercised "reasonable diligence" by reasonably searching their own books and records.

## II. Both VanCott And PacifiCorp Had Notice In Order To File A Timely Proof Of Claim.

It is not clear whether the Bankruptcy Court based its determination, at least in part, on the fact that (i) the Debtors properly served VanCott with actual notice of the Bar Date, or (ii) PacifiCorp had actual notice of the Debtors' chapter 11 cases. Nevertheless, if the Bankruptcy Court did find that the Late Claimants received actual notice, such a finding would not have been an abuse of the Bankruptcy Court's discretion.

---

[17] The Late Claimants reliance on Eisen is similarly misplaced. Eisen v. Carlisle & Jacquelin, 417 U.S. 156 (1974). As with the State Foreclosure Cases cited above, this case does not involve a chapter 11 debtor. Rather this case deals with what notice constitutes due process in the context of a class action. See id. at 165. Once again, the Late Claimants are imploring this Court to ignore controlling precedent -- Chemetron -- in favor of a case that (i) deals with a different issue outside of a bankruptcy context, (ii) was decided before the most applicable line of controlling cases, and (iii) can be distinguished from the present situation.

A.    **VanCott Received Actual Notice Of The Bar Date.**

Although neither of the Late Claimants were entitled to actual notice of the Bar Date, the

Debtors did serve VanCott with the Bar Date Notice. In particular, the Debtors sent the Bar Date

materials to "VanCott, Bagley, Cornwall & McCarthy." While the notice may not have been

specifically sent to the firm's 401(k) profit sharing plan, this is a distinction without any material

difference. Indeed, the 401(k) profit sharing plan is affiliated with the law firm and the 401(k)

plan's offices are located in the same offices as the law firm (50 S. Main St., Salt Lake City,

Utah). VanCott has never, and does not now, refute this fact. Therefore, service upon the law

firm should be imputed to the 401(k) plan. See, e.g., Haynes v. Locks, 711 F. Supp. 901, 903

(E.D. Tenn. 1989) (finding that service of process upon an affiliate is constructive notice to two

parent corporations).

The Late Claimants are apparently correct that the address listed in the Debtors' records

contains an incorrect zip code (off by one digit) and does not include a suite number. In the

present situation, however, it is highly unlikely that the incorrect zip code resulted in the Bar

Date Notice not being properly delivered as there is only one "South Main Street" in Salt Lake

City, Utah. Exhibit A to Debtors' Response to PacifiCorp and the VanCott Bagley Cornwall &

McCarthy 401(k) Profit Sharing Plan's Brief in Support of Their Motion for Leave to File Late

Proofs of Claim, A-316 to A-317, at A-317. Also, the zip code listed in the Debtors' records

(84144) is not materially different from the allegedly correct zip code (84145) -- it is off by only

one digit. Courts have also held that a missing suite number does not preclude a finding that the

notice was properly addressed. See, e.g., In re Li, 242 B.R. 280, 282-83 (Bankr. E.D. Pa. 1999)

(stating that it was doubtful that the failure to include a suite number constituted insufficiency of

the mailing address); In re Gordon, 1996 WL 673169, at *3 (Bankr. N.D. Ohio 1996) (finding

that there is nothing in the record which suggests that a suite number is required by the post

20

office or was necessary for the notice to reach the intended party). Gordon, B-67 to B-70, at B-68.

Where mail is properly addressed, stamped and deposited in the postal system, there arises a rebuttable presumption that the notice was received by the addressee. In re Longardner & Associates, Inc., 855 F.2d 455, 459 (7th Cir. 1988). The Late Claimants argue that the mistakes in addressing the Bar Date Notice shift the burden onto the Debtors to substantiate actual delivery. In fact, courts that have examined this issue do not recognize such a shift in burden. Rather the courts have held that mistakes in addressing a notice only weaken the presumption of receipt by the addressee but do not preclude a finding that the notice was properly addressed. See, e.g., Longardner, 855 F.2d at 460 (rejecting the creditor's argument that the absence of a zip code on the address used by the clerk means that the notice was improperly addressed); In re Pettibone Corp., 123 B.R. 304, 310 (Bankr. N.D. Ill. 1990) (finding that a notice that lacked a zip code and proper name of the law firm only resulted in a weakened presumption of receipt which was not rebutted); In re STN Enter., Inc., 94 B.R. 329, 334 (Bankr. D. Vt. 1988) (finding that the presumption of proper delivery is even stronger than the one in Longardner because the address did contain a zip code which was only off by one digit, the last digit).

