## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 |
| W.R. Grace & Co., *et al.*, | Case No. 01-01139 (JKF) |
| Debtors. | Jointly Administered |
| PacifiCorp and the VanCott Bagley Cornwall & McCarthy 401(k) Profit Sharing Plan, | C.A. No. 05-764 (RLB) |
| Appellants, | **Re: Docket Nos. 3, 4, 9, 10, 11, 13** |
| v. | |
| W.R. Grace & Co., *et al.*, | |
| Appellee. | |

### APPELLANTS' REPLY BRIEF

Richard S. Cobb (#3157)
Megan N. Harper (#4103)
**LANDIS RATH & COBB LLP**
919 Market Street, Suite 600
P.O. Box 2087
Wilmington, DE 19899
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

Attorneys for Appellants PacifiCorp and the
VanCott Bagley Cornwall & McCarthy 401(k)
Profit Sharing Plan

-and-

Steven J. McCardell, Esquire
Jared L. Inouye, Esquire
**MABEY & MURRAY LC**
1000 Kearns Building
136 South Main Street
Salt Lake City, UT 84101-1685
Telephone: (801) 320-6700
Facsimile: (801) 359-8256

Attorneys for Appellant PacifiCorp

-and-

J. Robert Nelson, Esquire
**VANCOTT, BAGLEY, CORNWALL &
MCCARTHY**

50 South Main Street
Salt Lake City, UT 84144-0450
Telephone: (801) 237-0270
Facsimile: (801) 534-0058

Attorneys for Appellant VanCott Bagley Cornwall
& McCarthy 401(k) Profit Sharing Plan

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

ARGUMENT ............................................................................................................... 1

I.    UNDER <u>CHEMETRON</u> AND APPLICABLE UNITED STATES
      SUPREME COURT PRECEDENT, APPELLANTS ARE KNOWN
      CREDITORS ENTITLED TO ACTUAL NOTICE OF THE BAR DATE ............ 1

      A.    The Debtors Knew They Contaminated The Subject Property And
            Knew They Were Liable For Environmental Claims Arising
            From The Subject Property ......................................................................... 1

      B.    Given The Debtors' Knowledge That They Were Liable For
            Environmental Claims Arising From The Subject Property,
            <u>Chemetron</u> Does Not Dictate The Conclusion That Appellants
            Were Unknown Creditors .......................................................................... 3

      C.    Under Supreme Court Precedent, The Debtors Had A Duty To
            Ascertain The Identities Of The Appellants ............................................. 5

      D.    Under The Particular Facts Of This Case, A Ruling That
            Appellants Were Entitled To Actual Notice Of The Bar Date
            Does Not Impose An Unreasonable Burden Upon The Debtors ................ 6

II.   GRACE'S ARGUMENTS WITH RESPECT TO THE
      EXCUSABLE NEGLECT ISSUE ARE UNMERITORIOUS ............................... 8

CONCLUSION ........................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

Chemetron Corp. v. Jones, 72 F.3d 341 (3d Cir. 1995)........................................ 1, 3, 4, 5, 6, 9, 10

City of New York v. New York, N.H. & H.R. Co., 344 U.S. 293 (1953)................................... 5, 8

Eisen v. Carlisle & Jacquelin, 417 U.S. 156 (1974) ........................................................ 6

In re Argonaut, 164 B.R. 107 (N.D. Cal. 1994).............................................................. 6

In re Bicoastal Corp., 147 B.R. 807 (Bankr. M.D. Fla. 1992)........................................ 4

In re New York Trap Rock Corp., 153 BR 648 (Bkrtcy S.D.N.Y. 1993)...................................10

In re O'Brien Environmental Energy, Inc. v. NRG Energy, Inc.,
188 F.3d 116 (3d Cir. 1999)............................................................................ 11

In re Texaco Inc., 182 B.R. 937 (Bankr. S.D.N.Y.)........................................................ 4

In re Trump Taj Mahal Assoc., 1993 WL 534494 at *6, fn 7 (D.NJ. 1993) ................................. 9

Mennonite Bd. of Missions v. Adams, 462 U.S. 791 (1983)...................................................... 5, 6