In addition, the courts in Longardner, Pettibone, and STN Enter. have held that the presumption of delivery, although weakened by an incorrect zip code and/or firm name, is strengthened by the fact that the notice in question was never returned to the clerk's office. In the present case, the Debtors' noticing agent, if so requested by the Court, is prepared to provide an affidavit that the Bar Date Notice addressed to VanCott was not returned as undeliverable.

21

Furthermore, courts have held that a creditor who receives other mailings with the incorrect address has an affirmative duty to notify the clerk or noticing agent that their address was incorrectly listed. STN Enter., 94 B.R. at 334. Such a duty has been placed on the creditors because, in the absence thereof, a creditor who is aware that his address is incorrect can circumvent the service process by arguing that he did not receive relevant notices. As VanCott was served with the Notice of Commencement in April 2001 at the same zip code that it now complains is incorrect, it had an affirmative duty to notify the noticing agent as to how the address was incorrect or of the relevant suite number. VanCott failed to do so and thus the Debtors served the Bar Date Notice at the same address. Furthermore, VanCott was served with the Bar Date Notice 11 months before the Bar Date and, once again, failed to correct the address, and in so doing, it denied the Debtors the opportunity to timely resubmit the Bar Date Notice.

The assertions made by the president of the VanCott Firm that he did not receive actual notice, without more, do not overcome the presumption that notice was properly delivered. See, e.g., In re Ms. Interpret, 222 B.R. 409, 413 (Bankr. S.D.N.Y. 1998) (a party must do more than merely assert that it did not receive the mailings since its testimony or affidavit of non-receipt is insufficient, standing alone, to rebut the presumption); STN Enter., 94 B.R. at 334-35 (creditor's denial of receipt alone does not rebut the presumption of receipt of the notice, especially when the creditor does not maintain a standardized operating procedure for receiving and reviewing its mail).

Finally, the Late Claimants attempt to argue that the Bankruptcy Court was required to conduct an evidentiary hearing to consider the issue of receipt of the Bar Date Notice. See Appellants' Brief at 25-27. The Late Claimants have not provided any case law to support this assertion. In fact, the court in Longardner specifically noted that an evidentiary hearing is not

22

required. Longardner, 855 F.2d at 459-60 (rejecting the creditor's argument that the debtor was required to present evidence to meet its burden to show that notice was in fact mailed and ruling "the bankruptcy court properly relied on its own records, which showed that notice was properly addressed, sent to the creditor's counsel and not returned to the clerk's office.") Similarly, the court in STN Enter. relied on prior recorded testimony and oral argument presented by counsel for both parties, including representations on the record which were deemed evidence for purposes of its decision. STN Enter., 94 B.R. at 331. The court did not require an evidentiary hearing. See, also, In re Comdisco, Inc., 2003 WL 685645, at *8 (N.D. Ill. 2003) (denying appellant's request to remand the case for an evidentiary hearing after the court refused to hold that appellants are *entitled* to an evidentiary hearing if there are factual disputes). Comdisco, B-52 to B-58, at B-57-58. Therefore, the Bankruptcy Court was not compelled to hold an evidentiary hearing with respect to the receipt of notice and its consideration of this issue was otherwise sufficient.

For the reasons set forth above, the Bankruptcy Court did not abuse its discretion in concluding that VanCott received actual notice of the Bar Date.

### B.    The Debtors Should Not Be Held Accountable For PacifiCorp's Incomplete Proof Of Claim

Similar to VanCott, PacifiCorp was not entitled to actual notice of the Bar Date. PacifiCorp by its own admission, however, did receive the Notice of Commencement, and filed a proof of claim under its trade name, Utah Power & Light, before the Bar Date. PacifiCorp thus (i) knew that the Debtors were in bankruptcy; (ii) knew that the proof of claim process was the appropriate method for asserting any claims against the Debtors; and (iii) could have filed a similar claim with respect to the Site. PacifiCorp has provided no justification for its failure to set forth claims related to the Site in their timely proof of claim.