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950) .............................. 3, 4, 5, 6

Orthopedic Bone Screw, 246 F.3d at 315 (3d Cir. 2001) ...................................................... 10, 11

Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. Partnership, 507 U.S. 380 (1993)...................10

Schroeder v. City of New York, 371 U.S. 208 (1962)................................................................ 5, 6

Tulsa Professional Collection Serv., Inc. v. Pope, 485 U.S. 478 (1988) ........................................ 4

United States v. Aceto Agric. Chem.Corp., 872 F.2d 1373 (8th Cir. 1989)................................2-3

Walker v. City of Hutchinson, 352 U.S. 112 (1952) ................................................................. 5, 6

**Statutes**

42 U.S.C. § 9614(f)(1) ................................................................................................. 2

42 U.S.C. §9607(a) ..................................................................................................... 2

**ARGUMENT**

I.    **UNDER <u>CHEMETRON</u> AND APPLICABLE UNITED STATES SUPREME COURT PRECEDENT, APPELLANTS ARE KNOWN CREDITORS ENTITLED TO ACTUAL NOTICE OF THE BAR DATE**

The Bankruptcy Court abused its discretion by determining that the Appellants, PacifiCorp and the VanCott Bagley Cornwall & McCarthy 401(k) Profit Sharing Plan (the "VanCott Plan"), were not reasonably ascertainable and therefore not "known" creditors, constitutionally entitled to actual notice of the Bar Date.[1]  As set forth in the Appellant's Brief, Grace knew that it contaminated the Subject Property and that current and former owners of the Subject Property held environmental claims against Grace.  Given this specific knowledge and the ease of ascertaining Appellants' identities from public records, under <u>Chemetron Corp. v. Jones</u>, 72 F.3d 341 (3d Cir. 1995) and applicable Supreme Court precedent, the Appellants were reasonably ascertainable and, therefore, known creditors entitled to actual notice of the bar date.

A.    **The Debtors Knew They Contaminated the Subject Property and Knew They Were Liable For Environmental Claims Arising from the Subject Property.[2]**

Grace inaccurately claims that the facts of the case "do not . . . hint at the existence of a third party."  Appellee's Brief, at 11.  Grace further incorrectly asserts that it "had no actual knowledge" and "had no reason to know" that claimants such as Appellants existed and that it is "uncontested" and "undisputed" that "the Debtors had no connection whatsoever to the Site" and

---

[1] The Debtors claim that issue 1 is "not whether the Late Claimants were or were not potential creditors reasonably ascertainable from an investigation of public records," but rather, whether the Appellants were "unknown creditors." Appellee's Brief, at 3.  This is a distinction without a difference.  By concluding that the Appellants were unknown creditors, the Bankruptcy Court concluded that the Appellants were not reasonably ascertainable and therefore not known creditors.

[2] The "Subject Property" is property located at 333 West 100 South on Block 66 in downtown Salt Lake City, Utah. The Appellants are current and former owners of the Subject Property.  Appellants' Brief, at 1.

that the Processing Distributors were "apparently" customers.[3]    Appellee's Brief, at 3, 10 n. 8,

14. Grace's assertions of "unawareness" fail. Appellee's Brief, at 10.

Grace can take these positions only by ignoring the actual facts of the case. Grace's

books and records clearly showed that Grace contaminated the Subject Property. Specifically,

Grace's books and records showed that (i) it shipped tons of vermiculite ore to 333 West First

Street over the course of several decades; (ii) it entered into various agreements with Vermiculite

Intermountain and Intermountain Insulation (the "Processing Distributors"), allowing the

Processing Distributors to use Grace's patented vermiculite processing techniques and

trademarked product names; (iii) for purposes of allowing Grace to exercise control over the

quality of its products, Grace provided detailed specifications to the Processing Distributors for

various products and thereby controlled the process that contaminated the Subject Property;

(iv) Grace required the Processing Distributors to pay a royalty payment for products

manufactured and sold; (v) Grace knew that Libby vermiculite contained toxic amphibole

asbestos; and (vi) Grace scheduled a claim for the Processing Distributors' site.  Appellant's

Brief, at 13.