23

**III.    The Late Claimants Failed To Prove Excusable Neglect Or Even Neglect**

The Bankruptcy Court did not abuse its discretion in concluding that the Late Claimants

failed to establish that excusable neglect justified the late filing of their proofs of claim.  Since

publication notice was sufficient with respect to each of the Late Claimants, and the Late

Claimants have cited no other reason for their failure to file timely claims, the Late Claimants

failed to demonstrate that the present situation falls within Bankruptcy Rule 9006(b)(1)'s

exception for tardy claims.  In fact, neither of the Late Claimants have established any *neglect*

for their failure to file timely claims, let alone *excusable neglect.*

Bankruptcy Rule 9006(b)(1) grants the Court authority to accept late filings where the

movant's failure to comply with the Bar Date "was the result of excusable neglect."  The

Supreme Court has held that under this rule, courts are *permitted, where appropriate*, to accept

late filings caused by inadvertence, mistake, or carelessness, as well as by intervening

circumstances beyond the party's control.  See Pioneer Inv. Services Co. v. Brunswick Ass'n

Ltd. P'ship, 507 U.S. 380, 381 (1993).

In determining whether to allow late proofs of claim, the Supreme Court has stated that

the court's inquiry is guided by one of the principal purposes of bankruptcy law, "to secure a

prompt and effectual administration and settlement of the [debtor's] estate. . ." Katchen, 382

U.S. at 328.  Indeed, any other approach would severely undermine the fundamental purpose of a

claims bar date -- to serve as a "federally created statute of limitations, after which the claimant

loses all of her right to bring an action against the debtor." See In re Grand Union Co., 204 B.R.

864, 871 (Bankr. D. Del. 1997), *citing* In re Trans World Airlines, Inc., 96 F.3d 687, 690 (3d Cir.

1996).

Once neglect has been established, the determination of whether such neglect should be

excused is determined by the following factors: (i) the danger of the prejudice to the debtor;

24

(ii) the length of delay and its potential impact on judicial proceedings; (iii) the reason for delay, including whether it was within the reasonable control of the movant; and (iv) whether the movant acted in good faith. See Pioneer, 507 U.S. at 381. The burden of proving excusable neglect lies with the movant. See Chemetron, 212 F.3d at 204. In the Appellate Brief at pages 24-27, the Late Claimants incorrectly attempt to shift the burden of proof to the Debtors to prove that there was no excusable neglect. It is clear under Chemetron that the burden is on the Late Claimants and such a shifting of burden is inappropriate.

While courts have stopped short of establishing a *per se* rule that "excusable neglect" cannot apply to "unknown creditors," such courts are loath to find excusable neglect for unknown creditors given the existence and purpose of publication notice:

> We leave for another day the issue of *whether excusable neglect can ever be a viable defense in cases where the claimant is only entitled to publication notice.* Pioneer involved a situation in which the claimant had received actual notice of the bar date, but had nonetheless failed to file a proof of claim. *It is considerably more difficult to apply the excusable neglect standard in cases involving publication notice.* Recognizing excusable neglect claims based on the failure of the claimant to read the published notices would be problematic in either of these two categories. In the former, recognizing claims that arise many years after the bankruptcy proceeding would subvert the very purpose of the bar date namely, to confer finality upon the proceedings. Similarly, allowing claimants whose very conduct has made the claim speculative to file late proofs of claim would reward lack of diligence. In both cases, permitting parties to file late proofs of claim would tend to render publication notice meaningless.

In re Trump Taj Mahal Assoc., 1993 WL 534494 at *6, fn. 7 (D.N.J. 1993) (emphasis added). Taj Mahal, B-59 to B-64, at B-63-64. See, also, Wright v. Placid Oil Co., 107 B.R. 104, 107 (N.D. Tex. 1989) (stating that the fact that Appellant did not receive actual notice of the bankruptcy does not constitute excusable neglect).

Neither of the Late Claimants have satisfied their burden of establishing excusable neglect. First, as noted by the court in Taj Mahal, excusable neglect may not be available in situations involving constructive notice, because such an application would render publication

25

notice meaningless. Therefore, since the Late Claimants were only entitled to publication notice with respect to the Site and adjacent land, they may be prohibited, as a matter of law, from establishing excusable neglect. See Taj Mahal, 1993 WL 534494 at *6, fn. 7. Taj Mahal, B-59 to B-64, at B-63-64.