It is undisputed and well-known that, by statute – 42 U.S.C. §9607(a) and 42 U.S.C. §

9614(f)(1) – both current and former owners of contaminated real property have claims against

arrangers like the Debtors who enter into processing agreements with other companies for the

manufacture of a product when the manufacturing process itself results in significant

contamination to the processor's property.  See  United States v. Aceto Agric. Chem.Corp., 872

---

[3]  The Debtors attempt to reduce the hard fact that they contaminated a specific parcel of property in downtown Salt Lake City to theory by stating that its licensee only "apparently processed the vermiculite at the Site."  Appellee's Brief, at 3.  See also Appellee's Brief, at 14 ("a customer apparently processed the Debtors' product at the Site").  Likewise, the EPA's public regulatory actions to address the contamination are made to seem so unreal that the Debtors feign uncertainty about whether they even know of them:  "upon information and belief, the Debtors have become aware" of them.  Appellee's Brief, at 7.  The Debtors' actions were real, not theoretical, and their use of the Processing Distributors as licensees has cost innocent parties millions of dollars.

F.2d 1373 (8th Cir. 1989). Thus, the Debtors knew that the current and former owners of the Subject Property (Appellants here) held environmental claims against the Debtors.

**B.      Given the Debtors' Knowledge That They Were Liable for Environmental Claims Arising from the Subject Property, <u>Chemetron</u> Does not Dictate the Conclusion that Appellants Were Unknown Creditors.**

Despite the fact that Grace knew it was liable to environmental claims arising from the Subject Property, Grace argues that under <u>Chemetron</u>, the Debtors did not have a duty to conduct any investigation outside their books and records. Appellee's Brief, at 12. In so doing, Grace urges the Court to adopt the universal rule that if a party's name is not in a debtor's books and records, such party is an unknown creditor, regardless of whether the debtor knows of the existence of the claim or creditor.[4] <u>Chemetron</u> and Supreme Court precedent do not support this rule and this Court should reject Grace's argument.

In <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314-15 (1950), the Supreme Court held that the adequacy of notice under the Due Process Clause hinges on the "practicalities and peculiarities of the case."

> [W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. . . . it would be idle to pretend that publication alone as prescribed here, is a reliable means of acquainting interested parties of the fact that their rights are before the court.

<u>Id.</u>, at 315. In <u>Chemetron</u>, the Third Circuit followed <u>Mullane</u> and explicitly refused to adopt the narrow rule that the reasonably ascertainable standard requires only an examination of the debtor's books and records. The court held that such an analysis depends on the "specific facts

---

[4] On Debtors' narrow view of their constitutional obligations, they justifiably could forego looking up an address in a telephone book simply because the address did not appear in the Debtors' books and records and rely instead on notice by publication. In page after page, the Debtors insist that it can pollute real property (an action which by definition triggers claims of property owners), give notice to the property owner shown on their books in decades-old transactions, and publish for the benefit of all other owners, without any effort to find the current owner.

of each case" and that "[s]ituations may arise when creditors are 'reasonably ascertainable,' although not identifiable through the debtor's books and records." Chemetron, 72 F.3d at 347 n.2 (citing Tulsa Professional Collection Serv., Inc. v. Pope, 485 U.S. 478, 491 (1988)). By urging this Court to adopt the rule that a search of the Debtors' books and records was sufficient even though the Debtors knew of environmental liability arising from the Subject Property, the Debtors take a position that is inconsistent with Chemetron and Mullane.