*Second*, even if the Late Claimants are not precluded from pursuing excusable neglect, neither of the Late Claimants has shown that their respective failures to file timely proofs of claim were the product of *any* neglect, let alone *excusable* neglect. Instead, the Late Claimants incorrectly base their entire argument on the assertion that neither received proper notice. However, both of the Late Claimants received at least sufficient constructive notice of the Bar Date -- notice that was approved by the Bankruptcy Court. See Bar Date Order at pg. 5. Bankr. D.I. 1963. The adequacy of the publication notice has not been disputed by the Late Claimants and is not an issue before this Court. Moreover, the Late Claimants have not established any other facts that would support a finding of excusable neglect.

In their Appellate Brief, the Late Claimants attempt to bypass the requirement of first demonstrating neglect and seek to simply skip to the next step of establishing excusable neglect. However, as the Late Claimants have failed to establish any neglect whatsoever, an inquiry into whether or not they have established "excusable neglect" under the Pioneer four-factor test is unwarranted and untimely. The Late Claimants should not be allowed a second opportunity to now craft some sort of neglect when they had an adequate opportunity to do so before the Bankruptcy Court and failed to do so.

The Third Circuit has held that a totality of circumstances analysis is the appropriate test in reviewing the Pioneer factors. Welch & Forbes, Inc. v. Cendant Corp. (In re Cendant Corp. Prides Litig.), 233 F.3d 188, 196 (3d Cir. 2000). Considering the factors set forth in Pioneer,

26

(i) the danger of prejudice to the Debtors is great; (ii) allowing the filing of the late claims would negatively impact the Debtors' chapter 11 cases; and (iii) the reason for delay in filing was entirely in the reasonable control of the Late Claimants as they had notice. Therefore, even if this Court were to determine that the Late Claimants had proved neglect, the Late Claimants still have not satisfied their burden to prove that such neglect is excusable.[18]

Specifically, permitting the Late Claimants to file proofs of claim at this late date would prejudice the Debtors. The Debtors have submitted their plan of reorganization and have established viable case management procedures for estimation of asbestos-related liabilities and pursuing other plan-related matters. In order for the Debtors to confirm a comprehensive, viable plan of reorganization, they need complete and accurate information regarding the nature, amount and status of all claims that will be asserted in these chapter 11 cases. The Debtors' plan and related disclosure statement contain projections of allowed claims and estimates of how such claims will be paid under the plan. It would thwart the purposes of the Bar Date and

---

[18] The Late Claimants cite to Orthopedic and Manus in support of their position that they have demonstrated excusable neglect. These cases, however, are factually distinguishable and therefore inapplicable to the present circumstances. In Orthopedic, the court found that there was excusable neglect because, at best, the parties provided minimal constructive notice and the movant never received actual notice of the deadline to register for settlement. Orthopedic Bone Screw Prod. Liab. Litig., 246 F.3d 315, 326-27 (3d Cir 2001). See, also, In re Diet Drugs Prod. Liab. Litig., 92 Fed. Appx. 890, 893 (3d Cir. 2004) (distinguishing Orthopedic from the present case based on lack of notice). In contrast to Orthopedic, VanCott was provided with actual notice of the Bar Date and PacifiCorp knew of the Bar Date and filed a timely proof of claim unrelated to its claims for the Site. Unlike the minimal constructive notice provided in Orthopedic, the Debtors spent $4 million on a Bankruptcy Court-approved publication notice (including publishing locally in Utah in *The Tribune & Desert News*) to notify all unknown creditors, including the Late Claimants. In Manus, the Third Circuit found that the debtors provided inadequate notice to the movants because the debtors knew of the claim and deliberately chose not to reference the claim, name the relevant parties, or address the notice to the impacted parties. Manus v. NRG Energy, Inc. (In re O'Brien Env'l Energy, Inc.), 188 F.3d 116, 128-29 (3d Cir. 1999). In contrast to the facts in Manus, the Debtors had no knowledge that the Late Claimants held any claims. For this very reason, the Debtors sent out Bankruptcy Court-approved publication notice to notify all unknown creditors, including the Late Claimants. In contrast to Manus, there was no deliberate intent on behalf of the Debtors to withhold notice to a known creditor and, thus, Manus is inapplicable to the circumstances before this Court.

27

detrimentally affect the Debtors' plan projections to allow the Late Claimants to file a late claim at this stage in the process.