Chemetron did not give polluters an unconditional license to skirt constitutional requirements of due process by looking only in their books and ignoring details showing environmental liability on a specific parcel of property. See Appellants' Brief, at 12-15. As set forth in the Appellant's Brief, the facts of Chemetron properly are distinguishable from the facts of this case. The claims asserted in Chemetron were speculative and conjectural – they were personal injury claims; the claimants did not live in the vicinity of the debtor's property; and the debtor could not have located the claimants or known of their claims. Notice by publication was the *only* reasonable means to give notice to the Chemetron claimants.[5]  However, what was reasonable in Chemetron amounts only to a "mere gesture" in this case. Under the particular facts of this case, Grace knew of environmental claims tied to a specific address and it was therefore unreasonable for Grace not to ascertain the Appellants' identities and provide them with appropriate notice of the Bar Date.[6]

---

[5] Similarly, notice by publication was the only reasonable means to give notice to the claimants in In re Bicoastal Corp., 147 B.R. 807, 808 (Bankr. M.D. Fla. 1992) and In re Texaco Inc., 182 B.R. 937 (Bankr. S.D.N.Y.). In both cases, the debtors could not have reasonably known of specific environmental claims arising from a specific parcel of property. Thus, contrary to Appellee's argument, the fact that the Bicoastal and Texaco debtors owned the property was not relevant to the outcome of those cases. The crucial fact in Bicoastal, Texaco, and Chemetron was that the debtors in those cases could not have reasonably known of the particular claims or claimants; therefore notice by publication was reasonable. In the case at hand, the Debtors knew that they had contaminated certain property and knew the address of that property.

[6] Grace argues that PacifiCorp was in the "optimal position to be aware of such claims," and as the owners of the Subject Property, PacifiCorp had "specific knowledge of such claims." Appellee's Brief, at 15. Grace incorrectly

C.    **Under Supreme Court Precedent, the Debtors Had a Duty to Ascertain the Identities of the Appellants.**

Mennonite Bd. of Missions v. Adams, 462 U.S. 791 (1983), Schroeder v. City of New York, 371 U.S. 208 (1962), and Walker v. City of Hutchinson, 352 U.S. 112 (1952) all involved defendants who sought to take actions affecting the claimants' interests in real property.  In all of these cases, the Supreme Court held that because the defendants knew of the existence of the affected parties and because the identities were available from public records, due process required the defendants to provide actual notice to the claimants.  Mennonite, 462 U.S. at 798; Schroeder, 371 U.S. at 212-13 ; and Walker v. City of Hutchinson, 352 U.S. at 116.  The Supreme Court, in all of these cases, based its holdings on Mullane.  Mennonite, 462 U.S. at 797 (also citing Schroeder and Walker); Schroeder, 371 U.S. at 211-13 (also citing Walker; and Walker, 352 U.S. at 115-16.

In attempt to avoid the force of this directly applicable Supreme Court precedent, the Debtors call it "antiquated."  Appellee's Brief, at 4, 16.  The Debtors further advance as their "foremost" argument that Mennonite, Schroeder, and Walker do not apply because they did "not even involve chapter 11 debtors."  Appellee's Brief, at 14.  In so doing, the Debtors fail to recognize that Mullane's 1950 standard is undisputedly the current law of the United States and that the so-called "antiquated" cases applying Mullane's standard are *subsequent* Supreme Court cases.  The Debtors fail to recognize that in Chemetron, a bankruptcy case, the Third Circuit relied on both Mullane and Mennonite.  Chemetron, 72 F.3d at 346 n.11 (Mullane "set the standard for notice required under the Due Process Clause in Chapter 11 bar date cases").  The

---

bases this argument on the fact that an "on-site investigation was performed by the EPA at the Site in October 2002." Id. First, whether PacifiCorp knew, Grace knew more and Supreme Court precedent is clear that a known creditor is entitled to actual notice of a bar date, regardless of whether such creditor has a general knowledge of the debtor's case. City of New York v. New York, N.H. & H.R. Co., 344 U.S. 293, 297 (1953). Second, the 2002 EPA investigation did not reveal the extent of the contamination or the degree to which Grace was involved. PacifiCorp did not know until later that it had a legitimate claim against Grace.

constitutional requirements of due process and the due process standards set forth in <u>Mullane,</u>
<u>Mennonite</u>, <u>Schroeder</u>, and <u>Walker</u> apply to both bankruptcy and non-bankruptcy cases.  The
case at hand is no exception: under Supreme Court precedent, the Debtors had a constitutional
obligation to ascertain the Appellants' identities and give them due notice.[7]