Further, allowing the proofs of claim to be filed now may open the "flood gates" for similar claims and render the Debtors' publication notice meaningless. In order to progress towards plan confirmation, the Debtors need a degree of certainty with respect to the potential claims that will have to be satisfied by the Debtors' reorganization plan. This is exactly why the Debtors sought a Bar Date. Overturning the Bankruptcy Court's denial of the Late Claimants' Motion would encourage uncertainty and deprive the Debtors of any assurance of the scope of their liabilities, which was the fundamental purpose behind the Bar Date. It would also render the Debtors' publication notice meaningless, and allow other "unknown" claimants to file late-filed claims in the wake of the Late Claimants' efforts.

As discussed above, VanCott received actual notice of the Bar Date as the Debtors properly served VanCott with a copy of the Bar Date Notice and PacifiCorp, by its own admission, received notice of the Debtors' chapter 11 cases, and filed a proof of claim under its trade name, Utah Power & Light, nearly two years before the Bar Date. Neither of the Late Claimants offer any explanation whatsoever for their failure to file a proof of claim with respect to the Site or adjacent land in light of the notice received.

Finally, the Late Claimants erroneously assert that the Bankruptcy Court's consideration of their excusable neglect argument was manifestly inadequate. See Appellants' Brief at 28. Controlling law however, only requires that a court articulate its decision either in writing or orally. See, Orthopedic, 246 F.3d at 321 adopting Interpace Corp. v. City of Philadelphia, 438 F.2d 401 (3d Cir. 1971) (stating "it is a salutary practice to give litigants, either orally or in writing, at least a minimum articulation of the reason for its decision"); In re Nam, 1993 WL

28

436026 (E.D. Pa. 1993) *1, fn. 3 (stating that a bankruptcy court may adopt its own findings of

fact and conclusions of law either orally or in a written memorandum). In re Nam, B-65 to B-66,

at B-66. Here, the Bankruptcy Court provided both a written and oral articulation of its decision.

At the hearing to consider the Late Claimants' Motion, the Bankruptcy Court discussed why it

believed that the Late Claimants had failed to establish excusable neglect. See, e.g., Transcript,

A-318 to A-336, at A-334:22-25 and 335:1-3. Additionally, in the Order, the Bankruptcy Court

specifically stated that it had "reviewed the briefs, response briefs, reply brief, all exhibits and

considered the arguments of counsel. The court agrees with and adopts the reasoning in Debtor's

Brief (D.I. 7746) and Response (DI 8283)." Order, A-337 to A-338, at A-337-338.

The Late Claimants have provided no case support, nor can they, that requires the

Bankruptcy Court to lay out specific findings of fact and conclusions of law rather than simply

adopting the arguments of the prevailing party. In addition, the case law cited by the Late

Claimants does not suggest that the Bankruptcy Court's consideration of the issues was deficient

or needed to be any more involved or thorough than it otherwise was. Therefore, the Bankruptcy

Court's consideration of the excusable neglect argument was appropriate and reasonably

articulated, and should be upheld by this Court.

Therefore, for the reasons set forth, the Bankruptcy Court did not abuse its discretion in

concluding that the Late Claimants failed to establish any sort of neglect, let alone excusable

neglect, such as necessary to justify the filing of their untimely claims.

### Conclusion

Since the Late Claimants have failed to (i) establish that they were "known" creditors that

were entitled to actual notice of the Bar Date and (ii) argue any other basis for a finding of

"excusable neglect," the District Court should affirm the ruling of the Bankruptcy Court denying

the Late Claimants leave to file late proofs of claim. The matter should not be remanded for

29

further consideration and findings with respect to any issue, including the existence of excusable

neglect.

Dated: December 14, 2005

Counsel for the Appellees:

David M. Bernick, P.C.
Janet S. Baer
James W. Kapp III
Lori Sinanyan
**KIRKLAND & ELLIS LLP**
200 East Randolph Drive
Chicago, Illinois 60601
Telephone:   (312) 861-2000
Facsimile:   (312) 861-2200

and

Laura Davis Jones (#2436)
James E. O'Neill (#4042)
**PACHULSKI, STANG, ZIEHL,
YOUNG JONES & WEINTRAUB PC**
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(Courier 19801)
Telephone:   (302) 652-4100
Facsimile:   (302) 652-4400