     **D.**     **Under the Particular Facts of this Case, a Ruling that Appellants Were**
              **Entitled to Actual Notice of the Bar Date Does Not Impose an Unreasonable**
              **Burden Upon the Debtors.**

To the extent that burden or cost is a relevant factor in determining the Debtors'
constitutional obligations to provide due process, as set forth in detail in Appellant's opening
brief, Appellants' Brief, at 19, looking up statutory claimants at the few known processing sites
is neither "burdensome" nor "cost-prohibitive" as the Debtors suggest.  Appellee's Brief, at 18-
19. <u>See</u> <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 176 (1974) (citing <u>Mullane</u> and holding that
under <u>Mullane</u>, the names of 2,250,000 class members' names and addresses, which were not in
the records of the party required to give notice, were reasonably ascertainable).[8]  In response to
interrogatories from the EPA, the Debtors listed only thirty-six licensees, which Grace licensed
to use Grace's patented vermiculite exfoliation process and sell Grace-branded products.  The
EPA's proof of claim lists only thirty environmental sites in eighteen states total, of which only
thirteen are vermiculite expansion plants (located in NJ, MD, PA, KY, MN, MT, UT (two sites),
ND, CO, CA, and WA).  Given the well-known fact that where real property has environmental
contamination, owners appearing in the chain of title from the time of contamination may have

---

[7] Debtors' attempted avoidance of the rule of law of <u>In re Argonaut</u>, 164 B.R. 107, 111 (N.D. Cal. 1994), which
relied on <u>Mennonite</u>, fails.  <u>See</u> Appellee's Brief at 10-11, n. 8.  If knowledge of the assignment of interests in
property requires a bankrupt debtor to look up the purchasers, the Debtors' knowledge of contaminated real property
likewise requires looking up the purchasers, in this case, Appellants.

[8] Debtors argue that <u>Eisen</u> does not apply to this case even though <u>Eisen</u> is founded on <u>Mullane</u>, which set forth the
due process standard for notice, and which was decided in 1950.  The Debtors argue that <u>Eisen</u> was "decided before
the most applicable line of controlling cases" – <u>Chemetron</u>, inexplicably taking the position that <u>Chemetron</u>
overrules Supreme Court precedent, including <u>Mullane</u> and <u>Mennonite</u>.  Appellee's Brief, at 19 n.17.

potential contribution claims to recover the cost of cleanup, it would have been easy and inexpensive to ascertain the identities of the current and previous owners of the thirty-six processing sites or the thirteen vermiculite expansion plant sites. Apparently recognizing this, the Debtors repeatedly say that this case is about imposing a greater obligation, namely, requiring searches of any site "where the Debtors' product might have been processed *or used by the Debtors' hundreds of customers*." Appellee's Brief, at 4 (emphasis added). <u>See also</u> Appellee's Brief, at 11 ("every entity that owned property (and adjacent land) where the Debtors' products were used by independent third parties"), at 12 ("obligation to search the title records with respect to any property (and adjacent land) where the Debtors' product might have been processed or used by hundreds of customers"), at 15 ("title searches of all of their customers' properties"), and at 18 ("every location where it sold its products"). But these are not the facts before the Court. This case does not involve every customer or, indeed, any third party use of the Debtors' vermiculite. It involves only one of the known vermiculite processing sites where the Debtors caused their licensed processors to use their proprietary processes to exfoliate vermiculite and release toxic contaminants. The rule of law the Court would establish by ruling in Appellants' favor in this case would extend to only the thirteen to thirty-six processing sites. The Debtors have never established that it would have been an undue burden to engage in the simple process of looking up the chain of ownership on these sites and give the constitutionally required notice before demanding a bankruptcy discharge of liability for polluting the sites.

## II.  GRACE'S ARGUMENTS WITH RESPECT TO THE EXCUSABLE NEGLECT ISSUE ARE UNMERITORIOUS

As to the excusable neglect issue, Grace argues that (1) Bankruptcy Rule 9006(b) relief may not even be available in a case which involves substitute, as opposed to actual, service, (2) Appellants failed to present evidence of neglect, let alone excusable neglect[9] and (3) as to excusable neglect, the Bankruptcy Court's factual inquiry and articulation of the basis of its decision were adequate.  As set forth hereafter, Grace is wrong in each respect.

As Grace has acknowledged, the Bankruptcy Court did not conduct an evidentiary hearing.  Instead, the Court made its decision based on submitted affidavits, several of Grace's bankruptcy pleadings, briefs and arguments of counsel.  Appellants' presentation consisted of affidavits of two PacifiCorp representatives and of a VanCott Plan trustee.  The PacifiCorp representatives attested that (i) the department that had responsibility for environmental remediation with respect to the Subject Property had no notice or knowledge of the Bar Date until after it had expired; and (ii) PacifiCorp's Customer Service Division, which filed a routine proof of claim for electrical services in the amount of $1,375.00, did not know of the environmental remediation or of any PacifiCorp asbestos claim against Grace.  In his affidavit, Steven Swindle, VanCott Plan trustee, denied receipt of Grace's bar date notice and represented that the VanCott Plan, a former owner of a portion of the Subject Property, was not even aware of a potential claim against Grace until more than a year after the bar date when it received a June 18, 2004 inquiry from the EPA with respect to the Subject Property.  In addition to the affidavits, Appellants introduced bankruptcy pleadings filed by Grace which showed that (1) Grace scheduled a potential liability with respect to the Subject Property (although not in

---

[9] Debtors overlook the fact that under <u>City of New York</u>, 344 U.S. at 297, known creditors are constitutionally entitled to actual notice of the Bar Date.  The Supreme Court has never ruled that proof of excusable neglect is required of known creditors who do not receive constitutionally required actual notice. However, to the extent excusable neglect is relevant in this case, Appellants have established it.

favor of Appellants), (2) the bar date did not even apply to several creditor constituencies including a major creditor constituency, the holders of asbestos personal injury claims, (3) the estimated claims in the case amounted to more than a billion dollars (compared to Appellants' estimate that their claims, if permitted, would total less than $10 million) and (4) Grace's bankruptcy case had not progressed to the point of Court consideration of a reorganization plan.

Although it presented some evidence with respect to establishment of a Bar Date and service of the Bar Date Notice, Grace introduced no other evidence to contradict the foregoing points made in Appellants' affidavits. Grace did, however, argue that the Motion, if granted, would be prejudicial because it could skew the numbers on which Grace was structuring its reorganization plan and could "open the floodgates" to numerous other untimely claims. Grace introduced no evidence in support of these contentions, however.

Turning in order to Grace's three points with respect to excusable neglect, Appellants first submit that Grace is incorrect in implying that Rule 9006(b) is not available in constructive notice situations. In support of that position, Grace refers to In re Trump Taj Mahal Assoc., 1993 WL 534494 at *6, fn 7 (D.NJ. 1993). However, the Court in that case was careful to indicate that it was not even addressing that issue. ("We leave for another day the issue of whether excusable neglect can ever be a viable defense in cases where the claimant is only entitled to publication notice." Id.) There clearly is nothing in the language of Rule 9006(b) to indicate any limitation on a Bankruptcy Court's prerogative to grant an extension based on a determination of excusable neglect. Most important, the Third Circuit in Chemetron, found no such limitation in Rule 9006(b). 72 F.3d at 349 n.3. After determining that, under the facts of the case, substitute service was satisfactory, the Chemetron Court remanded for further evidentiary hearing with respect to excusable neglect. Id. at 350.

Grace seemingly disregards the PacifiCorp and VanCott Plan affidavits in even suggesting that Appellants failed to present any evidence of "inadvertence, mistake or carelessness . . . ." as referenced in the Supreme Court's excusable neglect decision, <u>Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. Partnership</u>, 507 U.S. 380 (1993).  To the contrary, PacifiCorp's affidavits substantiated PacifiCorp's inadvertence and mistake: PacifiCorp's Customer Service Division did not know (and had no reason to know) of PacifiCorp's environmental claim against Grace, and (because the Debtors failed to give notice) PacifiCorp's environmental department was unaware of the Bar Date and unaware that the Customer Service Division filed a proof of claim.  The Swindle Affidavit not only raised a question about the VanCott Plan's receipt of the bar date notice but indicates that the Plan was not even aware of a potential claim against Grace until more than a year after the March 31, 2003 bar date.  As to that particular point, the Bankruptcy Court decision in <u>In re New York Trap Rock Corp.</u>, 153 BR 648 (Bkrtcy S.D.N.Y. 1993) is instructive.  Like the case at bar, <u>New York Trap Rock</u> involved a failure to file a timely environmental claim.  The Bankruptcy Court clearly believed that lack of awareness of a claim was relevant in determining excusable neglect.  <u>Id.</u>, at 652.  However, because the movant failed to act promptly once it had determined that a claim might lie, it denied the Rule 9006(b) Motion.  In this case, the VanCott Plan filed the Motion within a reasonable time after it investigated the EPA's June, 2004 inquiry.  When the Motion was filed in January of this year, Grace's reorganization efforts still were in their early stages.

Finally, by focusing on reasons for Appellants' failure to file timely claims, Grace disregards clear Third Circuit authority that the excusable neglect inquiry must focus on the totality of circumstances, not just the reason that a deadline was missed.  See <u>Chemetron</u>, 72 F.3d at 349, <u>In re Orthopedic Bone Screw Products</u>, 246 F. 3d 315, 322 (3d Cir. 2001) ("The fault of

the untimely party is not our only consideration in determining whether a claimant should have the benefit of excusable neglect.")  The other relevant factors enumerated in Pioneer include "1) the danger of prejudice to the nonmovant; 2) the length of the delay and its potential effect on judicial proceedings . . . and 4) whether the movant acted in good faith."  Orthopedic Bone Screw, 246 F.3d at 322-23.

Consideration of potential prejudice is an important part of the analysis.  In that regard, the Third Circuit in In re O'Brien Environmental Energy, Inc. v. NRG Energy, Inc., 188 F.3d 116 (3d Cir. 1999) emphasized that "prejudice is not an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on facts in evidence."  In this case, the "facts in evidence" are that Appellants are seeking leave to file claims for less than $10 million, a small fraction of Grace's substantially more than a billion dollars of debt and that Grace, at the time the Motion was filed, was only in the early stages of negotiating a reorganization plan with its major creditor constituents.  Grace failed, with competent evidence, to refute these points.  Instead of evidence, Grace argued that there were valid administrative reasons for fixing claims which Appellants should not be permitted to circumvent, that inclusion of Appellants' claims could skew numbers upon which Grace was formulating a plan and that granting the Motion could "open the floodgates" to other untimely claims.  The Third Circuit in Orthopedic Bone Screw and O'Brien Environmental Energy rejected speculation as a substitute for hard evidence in the context of an excusable neglect inquiry.  In this case, the Bankruptcy Court did not require Grace to back its "parade of horribles" with evidence.  As such, the Court's inquiry was inadequate under clear Third Circuit precedent.

## CONCLUSION

For the foregoing reasons, Appellants respectfully request this Court to reverse the Bankruptcy Court's Order denying Appellants leave to file late proofs of claim.

Dated: December 21, 2005

**LANDIS RATH & COBB LLP**

Richard S. Cobb (#3157)
Megan N. Harper (#4103)
919 Market Street, Suite 600
P.O. Box 2087
Wilmington, DE 19899
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

Attorneys for Appellants PacifiCorp and the
VanCott Bagley Cornwall & McCarthy 401(k)
Profit Sharing Plan

-and-

MABEY & MURRAY LC
Steven J. McCardell, Esquire
Jared L. Inouye, Esquire
1000 Kearns Building
136 South Main Street
Salt Lake City, UT 84101-1685
Telephone: (801) 320-6700
Facsimile: (801) 359-8256

Attorneys for Appellant PacifiCorp

-and-

VANCOTT, BAGLEY, CORNWALL &
MCCARTHY
J. Robert Nelson, Esquire
50 South Main Street
Salt Lake City, UT 84144-0450
Telephone: (801) 237-0270
Facsimile: (801) 534-0058

Attorneys for Appellant VanCott Bagley Cornwall
& McCarthy 401(k) Profit Sharing Plan